HAL D. CUNNINGHAM (CA Bar No. 243048)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
hcunningham@scott-scott.com

*Attorneys for Plaintiff and the Putative Class*

[Additional Counsel on Signature Page.]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDY MAY, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC, GOOGLE ARIZONA LLC, GOOGLE PAYMENT CORP., ALPHABET, INC., and DOES 1 Through 10, Inclusive,<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff JUDY MAY ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this Class Action Complaint ("Complaint") against Defendants GOOGLE LLC, GOOGLE ARIZONA LLC, GOOGLE PAYMENT CORP., and ALPHABET, INC. (collectively, "Google") and DOES 1 through 10 (collectively, with Google, "Defendants"). The following allegations are based upon personal knowledge as to Plaintiff's own facts, upon investigation by Plaintiff's counsel, and upon information and belief where facts are solely in the possession of Defendants.

## NATURE OF THE CASE

1.      Over nearly a decade, Google has knowingly kept millions of dollars in stolen money from victims of gift card scams who purchased Google Play gift cards. Google has done so despite the fact that some of the victims of the theft, described herein as the "Contact Subclass," have contacted Google directly and provided Google with the information necessary to identify and return their stolen funds.

2.      Google's practice of knowingly keeping stolen funds is, standing alone, unfair. It is also, standing alone, unlawful.

3.      Google also employs a number of practices designed to perpetuate the theft at issue – a common gift card scam well known to Google – and to make it easier for Google to keep the stolen funds for itself. Those practices alone, and particularly when taken together, are unfair and unlawful.

4.      Google plays a direct and vital role in the gift card scams by allowing gift cards which it knows were involved in fraud to be redeemed and spent on digital currency and/or digital products which scammers can resell for currency.

5.      Google profits directly from that role in one of two ways. Google sometimes deposits a percentage of the stolen money into Google Play Developer accounts, while unfairly and unlawfully retaining the remainder of the stolen money as its own commission of approximately 15%-30% of the face value of the gift card. Google retains these commissions despite actual knowledge that specific gift cards were purchased as the result of fraud. On

1  information and belief, Google sometimes withholds payments for purchases made with scammed

2  gift cards from Google Play Developers and retains 100% of the stolen money for itself.

3       6.     Google has failed to refund the money paid to Plaintiff and the Class for stolen gift

4  cards.  Instead, Google retains up to 100% of the stolen money despite having knowledge that the

5  gift cards were purchased as the result of a gift card scam.

6                          **PARTIES**

7       7.     Plaintiff Judy May is a resident and citizen of Brownsville, Indiana.  In

8  approximately April 2021, Plaintiff May purchased $1,000.00 in Google Play gift cards as a result

9  of the gift card scam.  She thereafter contacted Google to report the scam.  Google informed her

10  that there was nothing it could do and that it would not refund the monies she had paid for the

11  Google Play gift cards.  Plaintiff May requested but has received no refund or reimbursement from

12  Google or any other source.

13       8.     Defendant Google LLC is a business incorporated under the laws of the State of

14  Delaware with its principal place of business at 1600 Amphitheatre Parkway, Mountain View,

15  California 94043.  Google LLC designs its products in California, and its marketing efforts

16  emanate from California.  Defendant Google LLC is a citizen of the State of California.

17       9.     Defendant Google Arizona LLC is a business incorporated under the laws of the

18  State of Arizona with its principal place of business located at 1600 Amphitheatre Parkway,

19  Mountain View, California 94043.  Defendant Google Arizona LLC is a citizen of the State of

20  California.

21       10.     Defendant Google Payment Corp. is a Delaware corporation with its principal place

22  of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.  Defendant

23  Google Payment Corp. is a citizen of the State of California.

24       11.     Defendant Alphabet, Inc. is a Delaware corporation with its principal place of

25  business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.  Defendant

26  Alphabet, Inc. is the parent company of the other Google Defendants and is a citizen of the State

27  of California.

28

1  12.  The true names and capacities of the Defendants sued herein as DOES 1 through

2  10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by such

3  fictitious names.  Each of the Defendants designated herein as DOE is legally responsible in some

4  manner for the unlawful acts referred to herein.  Plaintiff will seek leave of Court to amend the

5  Complaint to reflect the true names and capacities of the Defendants designated herein as DOES

6  when such identities become known.

7  **JURISDICTION AND VENUE**

8  13.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

9  §1332 because: (1) there is an aggregate amount in controversy exceeding $5,000,000, exclusive

10  of interest or costs, and (2) there is minimal diversity because at least one Plaintiff and Defendants

11  are citizens of different states.  This Court has supplemental jurisdiction over the state law claims

12  pursuant to 28 U.S.C. §1367(a).

13  14.  This Court may exercise jurisdiction over Defendants because Google is a citizen

14  of this District, maintains its principle place of business in this District, has continuous and

15  systematic contacts with this District, does substantial business in and within this District, receives

16  substantial revenues from marketing, distribution, and sales of Google Play gift cards in this

17  District, and engages in unlawful practices in this District as described in this Complaint, so as to

18  subject itself to the personal jurisdiction of this District, and thus rendering the exercise of

19  jurisdiction by this Court proper and necessary.

20  15.  Venue is proper in this judicial District pursuant to 28 U.S.C. §1391(b) because

21  Google is headquartered in this District, advertises in this District, receives substantial revenues

22  and profits from the sale of Google Play gift cards which it directs into the stream of commerce in

23  this District.  As such, a substantial part of the events or omissions giving rise to the claims alleged

24  herein occurred in this District.

25  16.  Intradistrict Assignment (L.R. 3-2(c) and (e) and 3-5(b)):  This action arises in

26  Santa Clara County, in that a substantial part of the events which give rise to the claims asserted

27  herein occurred in Santa Clara County.  Pursuant to L.R. 3-2(e), all civil actions that arise in Santa

28  Clara County shall be assigned to the San Jose Division.

# FACTUAL ALLEGATIONS

17.     Google acknowledges that its Google Play gift cards are used by scammers to steal money from consumers.  Google describes the Google Play gift card scam as follows:

> Scammers can use different ways to trick people into providing Google Play gift cards.  In most situations, the scammers will call, saying that you owe money for taxes, bail money, debt collection, and more.  Then they'll tell you that to avoid getting arrested, or getting your SSN, or physical items taken, you have to pay them using gift cards.[1]

**Google's Digital Products**

18.     Google owns and operates online platforms including the Google Play Store.  Consumers who access the Google Play Store can purchase and download digital applications for mobile devices ("app(s)") or digital multimedia (such as songs, movies, and television shows).

19.     The Google Play Store hosts millions of apps that consumers purchase or download directly from the Google Play Store.  Google separates the apps available on the Google Play Store into different categories, including various types of free apps and paid apps.[2]

**Google's Oversight of Its Platforms**

20.     Google reviews all apps before they are made available for consumers on the Google Play Store.  Before an app is available on the Google Play Store, developers must submit the prospective app to Google for review and approval.[3]  To better protect consumers, Google assigns a "team of experts who are responsible for identifying violations" to review each app before it becomes available on the Google Play Store.[4]

---

[1]     *See What to Do if You're a Victim of a Gift Card Scam*, GOOGLE PLAY HELP CENTER, available at https://support.google.com/googleplay/answer/9361829?hl=en (last visited Feb. 12, 2024).

[2]     *See Google Play Commerce – Monetization Options*, GOOGLE PLAY ANDROID DEVELOPER, available at https://developer.android.com/distribute/best-practices/earn/monetization-options (last visited Feb. 12, 2024).

[3]     *See Creating Better User Experiences on Google Play*, ANDROID DEVELOPERS BLOG (Mar. 17, 2015), available at https://android-developers.googleblog.com/2015/03/creating-better-user-experiences-on.html; *Improving the Update Process with your Feedback*, ANDROID DEVELOPERS BLOG (Apr. 15, 2019), available at https://android-developers.googleblog.com/2019/04/improving-update-process-with-your.html.

[4]     *See Creating Better User Experiences on Google Play, supra* n.3.

4

21.     Google represents that most apps are reviewed within "a matter of hours" of the developer's submission.[5]   Google boasts that it frequently suspends developer accounts for violation of the developer policies.[6]   Google may require the developer to modify or remove functions from the app.[7]   Google thus has knowledge of the contents and design of all apps available on the Google Play Store.

22.     One purpose of Google's review process is to determine whether the app will be used for or to facilitate illegal activity.   Google reserves the right to reject any app used to facilitate or promote illegal activities.[8]   After Google approves an app, it becomes available to purchase or download from the Google Play Store.   Google reserves the right to remove an approved app, and suspend or terminate the developer's account, if an app is suspected of facilitating illegal activity.[9]

**Payment for Google's Digital Products**

23.     Google receives a commission (which it calls a "service fee") on all sales of paid apps, purchases made within apps ("in-app purchases"), and paid subscriptions to apps.[10]   The commission Google receives is approximately 15%-30% of the amount of the Google Play gift card.

24.     To purchase digital content from the Google Play Store, consumers must create and register an account with Google, called a "Google Account."[11]   Purchasing songs, movies, or apps

---

[5]     *See id.*

[6]     *See Improving the Update Process with your Feedback*, *supra* n.3.

[7]     *See id.*

[8]     *See Illegal Activities – Play Console Help,* GOOGLE, available at https://support.google.com/googleplay/android-developer/answer/9878877 (last visited Feb. 12, 2024); *Developer Program Policy — Play Console Help*, GOOGLE, available at https://support.google.com/googleplay/android-developer/answer/13837496?hl=en (last visited Feb. 12, 2024).

[9]     *See Developer Policy Program*, *supra* n.8.

[10]     *See Service Fees – Play Console Help*, GOOGLE, available at https://support.google.com/googleplay/android-developer/answer/112622 (last visited Feb. 12, 2024).   The service is reduced to 15% for subscriptions retained after a 12-month period. *Id.*

[11]     *See Google Account*, GOOGLE, available at https://www.google.com/account/about/ (last visited Feb. 12, 2024).

1    from the Google Play Store requires the purchaser to sign in to the user's unique Google Account

2    and provide Google with a valid method of payment.

3            25.    To create a Google Account, consumers must provide Google with a name, valid

4    email address, billing information, and other personal information.[12]   Google requires that all

5    Google Accounts be verified with a telephone number or the email address associated with the

6    Google Account.[13]

7            26.    Consumers make purchases from the Google Play Store by providing Google with

8    their credit or debit card information, through PayPal, or with Google Play gift cards.[14]

9    **App Developers**

10           27.    Individuals and companies who develop apps for distribution on the Google Play

11   Store are known as "Google Play Developers."  Google Play Developers are required to create and

12   register a Google Account, enter into the Google Play Developer Distribution Agreement, and pay

13   a $25 registration fee.[15]  Further, Google may request that Google Play Developers provide Google

14   with a valid government ID and a credit card under the developer's legal name.[16]

15           28.    If Google Play Developers want to distribute an app that charges a fee for download

16   and/or has in-app purchases, they can use Google Play's billing system,[17] which requires the

17   Google Play Developer to provide Google with the developer's bank account information, physical

18

19

20

---

21   [12]    *See Privacy Policy*, GOOGLE, available at: https://policies.google.com/privacy (last visited
22   Feb. 12, 2024).

     [13]    *See id.*; *Verify Your Account – Google Account Help*, GOOGLE, available at
23   https://support.google.com/accounts/answer/114129?hl=en (last visited Feb. 12, 2024).

24   [14]    *See Accepted Payment Methods on Google Play*, GOOGLE, available at
     https://support.google.com/googleplay/answer/2651410?co=GENIE.CountryCode%3DUnited+S
25   tates&hl=en (last visited Feb. 12, 2024).

     [15]    *See How to Use Play Console – Play Console Help*, GOOGLE, available at
26   https://support.google.com/googleplay/android-developer/answer/6112435 (last visited Feb. 12,
     2024).

27   [16]    *See id.*

28   [17]    On information and belief, use of Google Play's billing system was mandatory up to a
     certain date known to Google.

1   address, legal name, and contact information.[18]  Google Play Developers appoint Google as their

2   agent relative to their apps made available on the Google Play Store.[19]

3        29.     Google pays Google Play Developers after a consumer purchases an app from the

4   Google Play Store, makes an in-app purchase, or pays a subscription to an app downloaded from

5   the Google Play Store.  Google makes all payments to Google Play Developers electronically.[20]

6        30.     Google does not pay Google Play Developers immediately after a consumer

7   completes a transaction.  First, Google waits two hours after a consumer purchases an app or game

8   from the Google Play store before charging the buyer's form of payment to allow buyers to cancel

9   a purchase.[21]  Then, even after it has collected payment from the consumer, Google does not

10  initiate payment to the Google Play Developer until at least the 15th of the month following the

11  month when the purchase occurred.[22]  Moreover, Google will not transfer payment unless the

12  Google Play Developer meets the minimum payment threshold for that period.[23]  As such, there is

13  a delay of at least two weeks, and usually more, between the time when a consumer makes a

14  purchase in the Google Play Store and the time when Google pays the Google Play Developer.

15  **Google Play Gift Cards**

16       31.     Google sells Google Play gift cards which can be used to make purchases in the

17  Google Play Store, or inside of apps purchased or downloaded from the Google Play Store (as

18  noted, the latter are often called "in-app purchases").  Google sells Google Play gift cards indirectly

19  to consumers through retailers such as grocery stores and convenience stores.

20

21  [18]    *See Google Play Developer Distribution Agreement, supra* n.10; *Payments – Play Console Help*, GOOGLE, available at https://support.google.com/googleplay/android-developer/answer/9858738?hl=en (last visited Feb. 12, 2024); *Create a Payments Profile – Google Payments Center Help*, GOOGLE, available at: https://support.google.com/paymentscenter/answer/7161426?hl=en (last visited Feb. 12, 2024).

23  [19]    *See Google Play Developer Distribution Agreement, supra* n.10.

24  [20]    *See Merchant Payout Schedule – Google Payments Center Help*, GOOGLE, available at https://support.google.com/paymentscenter/answer/7159355 (last visited Feb. 12, 2024); *Order Processing & Payouts – Play Console Help*, GOOGLE, available at https://support.google.com/googleplay/android-developer/answer/137997 (last visited Feb. 12, 2024).

27  [21]    *See Order Processing & Payouts, supra* n.21.

28  [22]    *See id.*

   [23]    *See id.*

32.     Google Play gift cards generally are sold for the amount shown on the face of the gift card (or an amount selected by the consumer within the range reflected on the face of the card), and the amount of stored value activated on the card is generally equal to the amount paid by the consumer.

33.     Every Google Play gift card has a unique redemption code on the back of the card. Google Play gift cards cannot be activated until purchased.  That is, the value stored on cards sitting on a display rack is dormant until a consumer takes them to the register and purchases them. At the point of purchase, the retailer activates the Google Play gift card and the value stored on the card becomes available for redemption.  Unless properly activated, a Google Play gift card cannot be redeemed.  Through point-of-sale activation data, Google knows the moment a particular Google Play gift card has been purchased and when the stored value is activated on the card.

**Google Accounts**

34.     A valid Google Account is required to redeem Google Play gift cards.  Consumers redeem Google Play gift cards by logging into their Google Account and entering the redemption code on the back of the card.  The stored value on the Google Play gift card is then transferred to the consumer's Google Account and is immediately available to make purchases in the Google Play Store.

35.     When a Google Play gift card is redeemed and all the stored value on the card is transferred to the redeemer's Google Account, the card itself once again has no value.

36.     Google tracks redemption codes and serial numbers of Google Play gift cards. When a Google Play gift card is redeemed, Google knows which card it was and which Google Account was used to redeem it.

**Google Play Gift Card Terms and Conditions**

37.     The packaging for Google Play gift cards contains minimal terms and conditions.[24] For example, the packaging visible to consumers prior to purchase often provides:

> **Terms and Conditions:** See play.google.com/us-card-terms for full terms.  Must be 13+ years of age, US resident.  Google Play card is issued by Google Arizona

---

[24]     Google occasionally changes the language on the Google Play gift cards and their packaging, but the terms on all Google Play gift cards and packaging are substantially similar.

LLC ("GAZ").  Requires Google Payments account and Internet access to redeem. Redeemed balance is maintained by GAZ's affiliate, Google Payment Corp. ("GPC"), in your Google Payments account.  Usable for purchases of eligible items on Google Play only.  Not useable for hardware and certain subscriptions.  Other limits may apply.  No fees or expiration dates.  Except as required by law, card not redeemable cash or other cards; not reloadable or refundable; cannot be combined with other non-Google Play balances in your Google Payments account, resold, exchanged or transferred for value.  User responsible for loss of card.  For assistance or to view your Google Play card balance, visit support.google.com/googleplay/go/cardhelp.  To speak to customer care call us at 1-855-466-4438.

38.     The web address on the back of the Google Play gift card packaging directs users to the full terms and conditions for Google Play gift cards (the "Online Terms and Conditions"). The Online Terms and Conditions, which apply to Google Play gift cards and their related codes (together, "Credits") provide, *inter alia*, that:

**Limitations**.  The Gift Card or Credit may be used for purchases of eligible items on Google Play only.  Limits may apply to redemption and use.  Items ineligible for purchase using Gift Card or Credit include certain items in the "Devices" section of Google Play (e.g., phones, tablets and related device accessories) . . . .  The Gift Card or Credit is not redeemable for cash or other cards, is not reloadable or refundable, cannot be combined by you with other non-Google Play balances in your Google Payments account, and cannot be resold, exchanged or transferred for value, except as required by law. . . .

*          *          *

**Fraud**.  [Google is] not responsible if a Gift Card or Credit is lost, stolen, destroyed or used without your permission.  [Google] will have the right to close customer accounts and bill alternative forms of payment if a fraudulently obtained Gift Card or Credit is redeemed and/or used to make purchases on Google Play.

*          *          *

**General Terms**.  . . . When you purchase, receive or redeem a Gift Card or Credit, you agree that the laws of the State of California apply, without regard to principles of conflict of laws, and that such laws will govern these Gift Card and Credit terms and conditions.[25]

39.     When consumers purchase a Google Play gift card at retail, they become bound by the terms on the packaging, which incorporate the full Online Terms and Conditions.  However,

---

[25]     *See Google Play Gift Card and Prepaid Play Balance Terms of Service*, Google (May 1, 2019), available at https://play.google.com/intl/en_us/about/card-terms/.

1   no victim of a Google Play gift card scam is bound by Google's attempt to apply its disclaimer

2   language, which purports to limit Google's liability for Google Play gift cards which are lost,

3   stolen, or used without permission.  Google cannot disclaim liability for its own intentional

4   conduct nor disclaim liability for loss or damage resulting from its own unfair and unlawful

5   conduct.

6          40.     Google's attempt to disclaim liability for loss or damage resulting from Google

7   Play gift card scams is unconscionable and unenforceable in light of its role in those scams, the

8   profit that it makes and retains from such scams, its violation of California law in connection with

9   those scams, and the adhesive nature of the terms and conditions imposed upon scam victims who

10  purchase Google Play gift cards.

11         41.     Google understands that the scams involve deceiving consumers into believing that

12  they have an immediate need to make payment, and that gift cards are the only acceptable form of

13  payment.

14         42.     Thus, Google knows that scam victims believe they must purchase gift cards, yet

15  for much of the Class Period Google made no effort whatsoever to warn consumers at the time and

16  place where the scam can be avoided entirely – namely, in the retail store prior to purchase where

17  targets of the scam can be prevented from having their money stolen through fraudulently induced

18  Google Play gift card purchases.

19         43.     Google knows that all targets of gift card scams will go to a retail location and select

20  a Google Play gift card from a retail sales rack, believing it to be the only acceptable form of

21  payment under urgent circumstances.  Yet, even now Google does not describe the scam or

22  unequivocally inform consumers prior to the sale of that card, *i.e.*, on the packaging, that anyone

23  who is asking for Google Play gift cards as a form of payment is a scammer.

24         44.     Indeed, Google fails to make this statement unequivocally, despite the fact that the

25  FTC states that "anyone who insists that you pay by gift card is ***always*** a scammer."[26]

26

27  _____

28  [26]     Traci Armani, *Did Someone Tell You to Pay with Gift Cards? It's a Scam*, FED. TRADE
    COMM'N (Sept. 11, 2020), https://consumer.ftc.gov/consumer-alerts/2020/09/did-someone-tell-
    you-pay-gift-cards-its-scam (last visited Mar. 3, 2024).

CLASS ACTION COMPLAINT

45.     Instead, at some point during the Class Period, Google added a more anemic warning.  It began instructing victims to "[o]nly use this gift card's code on Google Play.  Any other request for the code *may* be a scam. . . ."[27]

46.     Google knows its "warning" language fails to inform potential victims of the nature of Google Play gift card scams or give them the information they need to avoid becoming a victim.  Indeed, Google knows that scam victims are generally unaware of the types of products and services available through the Google Play Store and therefore do not understand the proper scope of Google Play gift card use.

47.     There is a reason that, for many years while the scam was rampant, Google did not place *any* warning on the packaging, and still does not employ an effective warning.  Google recognizes that more gift cards will be sold if people who otherwise had no intent to purchase Google Play gift cards – such as Plaintiff – are successfully persuaded to do so by scammers and are ***not*** then dissuaded by an effective warning.

48.     Google can sell more gift cards and generate more revenue from gift card sales if the targeted victims actually purchase Google Play gift cards.  As such, Google has a direct stake in the success of these scams.

**The Google Gift Card Scam Costs Hundreds of Millions of Dollars or More**

49.     The overwhelming majority of gift card scam victims do not report the scam to the Federal Trade Commission ("FTC").  Yet even the losses of the small percentage of victims who do report to the FTC exceeded an estimated $433.5 million during 2018-2021, with the dollar amounts increasing significantly each year.[28]  According to FTC data, Google Play gift cards can, and have in the past, make up approximately 20% of all gift card scams.  Further, this figure is

---

[27]     Emphasis is added throughout unless otherwise noted.

[28]     Emma Fletcher, *Scammers Prefer Gift Cards, But Not Just Any Card Will Do*, FED. TRADE COMM'N (Dec. 8, 2021), at n.3 ("From January 2021 through September 2021, 39,263 reports indicating $147.8 million in gift card and reload card payments were submitted, compared to 36,682 reports indicating $115.1 million in reported gift card payments in all of 2020.  Earlier year figures for comparison purposes are as follows: 35,323 reports with $100 million reported lost (2019), 32,084 reports with $70.6 million reported lost (2018).").

1   limited to consumers who know they can report to the FTC and then fill out a detailed online FTC
2   form asking for their personal information.

3       50.    Given that not all consumers know, or know how, to report gift card scams to the
4   FTC, as well as the time required to fill out the FTC form and its potential privacy implications, it
5   can reasonably be inferred that only a small percentage of victims submit a report to the FTC.  As
6   a result, the publicly reported $433.5 million figure for the period 2018-2021 appears to reflect
7   only a small portion of the actual gift card scams that have taken place.

8       51.    As noted, the FTC reports that Google Play gift card scams reflect 20% of the total
9   $433.5 million gift card scam reported to the FTC.  The 20% equals $86.7 million, for the four
10  year period from 2018-2021, or $21.675 million per year.  If only 10% of scam victims report to
11  the FTC, the total amount of money scammed through Google Play gift cards would approach
12  $210 million per year, and over $800 million during the four-year period from 2018-2021, and in
13  excess of $1 billion dollars if calculated through 2023.  Google's 15-30% commission on funds
14  spent in the Google Play ecosystem alone equals $150 million-$300 million in ill-gotten proceeds
15  to Google.[29]

16      52.    Many victims do not report gift card fraud to Google, the FTC or any law
17  enforcement entity,[30] and even if they do, there is no guarantee their information will be
18  investigated, much less included in a law enforcement subpoena or other formal government
19  request for information to Google.

20      53.    Notwithstanding, Google is aware of the widespread nature of the scam and has
21  been for years.  Google has been receiving inquiries from victims and requests for information
22  from law enforcement for years, beginning on a date known only to Google.

[29]  In addition, it is likely that Google freezes Google Accounts and Google Play Apps that it knows to have been involved in the Google Play gift card scam.  Based on its policy, these sums are not returned to scam victims and would constitute additional proceeds that Google keeps, separate and apart from its commission.

[30]  *See, e.g.*, Tamara Lytle, *Gift Cards are for Gifts – Not Grifters*, AARP (Nov. 7, 2019), https://www.aarp.org/money/scams-fraud/info-2019/prevent-gift-card-fraud.html (director of fraud victim support at the American Association for Retired Persons, or AARP, says that victims often do not contact law enforcement because "[t]hey are embarrassed and ashamed and they don't think it does any good").

**The Mechanics of the Google Play Gift Card Scam**

**Step One:  Victims Buy Google Play Gift Cards and Provide Codes to Scammers**

54.     As Google acknowledges, the first step in the typical Google Play gift card scam is to convince the victim "to buy a Google Play gift card and share the code so that you can pay for something outside Google Play."  Google describe the typical scams in formulaic terms:

> A scammer calls and pretends to be from a government agency (like the IRS in the US.  Other countries have agencies with different names).  The scammer says that you owe money for taxes, bail money, debt collection, and more.  They tell you that to avoid arrest, or to prevent the seizure of physical items or your personal identification information (like your SSN in the US.  Other countries use different names), you have to pay them with gift cards.

> A scammer claims to be a family member in trouble, an attorney, or another representative of your family member.  The scammer tells you that they need to be paid in gift cards in order to remedy the situation.  They may deter you from attempts to contact the family member to verify the claim.  Don't believe them.  Never buy gift cards for them or provide them with any gift card codes.

> These examples only cover some types of scams.  Scammers constantly change the ways they trick people.  If anyone asks you for a code, it could be a scam.[31]

55.     If scammers successfully convince a victim to make an initial purchase of Google Play gift cards and share the codes, they will often demand that the victim purchase additional rounds of Google Play gift cards and share the additional codes.

**Step Two: Redeeming the Google Play Gift Cards Onto Google Accounts**

56.     Once scammers obtain the redemption codes, the next step in obtaining money from the scams is redeeming the gift cards and transferring the stored value from the cards into a Google Account.  Google knows which Google Accounts the gift cards have been redeemed into.

57.     Scammers usually redeem the stored value onto their own scammer-controlled Google Accounts to make in-app purchases, and then sell the digital items purchased on third-

---

[31]     *See What to do if you're a victim of a Google Play gift card scam*, GOOGLE, available at https://support.google.com/googleplay/answer/9057338 (last visited Feb. 12, 2024); *see also What to do if you're a victim of a gift card scam*, *supra* n.1; *Avoiding and Reporting Gift Card Scams*, FED. TRADE COMM'N, available at https://www.consumer.ftc.gov/articles/paying-scammers-gift-cards (last visited Feb. 12, 2024).

party markets.  In this situation, Google earns commissions from the in-app purchases made by the scammers, and the scammers profit by reselling their in-app purchases.

58.     Alternatively, scammers can resell the redemption codes.  On the rare occasions when this occurs, it is the buyer in the illicit transaction that redeems the code onto his or her Google Account.  Due to the discounts and delays associated with resale markets and the counterparty risks, the latter method of monetizing stolen gift cards is the less profitable and by far less common way of obtaining money through Google Play gift card scams.  In any event, Google keeps a commission even when the scammer resells the redemption code.

**Step Three: Spending the Stored Value on Apps or Google Play Products**

59.     The third step involves spending the redeemed stored value in the Google Play Store.

60.     The Google Account that redeemed the gift card, which account is nearly always controlled by the scammer, will spend stored value by purchasing digital content, that is, purchasing apps or making in-app purchases.

61.     By this point, Google has many important data points: (1) the retail store where the gift cards were purchased, together with the date and time of purchase, the amount of value stored on the card, and, on information and belief, other data related to the purchase including, but not limited to, the number of cards purchased; (2) the identity of the Google Account(s) used to redeem the gift cards; and (3) the nature and timing of Google Play purchases made with the gift cards.

**Step Four: Google and the Scammers Profit**

62.     At least 15 days after the end of the month when a purchase was made in the Google Play Store, Google pays the Google Play Developer 70%-85% of the purchase price of the digital goods and retains the remainder of the stolen money as its own commission.

63.     Google keeps this commission regardless of whether the gift card is redeemed and spent by the scammer (who resells the in-app purchases and obtains money from the resale) or by a third party who purchased the stolen gift card from the scammer.

**Google Perpetuates and Profits from the Google Play Gift Card Scam**

64. Victims usually realize they have been scammed within a few hours or days, and often contact Google before any of the money stolen from them has been paid out to Google Developers. When victims identify themselves and provide the codes from the gift cards they purchased, Google then knows that the money used to purchase those particular gift card codes was stolen, and that scammers are in the process of attempting to launder that money through Google's platform for the scammers' own use.

65. Google thus knows that it has possession and control of stolen property, and knows the identity of, and contact information for, the rightful owner.

66. When Google learns that it has possession of stolen property, it has a duty to return it to its rightful owner, the victim. However, Google neither returns it nor informs the rightful owner of its whereabouts.

67. Instead, Google represents it has a "no refund" policy. Google states on its cards and packaging that its gift cards are not refundable, and directs victims to its Online Terms of Service, in which Google states that it is "not responsible if a Gift Card or Credit is lost, stolen, destroyed or used without your permission."

68. Google's website further discourages victims from contacting Google. Google's language contained on its cards, packaging, and website represent that cards will not be refunded, reloaded, or replaced, and that the only thing Google will do if a victim contacts them is investigate the scam and potentially prevent future scams.

69. Google even goes so far as to encourage victims to report the scam to the FTC or law enforcement ***before*** reporting it to Google. Google does this despite the fact that time is of the essence.

70. Google further discourages victims from contacting it by telling them that, "[o]nce you provide the codes to a scammer, they'll likely spend the funds on the card immediately."[32] This statement is highly misleading and suggests to victims that there is, in fact, nothing Google

---

[32] *See What to do if You're a Victim of a Gift Card Scam*, *supra* n.1.

1   can do.  Further, Google neither informs consumers that it is keeping a percentage, or in certain

2   instances up to 100%, of the money stolen from victims nor does Google inform victims that it

3   keeps that money for at least 15 days after the end of the month the transaction took place before

4   paying third-party vendors.

5        71.    Instead, Google allows victims to believe that the scammers have used the cards to

6   purchase apps, songs, and other content, and that Google therefore no longer has the money.

7        72.    Victims thus believe that the money which was stolen from them at the point of

8   retail sale of the Google Play gift cards is now in the hands of third-party content providers, rather

9   than remaining with Google.

10        73.    As a result of the non-refundability language on Google's cards and packaging

11   (which language is only reinforced by any visits to Google's website and any other online research

12   about Google Play gift card scams, and echoed by any law enforcement who may be contacted),

13   most victims believe that any refund effort would be futile, and do not report the scam to Google

14   nor seek a refund from Google.

15        74.    However, some victims do contact Google directly, and thus become members of

16   the "Contact Subclass" alleged herein.

17        75.    If victims of the scam contact Google, it responds uniformly and, on information

18   and belief, using a standardized protocol or script.  Google requests and records victims' names

19   and contact information and the redemption codes on the back of the Google Play gift cards.

20   Google then tells the victims that the funds have been spent, and/or that there is nothing Google

21   can do.

22        76.    Google's suggestion that it no longer has the victim's money because the money

23   has been spent is false.

24        77.    Google's suggestions of futility and statements that there is nothing it can do are

25   similarly false.

26        78.    As a result of the language on the card and packaging, and the message conveyed

27   by Google, when victims call to report the scam, most of the victims who do contact Google quietly

28

CLASS ACTION COMPLAINT

1   accept Google's refusal to issue a refund, and do not pursue legal action, approach the press, nor

2   pursue the refusal with law enforcement or legislators.

3       79.     Google remains largely silent about this rampant scheme, addressing it almost

4   exclusively through the pages on its websites referenced above, although, on information and

5   belief, it has a common corporate protocol for dealing with victims who call Google after realizing

6   scammers have swindled them by exploiting Google's gift card system.

7       80.     When Google receives card numbers or redemption codes from victims or law

8   enforcement, it can identify:

9   
10
- the time and location where the card was purchased and the dollar amount of value stored on the card;

11
- the Google Account that redeemed the card, including all information relating to that account;

12
13
- the timing and content of that Google Account's purchases of apps, digital media, and/or in-app purchases made with funds from gift cards;

14
- the Google Play Developers associated with the Google Play Store purchases; and

15
- whether Google has paid the Google Play Developers for those purchases.

16
17      81.     Because Google can identify Google Accounts involved in scams, it can suspend the Google Accounts that redeemed fraudulently obtained Google Play gift cards.

18
19      82.     Moreover, because Google does not transfer payment to Google Play Developers until at least 15 days after the end of the month of the purchase, Google can stop payment to the

20   Google Play Developer's bank account.[33]

21      83.     On information and belief, Google – a highly sophisticated participant in the

22   technology industry that monitors and tracks key information at each point in the process of the

23   scam from the time the Google Play gift card is sold through redemption and use – possesses other

24   means and technology to determine which Google Play gift cards have been redeemed and spent

25   by scammers, the Google Account(s) involved in gift card scams, and the identities of gift card

26   scam victims.

27

28

---

[33]     *See, e.g.*, *Google Play Developer Distribution Agreement*, *supra* n.18.

84.     Despite such means and technology, Google uniformly and consistently informs victims that there is nothing that Google can do for victims.  Google knows that representation is false.

85.     Further, Google fails to inform consumers – online or by telephone – that, regardless of whether the Google Play gift card was spent, if the consumer contacts Google after becoming the victim of a scam and provides the redemption code to Google, Google can identify the Google Account involved in the scam, stop payment to the Google Play Developer account, and refund the value of the Google Play gift card to the victim.

86.     Google has a duty to disclose and not conceal from Plaintiff and Class members the foregoing material facts.  Google's duty to disclose arises out of: (1) its misrepresentation to consumers that there is nothing Google can do as the funds have been spent; and (2) its exclusive knowledge and active concealment of material facts which allows Google to identify all accounts involved in Google Play gift card scams, stop payment to scammers, and return the value of Google Play gift cards to scam victims.

87.     Google's omissions and false and misleading statements, as set forth above, are intentional and done for the purpose of retaining its commission on all purchases made with fraudulently obtained Google Play gift cards.

88.     Further, Google makes Google Play gift cards sold by retailers available for purchase in amounts up to $200.  Making Google Play gift cards available in such large denominations dramatically increases the amount scammers could obtain from unwitting consumers. On information and belief, Google knows that a disproportionate number of high value Google Play gift cards were being redeemed by scammers, and yet it continues to sell them and earn a profit from same.

89.     Google also fails to warn consumers about Google Play gift card scams on the packaging they will see prior to purchase.  Google knows that Google Play gift card scams are designed to instill panic and urgency in victims, thus preventing them from doing the research and investigation that would lead them to Google's gift card scam webpages.  Despite this knowledge, for many years, Google provided no warning to consumers on the retail packaging of its gift cards.

90.     Google could, and should, state prominently on its packaging that telephone and internet scams involving gift cards are common and consumers should not purchase the card in their hands if they have been asked to do so by persons unknown to them who claim that payment by Google Play gift card is urgently needed.  Instead, Google fails to adequately warn consumers, and perpetuates and profits from Google Play gift card scams.

91.     Google says nothing on its packaging regarding urgent demands for payment by unknown persons.  Google instructs, on the back of the card simply, "[o]nly use this gift card's code on Google Play.  Any other request for the code may be a scam."  This ineffective warning not only fails to alert consumers of the widespread phenomenon known to Google, but for much of the Class Period was not used at all or was visible to consumers only after they had already purchased a Google Play gift card.

92.     Google recognizes that more gift cards will be sold if people who have no independent desire to purchase them are persuaded to do so by scammers – and because Google recognizes that its "no refund" policy and attempted disclaimer of liability will discourage victims from seeking refunds, particularly where, as here, those card purchasers proceed to provide the codes on the cards to scammers.  This allows Google to suggest that the funds have been "spent."

93.     Moreover, Google has never provided instructions on its cards or packaging directing people who have realized they are victims of gift card scams to call Google immediately to identify themselves and report the scam; indeed, Google only recently added any kind of statement about scams on the back of the Google Play gift card and packaging.  On information and belief, Google added the ineffective warning to the back of the Google Play gift cards in 2020.  Previously, Google did not provide any notice on the back of the gift card or packaging to inform consumers that Google Play gift cards are frequently sought by scammers.

94.     As a direct and proximate result of Google's conduct, misrepresentations, and omissions described herein, Plaintiff and Class members suffered damages including the amount of money that Plaintiff and Class members spent on Google Play gift cards that were not refunded to them by Google.

**FACTS PERTAINING TO PLAINTIFF**

***Plaintiff Judy May***

95.    In or about April of 2021, Plaintiff May received a link from someone purporting to be her family member instructing her to connect with a government agent for grant money from the U.S. Department of Health and Human Services ("HHS").  The purported agent told Plaintiff May that she was eligible for an HHS grant.

96.    The agent then told Plaintiff May that in order to receive her grant money by same-day delivery she had to cover certain costs, which would be reimbursed to her on top of the grant money.  The agent instructed Plaintiff May to purchase Google Play gift cards and provide the codes on the back to cover the costs.

97.    On April 1, 2021, Plaintiff May purchased a $200 gift card from a Family Dollar retail location in Connersville, Indiana, and shared the code with the scammer.

98.    The next day, April 2, 2021, Plaintiff May was instructed to purchase additional gift cards to cover the remainder of the costs.  Plaintiff May then purchased four additional $200 gift cards from a CVS Pharmacy retail location in Connersville, Indiana.  Plaintiff May shared these codes with the scammer.

99.    Plaintiff May read the language on the gift cards she purchased, but remained unaware of the nature, much less the prevalence, of Google Play gift card scams, and did not realize she was in the process of being scammed.

100.    Had the packaging clearly and prominently advised purchasers of the nature of gift card scams and/or stated unequivocally that anyone asking for payments via Google Play gift cards was a scammer, Plaintiff May would not have purchased the card.

101.    However, no such information or statement appeared on either the packaging or the card, and Plaintiff May provided the codes on the back of the Google Play gift cards to the scammer.

102.    Plaintiff May then contacted her relative about the agent she had connected her with, and at that point learned that the "agent" she had been communicating with by Facebook messenger was not a government agent and that she was the victim of a gift card scam.

1      103.    Plaintiff May contacted Google the next day after realizing she had been victimized
2   by scammers but was informed that the money had been spent and there was nothing that Google
3   could do for her.

4                         **TOLLING OF STATUTES OF LIMITATIONS**

5      104.    Any applicable statute(s) of limitations were tolled by Google's knowing, active
6   concealment, and denial of the facts alleged herein.  Google's conduct is inherently self-concealing
7   because Google does not disclose the details of its ability to monitor and control Google Play gift
8   card transactions, Google Account activity, and Google Play Store purchases.  As a result, Plaintiff
9   and members of the Class could not have reasonably discovered the true nature of Google's
10   conduct until shortly before this class action litigation was commenced.

11      105.    In addition, even after Plaintiff and Class members contacted Google concerning
12   gift card scams, Google routinely told them that, if their gift cards were redeemed, there was
13   nothing Google could do.  Google's representations of futility and omission concerning its own
14   profit from the scam are false and misleading.

15      106.    Google was and remains under a continuing duty to disclose to Plaintiff and Class
16   members the true nature of its involvement in gift card scams, including that it can identify all
17   accounts involved in the scam, stop payment to scammers, and return the value of Google Play
18   gift cards to victims.  As a result of Google's active concealment, any and all statutes of limitations
19   otherwise applicable to the allegations herein were tolled.

20                          **CLASS ALLEGATIONS**

21      107.    Plaintiff brings this action, individually, and on behalf of a nationwide class,
22   pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), defined as follows:

23                          **Nationwide Class**

24        All persons in the United States and its territories who purchased one or more
25        Google Play gift cards at the direction of people whose identities they did not know
           and did not redeem the gift cards for themselves or give them as a gift but instead
26        provided the redemption codes to the people whose identities they did not know

27

28

(the "Scam") and were not refunded the money they paid for the gift cards by Google or any other source (the "Class").

108.     The Class Period is initially defined as the period between January 1, 2015 and the present.[34]

109.     Pursuant to Federal Rule of Civil Procedure 23(c)(5), Plaintiff also seeks to represent the following subclass:

## Contact Subclass

110.     All Class members who contacted Google and reported the Scam.  The Nationwide Class and the Contact Subclass shall collectively be referred to herein as the "Class."  Excluded from the Class are: (a) Defendants; (b) Defendants' affiliates, agents, employees, officers, and directors; (c) Plaintiff's counsel and Defendant's counsel; and (d) the judge assigned to this matter, the judge's staff, and any member of the judge's immediate family.  Plaintiff reserves the right to modify, change, or expand the various class definitions set forth above based on discovery and further investigation.

111.     **Numerosity**:     The Class is so numerous that joinder of all members is impracticable.  While the exact number and identity of individual members of the Class is unknown at this time, such information being in the sole possession of Google and/or third parties and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that the Class consists of hundreds of thousands of people.  The number of Class members can be determined based on Google's and other third party's records.

112.     **Commonality**: Common questions of law and fact exist as to all members of each Class.  These questions predominate over questions affecting individual Class members.  These common legal and factual questions include, but are not limited to:

a.     Whether Google engaged in unfair business practices;

b.     Whether Google engaged in unlawful business practices;

c.     Whether Google received, retained, withheld, or concealed stolen property;

---

[34]     Plaintiff reserves the right to expand or amend the Class Period based on discovery produced in this matter.

d.      Whether Google converted the property of others;

e.      Whether Google knowingly and intentionally profited from gift card scams involving Google Play gift cards;

f.      Whether Google misrepresents that there is nothing Google can do after Google Play gift cards are redeemed;

g.      Whether Google conceals material facts regarding its ability to stop payments and return money to scam victims;

h.      Whether Google's conduct violated the California consumer protection statutes asserted herein;

i.      Whether the monies obtained by Google from gift card scams rightfully belongs to Plaintiff and Class members; and

j.      Whether Google keeps a percentage of stolen money as commission for its own use.

113.    **Typicality**: Plaintiff has the same interest in this matter as all Class members, and Plaintiff's claims arise out of the same set of facts and conduct as the claims of all Class members. Plaintiff's and Class members' claims all arise out of Google's uniform misrepresentations, omissions, and unlawful and unfair acts and practices related to Google Play gift cards.

114.    **Adequacy**: Plaintiff has no interest that conflicts with the interests of the Class, and is committed to pursuing this action vigorously.  Plaintiff has retained counsel competent and experienced in complex consumer class action litigation.  Accordingly, Plaintiff and her counsel will fairly and adequately protect the interests of the Class.

115.    **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class.  The injury suffered by each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Google's conduct.  It would be virtually impossible for individual Class members to redress effectively the wrongs done to them.  Even if Class members could afford individualized litigation, the court system could not. Individualized litigation would increase delay and expense to all parties, and to the court system,

23

1     because of the complex legal and factual issues of this case.  Individualized rulings and judgments

2     could result in inconsistent relief for similarly situated individuals.  By contrast, the class action

3     device presents far fewer management difficulties, and provides the benefits of single adjudication,

4     economy of scale, and comprehensive supervision by a single court.

5           116.    Defendants have acted or refused to act on grounds generally applicable to the

6     Class, thereby making final injunctive relief and corresponding declaratory relief appropriate with

7     respect to the Class as a whole.

8                   **CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS**

9           117.    California substantive law applies to every member of the Class, regardless of

10    where in the United States the Class members reside.  Google's terms and conditions state:

11
12         **General Terms**.  […] When you purchase, receive or redeem a Gift Card or Credit, you agree that the laws of the State of California apply, without regard to principles of conflict of laws, and that such laws will govern these Gift Card and Credit terms and conditions.[35]

13

14           118.    By choosing California law for the resolution of disputes in the agreement, Google

15    concedes that it is appropriate for this Court to apply California law to the instant dispute.

16           119.    Further, California substantive law may be constitutionally applied to the claims of

17    Plaintiff and the Class under the Due Process Clause, 14th Amend. §1, and the Full Faith and

18    Credit Clause, Art. IV §1 of the U.S. Constitution.  California has significant contact, or a

19    significant aggregation of contacts, to the claims asserted by Plaintiff and all Class members,

20    thereby creating state interests that ensure that the choice of California state law is not arbitrary or

21    unfair.

22           120.    Google's headquarters and principal place of business is located in California.

23    Google also owns property and conducts a substantial portion of its business in California, and

24    therefore California has an interest in regulating Google's conduct under its laws.  Google's

25    decision to reside in California and avail itself of California's laws, and to engage in the challenged

26    conduct from and emanating out of California, renders the application of California law to the

27    claims herein constitutionally permissible.

28

---

[35]    *See Terms of Service*, *supra* n.18.

121.    California is also the state from which Google's alleged misconduct emanated.  On information and belief, the decision-making regarding the design and marketing of Google products, including the Google Play gift cards and Google Play Store, occurred in and emanated from California, and Google received commissions from purchases with fraudulently obtained Google Play gift cards in California.  As such, the conduct complained of herein emanated from California.  This conduct similarly injured and affected Plaintiff and all other Class members.

122.    The application of California law to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiff and the proposed Class, and California has a greater interest in applying its laws here than any other interested state.

**FIRST CAUSE OF ACTION**
**Unfair Practices**
**in Violation of the California Unfair Competition Law**
**CAL. BUS. & PROF. CODE §17200 *et seq.***
**(on Behalf of the Nationwide Class and the Contact Subclass)**

123.    Plaintiff hereby re-alleges and incorporates all allegations in the Complaint, as though fully set forth herein.

124.    At all relevant times there was in full force and effect the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §17200 *et seq.*, which prohibits, *inter alia*, "any unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."  CAL. BUS. & PROF. CODE §17200.

125.    Google has unfairly retained millions of dollars in funds that it knows were stolen from Plaintiff and other victims of the Google Play gift card scam.

126.    Google has also engaged in other business acts and practices which are "unfair" under the UCL, including knowingly and intentionally keeping and disbursing illegally obtained money.

127.    Google also engaged in several practices designed to perpetuate the scheme and the stream of revenue it generates for Google.  Those practices, which are unfair alone, and particularly when taken together, include, but are not limited to, failing to adequately warn consumers about the existence, nature, and prevalence of gift card scams on the packaging of its gift cards, failing

1  to adequately warn consumers about the existence, nature, and prevalence of gift card scams on

2  the cards themselves, reducing the number of victims who contact Google by including an

3  unconscionable and adhesive disclaimer on its packaging and in its Online Terms and Conditions,

4  reducing the number of victims who contact Google by failing to include an instruction to do so

5  on its cards, and likewise reducing the number of victims who contact Google by falsely suggesting

6  on its website that, by the time a victim contacts Google, the funds will have become the rightful

7  property of legitimate content sellers.

8       128.    Google's unfair practices designed to perpetuate the scheme and the stream of

9  revenue it generates for Google also include discouraging victims who do call Google from

10  vindicating their rights or otherwise taking action against Google by similarly suggesting that the

11  funds now rightfully belong to someone other than Google or the scammers, and by failing to

12  inform victims who hear that message of the contrary material facts known only to Google,

13  including that Google waits weeks before knowingly depositing a percentage of funds stolen from

14  victims into the bank accounts of Google Play Developers and knowingly keeping a percentage of

15  funds stolen from victims – up to 100% – for itself.

16      129.    Unfair acts under the UCL have been interpreted using three different tests:

17  (1) whether the public policy, which is a predicate to a consumer unfair competition action under

18  the unfair prong of the UCL, is tethered to specific constitutional, statutory, or regulatory

19  provisions; (2) whether the gravity of the harm to the consumer caused by the challenged business

20  practice outweighs the utility of the defendants' conduct; and (3) whether the consumer injury is

21  substantial, not outweighed by any countervailing benefits to consumers or competition, and is an

22  injury that consumers themselves could not reasonably have avoided.  Google's conduct alleged

23  is unfair under all of these tests.

24      130.    As a direct and proximate result of Google's unfair practices, Plaintiff and Class

25  members suffered injury and have paid monies that Google has improperly retained from the

26  Google Play gift card scam.  Google's participation in the gift card scams and concealment of its

27  role and ability to track and stop payments to scammers, aids and abets scammers and further

28  perpetuates the scams.

131.    Plaintiff seeks to enjoin further unfair acts or practices by Google, to obtain restitution and disgorgement of all monies generated as a result of such practices, and for all other relief allowed under CAL. BUS. & PROF. CODE §17200.

### SECOND CAUSE OF ACTION
**Unlawful Practices**
**in Violation of the California Unfair Competition Law**
**CAL. BUS. & PROF. CODE §17200 *et seq.***
**(on Behalf of the Nationwide Class and the Contact Subclass)**

132.    Plaintiff hereby re-alleges and incorporates all allegations in the Complaint, as though fully set forth herein.

133.    At all relevant times there was in full force and effect the UCL, CAL. BUS. & PROF. CODE §17200 *et seq.*, which prohibits, *inter alia*, "any unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE §17200.

134.    Google has unlawfully retained millions of dollars in funds that it knows were stolen from Plaintiff and other victims of the Google Play gift card scam.

135.    In the course of their business, Google repeatedly and regularly engaged in unlawful acts or practices that imposed serious harm on consumers, including Plaintiff and Class members.

136.    Google's acts and practices are unlawful for many reasons, including because Google violates Cal. Penal Code §496 by, *inter alia*, intentionally dispersing stolen property in violation of its affirmative duty to return it or to disclose its whereabouts to its rightful owner.

137.    Google's acts and practices are also unlawful because they violate the California Consumers Legal Remedies Act ("CLRA").

138.    Google's acts and practices are also unlawful because Google attempts to apply its disclaimer language to exculpate itself from its own violations of the Cal. Penal Code and consumer protection statutes and its own acts of conversion.

139.    As a direct and proximate result of Google's unlawful practices, Plaintiff and Class members suffered injury and have paid monies that Google has improperly retained from the Google Play gift card scam.

140.   Plaintiff seeks to enjoin further unlawful acts or practices by Google, to obtain restitution and disgorgement of all monies generated as a result of such practices, and for all other relief allowed under CAL. BUS. & PROF. CODE §17200.

**THIRD CAUSE OF ACTION**
**Unfair Practices**
**in Violation of the California Consumers Legal Remedies Act**
**CAL. CIV. CODE §1750 *et seq.***
**(on behalf of the Nationwide Class and the Contact Subclass)**

141.   Plaintiff hereby re-alleges and incorporates all allegations raised in the Complaint, as though fully set forth herein.

142.   At all relevant times there was in full force and effect the CLRA, CAL. CIV. CODE §1750 *et seq.*

143.   Plaintiff and Class members are "consumers" as that term is defined by CAL. CIV. CODE §1761(d).

144.   Google is a "person" as that term is defined by CAL. CIV. CODE §1761(c).

145.   Google engaged in unfair acts in violation of the CLRA by engaging in the practices described above, including knowingly and intentionally: keeping and disbursing stolen money; concealing from Plaintiff and Class members that Google can identify the Google Account belonging to scammers, stop redemption or spending of those accounts, return the value of the Google Play gift card when provided with the redemption code on the back of a Google Play gift card; and by retaining the money it received as the result of unlawful conduct.

146.   Google also engaged in a number of practices designed to perpetuate the scheme and the stream of revenue it generates for Google.  Those practices, which are unfair alone, and particularly when taken together, include, but are not limited to, failing to adequately warn consumers about the existence, nature, and prevalence of the scams on the packaging of its gift cards, failing to adequately warn consumers on the cards themselves about the existence, nature, and prevalence of scams, reducing the number of victims who contact Google by including an unconscionable and adhesive disclaimer on its packaging and in its Online Terms and Conditions, likewise reducing the number of victims who contact Google by failing to include an instruction to do so on its cards, and reducing the number of victims who contact Google by falsely suggesting

1   on its website that by the time a victim contacts Google, the funds will have become the rightful

2   property of legitimate content sellers.

3       147.   Google's unfair practices designed to perpetuate the scheme and the stream of

4   revenue it generates for Google, also includes discouraging victims who do contact Google from

5   vindicating their rights or otherwise taking action against Google by similarly suggesting that the

6   funds now rightfully belong to someone other than Google or the scammers, and by uniformly

7   failing to inform victims of the contrary material facts known only to Google, including that

8   Google waits weeks before knowingly depositing a portion of the funds stolen from victims into

9   the bank accounts of Google Play Developers and knowingly keeping a percentage of the funds

10   stolen from victims – at times up to 100% – for itself.

11       148.   In the course of its business, Google repeatedly and regularly engaged in unfair acts

12   or practices that imposed serious harm on consumers, including Plaintiff and Class members.

13       149.   Google's acts and practices are unfair because they offend public policy, are

14   immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, including

15   Plaintiff and members of the Class.

16       150.   The injuries suffered by Plaintiff and Class members greatly outweigh any potential

17   countervailing benefit to consumers or competition, and are not injuries that Plaintiff and Class

18   members should have reasonably avoided.

19       151.   The acts and practices complained of herein violate, at a minimum, the sections of

20   the CLRA, which prohibit inserting an unconscionable provision in a contract.

21       152.   As set forth above, Google inserted an unconscionable and adhesive provision in

22   the Online Terms and Conditions.  Google's attempt to disclaim liability for all lost or stolen gift

23   cards discourages consumers from contacting Google, and the provision cannot lawfully be applied

24   to Google Play gift cards involved in gift card scams because Google engages in conduct in

25   connection with those scams that is unlawful, including but not limited to violation of penal code

26   provisions and consumer protection statutes.  Google's attempt to disclaim liability for its knowing

27   participation in and profiting from gift card scams is unconscionable.

28

153.    Pursuant to §1782(a) & (d) of the CLRA, on March 5, 2024, Plaintiff's counsel notified Defendants in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that they rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to act.  If Defendants fail to respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as prescribed by §1782, Plaintiff will move to amend her Complaint to pursue claims for actual, punitive, and statutory damages, as appropriate against Defendants.  As to this cause of action, at this time, Plaintiff seeks injunctive relief.

154.    Plaintiff and the Class therefore also request this Court enter such orders or judgments necessary to restore to any person any money acquired as a result of Google's unfair business practices, and for such other relief, including attorneys' fees and costs, as provided in CAL. CIV. CODE §1780 and the Prayer for Relief.

**FOURTH CAUSE OF ACTION**
**Unlawful Practices**
**in Violation of the California Consumers Legal Remedies Act**
**CAL. CIVIL CODE §1750 *et seq.***
**(on Behalf of the Nationwide Class and the Contact Subclass)**

155.    Plaintiff hereby re-alleges and incorporates all allegations in the Complaint, as though fully set forth herein.

156.    At all relevant times there was in full force and effect the CLRA, CAL. CIV. CODE §1750 *et seq.*

157.    Plaintiff and Class members are "consumers" as that term is defined by CAL. CIV. CODE §1761(d).

158.    Google is a "person" as that term is defined by CAL. CIV. CODE §1761(c).

159.    Google engaged in unlawful acts in violation of the CLRA by the practices described herein.

160.    In the course of their business, Google repeatedly and regularly engaged in unlawful acts or practices that imposed serious harm on consumers, including Plaintiff and the Class members.

CLASS ACTION COMPLAINT

161.   Google's acts and practices are unlawful for many reasons, including because Google violates Cal. Penal Code §496 by, *inter alia*, intentionally dispersing stolen property in violation of its affirmative duty to return it or to disclose its whereabouts to its rightful owner.

162.   Google's acts and practices are also unlawful because they violate the California Unfair Competition Law.

163.   Google's acts and practices are also unlawful because Google attempts to apply its disclaimer language to exculpate itself from its own violations of the Cal. Penal Code and consumer protection statutes and its own acts of conversion.

164.   Pursuant to §1782(a) & (d) of the CLRA, on March 5, 2024, Plaintiff's counsel notified Defendants in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that they rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to act.  If Defendants fail to respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as prescribed by §1782, Plaintiff will move to amend her Complaint to pursue claims for actual, punitive, and statutory damages, as appropriate against Defendants.  As to this cause of action, at this time, Plaintiff seeks injunctive relief.

165.   Plaintiff and the Class members therefore also request this Court enter such orders or judgments necessary to restore to any person any money acquired as a result of Google's unlawful business practices, and for such other relief, including attorneys' fees and costs, as provided in CAL. CIV. CODE §1780 and the Prayer for Relief.

### FIFTH CAUSE OF ACTION
**Receiving, Retaining, Withholding, or Concealing Stolen Property
in Violation of Cal. Penal Code §496
(on Behalf of the Nationwide Class and the Contact Subclass)**

166.   Plaintiff hereby re-alleges and incorporates all allegations in the Complaint, as though fully set forth herein.

167.   California Penal Code §496 declares unlawful for any "person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or

1    extortion, knowing the property to be so stolen or obtained, [to] conceal[], sell[], withhold[] . . .

2    any property from the owner. . . ."  Cal. Penal Code §496(a).

3         168.    Here, Google has (1) received, (2) retained, (3) withheld, and (4) concealed stolen

4    property, namely the money that Class members paid for the Google Play gift cards.

5         169.    It is the money belonging to Plaintiff and Class members that scammers wish to

6    steal and do steal, rather than the stored value on Google Play gift cards.  Indeed, prior to the scam,

7    victims do not possess any Google Play gift cards or stored value.  Instead, they have money, and

8    that money leaves their possession and control and is stolen from them through false pretenses at

9    the time of the retail sale of the gift card.  Similarly, scammers do not desire stored value for their

10   own use, *i.e.*, for their own consumption of digital products.  Instead, scammers desire and steal

11   money, and spend the stored value on gift cards only as a method of obtaining money through gift

12   card scams.  The money that Google ultimately receives in connection with the sale of scammed

13   Google Play gift cards is the money that was stolen from the victim.

14        170.    California Penal Code §496 also creates a private right of action for "any person

15   who has been injured by a violation of subdivision (a)."  Cal. Penal Code §496(c).

16        171.    At all relevant times, Plaintiff and Class members were the rightful owners of the

17   money used to purchase the Google Play gift cards.

18        172.    Plaintiff's and Class members' property was stolen or obtained in a manner

19   constituting theft or extortion by the scammers.  The scammers, through false representations

20   and/or false pretenses defrauded Plaintiff and Class members, convincing them to purchase Google

21   Play gift cards.

22        173.    Google eventually comes into possession of Plaintiff's and Class members' money

23   (which is passed from the retailer which sells the card to an entity known as an integrator, which

24   then passes the money to Google).

25        174.    By the time it receives the money that was stolen from Plaintiff and Class members,

26   Google has actual knowledge that it was stolen.  Google obtains actual knowledge when victims

27   of Google Play gift card scams contact Google, advise Google that they were the victim of a scam,

28   and provide Google with the codes on the back of the gift card.  Additionally, on information and

belief, Google possesses other means and technology to determine, well before Google receives the stolen money associated with particular cards, which Google Play gift cards have been redeemed by scammers, the identity of the Google Account(s) involved in gift card scams, and the identity of victims of gift card scams.

175.    Google wrongfully conceals the location of Plaintiff's and Class members' property by informing them that the gift card funds have been spent, despite the fact that Google does not pay Google Play Developers for purchases made with Google Play gift cards until approximately 15 days after the close of the month that a purchase occurred.  Additionally, Google conceals that, when it freezes the gift cards and/or Google Accounts associated with gift card scams, it retains up to 100% of the victim's money.

176.    Google wrongfully retains the property stolen from Plaintiff and Class members by refusing to return the property that rightfully belongs to Plaintiff and Class members.  Even after Google transfers a portion of the money to Google Play Developers, Google continues to wrongfully retain possession of Plaintiff's and Class members' property by retaining its commission on purchases made with the funds from the Google Play gift cards.

177.    As a direct and proximate result of Google's conduct, Plaintiff and Class members suffered damages.

## SIXTH CAUSE OF ACTION
### Conversion
### (on Behalf of the Nationwide Class and the Contact Subclass)

178.    Plaintiff hereby re-alleges and incorporates all allegations in the Complaint, as though fully set forth herein.

179.    At all relevant times, Plaintiff and Class members had a right to possession in, and were the rightful owners of, the money used to purchase the Google Play gift cards containing stored value which could be used in the Google Play Store.

180.    Google has actual knowledge that it is in possession of Plaintiff's and Class members' property when victims of Google Play gift card scams contact Google, advise Google that they were the victim of a scam, and provide Google with the codes on the back of the gift card. Additionally, on information and belief, Google possesses other means and technology to

1  determine which Google Play gift cards have been redeemed by scammers, the identity of the

2  Google Account involved in gift card scams, and the identity of gift card scam victims.

3          181.    Google substantially interfered with Plaintiff's and Class members' property by

4  knowingly and intentionally retaining a commission on all purchases made with the stolen property

5  and refusing to return Plaintiff's and Class members' property.  Google permanently deprived

6  Plaintiff and Class members from the use and enjoyment of their property.

7          182.    Plaintiff and Class members who contacted Google demanded that Google return

8  their property.  Google denied the demands to return the property.  Moreover, it was unnecessary

9  for Plaintiff and Class members to demand return of the property as, on information and belief,

10  Google possesses other means and technology to determine which Google Play gift cards have

11  been redeemed by scammers, the identity of the Google Account and Google Play Developer

12  accounts involved in gift card scams, and the identity of gift card scam victims.

13          183.    Plaintiff's and Class members' property was used to purchase Google Play gift

14  cards under false pretenses.

15          184.    Plaintiff and Class members did not consent for Google to exercise dominion or

16  control or to retain their property.

17          185.    Google's conduct was a substantial factor in the harm caused to Plaintiff and Class

18  members.

19                          **SEVENTH CAUSE OF ACTION**
                            **Declaratory Judgment**
20                          **28 U.S.C. §2201**
                            **(on Behalf of the Nationwide Class and the Contact Subclass)**
21

22          186.    Plaintiff hereby re-alleges and incorporates all allegations raised in the Complaint,

23  as though fully set forth herein.

24          187.    Under the Declaratory Judgment Act, 28 U.S.C. §2201 *et seq.*, this Court is

25  authorized to enter a judgment declaring the rights and legal relations of the parties and grant

26  further necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as those

27  alleged herein, that are tortious and that violate the terms of the federal and state statutes described

28  in this Complaint.

CLASS ACTION COMPLAINT

188.    Plaintiff seeks a declaration of the rights of the parties under the Federal Declaratory Judgement Act, 28 U.S.C. §2201.

189.    An actual and justiciable controversy exists between the parties in light of Google misrepresenting that there was nothing that they can do when Plaintiff contacted Google to report being a victim of a scam involving Google Play gift cards, and by failing to disclose that Google can identify the Google Play gift cards, Google Accounts, Google Play Developer accounts, knowingly makes payments to accounts involved in gift card scams, and fails to return the money to Plaintiff and the Class.

190.    Google purports to bind Plaintiff and Class members to the terms and conditions set forth on the back of Google Play gift cards and the Online Terms and Conditions on Google's website.  The back of the Google Play gift cards provides, in part: "Terms & Conditions: For additional terms and privacy policy visit play.google.com/us-card-terms."  The Online Terms and Conditions provide, in part, that: "[Defendant Google Arizona LLC] and [Defendant Google Payment Corp.] are not responsible if a Gift Card or Credit is lost, stolen, destroyed, or used without your permission.  [Defendants] will have the right to close customer accounts and bill alternative forms of payment if a fraudulently obtained Gift Card or Credit is redeemed and/or used to make purchases on Google Play."

191.    Plaintiff and Class members lack an adequate remedy at law.

192.    Google cannot, as a matter of law, disclaim or assign the liability of loss, conversion, or destruction of the balance of Google Play gift cards when Google knows that the Google Play gift cards were purchased as a result of wrongful and unlawful conduct, Google has knowledge of the gift card scams perpetrated on Plaintiff and Class members, Google engages in practices which perpetuate the gift card scams, and Google knowingly retains profits from the gift card scams perpetrated on Plaintiff and Class members.  Google cannot, as a matter of law, disclaim or assign the liability of loss for its own criminal conduct, including its violation of Cal. Penal Code §496, described *supra*.

193.    Google's attempt to disclaim liability is unconscionable and unenforceable as to Plaintiff and Class members, and Plaintiff seeks a declaration to that effect.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated, respectfully requests that this Court:

A.      Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more of the Classes defined above;

B.      Appoint Plaintiff as the representative of the Class and her counsel as Class counsel;

C.      Award all actual, general, special, incidental, statutory, punitive, and consequential damages, and restitution to which Plaintiff and the Class members are entitled by law;

D.      Award pre-judgment and post-judgment interest on such monetary relief;

E.      Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to refrain from seeking to enforce the Google Play gift card terms and conditions on victims of gift card scams who did not redeem the Google Play gift card, and to refrain from transferring any money to Google Play Developer accounts associated with gift card scams;

F.      Award reasonable attorneys' fees and costs; and

G.      Grant such further relief that this Court deems appropriate.

**JURY DEMAND**

Plaintiff, on behalf of herself and the putative Class, demands a trial by jury on all issues so triable.

Dated: March 5, 2024                                 **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*s/ Hal D. Cunningham*
Hal D. Cunningham (CA Bar No. 243048)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
hcunningham@scott-scott.com

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Joseph P. Guglielmo*
Amanda M. Rolon*
The Helmsley Building
230 Park Ave., 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com
arolon@scott-scott.com

**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
Nyran Rose Rasche*
Nickolas J. Hagman*
150 S. Wacker, Suite 3000
Chicago, IL 60606
Telephone: 312-782-4880
Facsimile:  318-782-4485
nrasche@caffertyclobes.com
nhagman@caffertyclobes.com

**KIRBY MCINERNEY LLP**
Anthony F. Fata*
Sarah E. Flohr*
211 West Wacker Drive, Suite 550
Chicago, IL 60606
Telephone: 312-767-5180
Facsimile: 312-767-5181
afata@kmllp.com
sflohr@kmllp.com

**KIRBY MCINERNEY LLP**
Marko Radisavljevic
1420 Kettner Boulevard
San Diego, CA 92101
Telephone: 858-834-2044
Facsimile: 858-255-7772
mradisavljevic@kmllp.com

***Attorneys for Plaintiff and the Putative Class***

*\*Pro hac vice forthcoming*