1  Joseph P. Guglielmo (*pro hac vice*)
   **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
2  The Helmsley Building
3  230 Park Avenue, 17th Floor
   New York, NY 10169
4  Telephone: 212-223-6444
   jguglielmo@scott-scott.com
5
6  ***Attorneys for Plaintiff and the Putative Class***
7  [Additional Counsel on Signature Page.]

8

9                  **UNITED STATES DISTRICT COURT**

10                **NORTHERN DISTRICT OF CALIFORNIA**

11                        **SAN JOSE DIVISION**

12

| | |
|---|---|
| 13  JUDY MAY, Individually, and on Behalf of All Others Similarly Situated, | Case No. 5:24-cv-01314-BLF |
| 14 | <u>CLASS ACTION</u> |
| 15            Plaintiff, | **PLAINTIFF'S OPPOSITION TO** |
| 16       v. | **DEFENDANTS' MOTION TO DISMISS, MOTION TO STRIKE, AND REQUEST FOR JUDICIAL NOTICE** |
| 17  GOOGLE LLC, GOOGLE ARIZONA LLC, GOOGLE PAYMENT CORP., ALPHABET, INC., and DOES 1 Through 10, inclusive. | |
| 18 | Date: September 26, 2024 |
| 19            Defendants. | Time: 9:00 a.m. |
| 20 | Courtroom: 3, 5th Floor (San Jose) Judge: Hon. Beth Labson Freeman |

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................... 1

ARGUMENT ................................................................................................................. 3

I. Rule 9(B) Does Not Apply, but Even if it did, Plaintiff Would Satisfy
It.…………… ...................................................................................................... 3

II. Google's Limitation of Liability is Unconscionable as Applied to Scam Victims ............. 6

III. Plaintiff's Allegations Do Not Run Afoul of the Group Pleading Doctrine ...................... 6

IV. Plaintiff's Claims are Timely, and Google's Motion to Strike Should be Denied ............ 7

V. Plaintiff Plausibly Pleads the Essential Elements of Each
Claim…………. ................................................................................................. 11

  A. Plaintiff States Claims for Unlawfully Receiving, Withholding, and
Concealing Stolen Property in Violation of Section 496 ..................................... 11

  B. Plaintiff States a Claim for Conversion ............................................................ 14

  C. Plaintiff Plausibly States a Claim Under the CLRA ......................................... 15

    1. Procedural Unconscionability ................................................................ 16

    2. Substantive Unconscionability .............................................................. 17

  D. Plaintiff Plausibly States a Claim Under the UCL ............................................ 18

    1. Keeping Scammed Money for Itself is Unfair Under All Three Tests ..... 18

    2. Disbursing Stolen Money to Others is Unfair Under All Three Tests ...... 19

    3. Discouraging Scam Victims from Seeking Refunds and Refusing to
Refund any Portion of the Stolen Money is Unfair Under All Three Tests
.................................................................................................................. 19

  E. Plaintiff Plausibly Alleges the Need for Equitable Relief Under the UCL .......... 21

  F. Plaintiff Plausibly Alleges Statutory Standing Under the UCL and CLRA ......... 22

VI. Plaintiff Plausibly Alleges a Claim for Declaratory Relief ............................... 23

VII. The Court Should Deny Google's Request for Judicial Notice of Certain Exhibits ........ 24

VIII. Leave to Amend is Appropriate ...................................................................... 24

CONCLUSION .......................................................................................................... 25

ii

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOT. TO DISMISS, MOT. TO STRIKE, AND REQ. FOR
JUD. NOTICE
Case Number: 5:20-cv-04812-EJD

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.B. v. Google LLC,*
  2024 WL 3052969 (N.D. Cal. June 18, 2024) ..................................................................7

*AdTrader, Inc. v. Google LLC,*
  2018 WL 3428525 (N.D. Cal. July 13, 2018) .................................................................12

*Aguilar v. Boulder Brands, Inc.,*
  2013 WL 2481549 (S.D. Cal. June 10, 2013) ..................................................................9

*Albillio-De Leon v. Gonzales,*
  410 F.3d 1090 (9th Cir. 2005) .......................................................................................10

*Antonelli v. Finish Line, Inc.,*
  2012 WL 525538 (N.D. Cal. Feb. 16, 2012) .................................................................15

*Barrett v. Apple Inc.,*
  2022 WL 2119131 (N.D. Cal. June 13, 2022) ............................................................ *passim*

*Barrett v. Apple Inc.,*
  2023 WL 3977633 (N.D. Cal. June 13, 2023) ...........................................................12, 13

*Bautista v. Valero Mktg. and Supply Co.,*
  2016 WL 3924117 (N.D. Cal. Jul. 21, 2016) ..................................................................4

*Bell v. Feibush,*
  212 Cal. App. 4th 1041 (2013) .................................................................................11, 12

*Bhatia v. Silvergate Bank,*
  2024 WL 1199679 (S.D. Cal. Mar. 20, 2024) ...............................................................12

*Bias v. Wells Fargo & Co.,*
  942 F. Supp. 2d 915 (N.D. Cal. 2013) ...........................................................................18

*Boulton v. Am. Transfer Servs., Inc.,*
  2015 WL 2097807 (S.D. Cal. May 5, 2015)...............................................................6, 14

*Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.,*
  622 F.3d 996 (9th Cir. 2010) .........................................................................................16

*Brown v. Food for Life Baking Co., Inc.,*
  658 F. Supp. 3d 738 (N.D. Cal. 2023) ...........................................................................21

iii

*Brown v. Hain Celestial Grp., Inc.*,
  913 F. Supp. 2d 881 (N.D. Cal. 2012) ...................................................................10

*City & Cnty. of San Francisco v. Purdue Pharma L.P.*,
  491 F. Supp. 3d 610 (N.D. Cal. 2020) ...................................................................19

*Clark v. Yodlee, Inc.*,
  No. 20 Civ. 5991, ECF No. 356 (N.D. Cal. Sept. 15, 2023)...................................22

*Coffee v. Google, LLC*,
  2022 WL 94986 (N.D. Cal. Jan. 10, 2022) ............................................................23

*Davidson v. Kimberly–Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ...................................................................................5

*Day v. GEICO Cas. Co.*,
  580 F. Supp. 3d 830 (N.D. Cal. 2022) ...................................................................19

*DeSoto Cab Co., Inc. v. Uber Techs., Inc.*,
  2018 WL 10247483 (N.D. Cal. Sept. 24, 2018) ......................................................6

*E.H. v. Meta Platforms, Inc.*,
  2024 WL 557728 (N.D. Cal. Feb. 12, 2024) ............................................................3

*Estakhrian v. Obenstine*,
  233 F. Supp. 3d 824 (C.D. Cal. 2017) ...................................................................21

*Evans v. ZB, N.A.*,
  2019 WL 6918278 (E.D. Cal. Dec. 19, 2019) ..........................................................8

*Formic Ventures LLC v. SomaLogic, Inc.*,
  2023 WL 6037899 (N.D. Cal. Sept. 15, 2023) ......................................................14

*Freeney v. Bank of Am., Corp.*,
  2016 WL 5897773 (C.D. Cal. Aug. 4, 2016)..........................................................12

*Gardner v. Shell Oil Co.*,
  2010 WL 1576457 (N.D. Cal. Apr. 19, 2010) ........................................................10

*Hong Kong uCloudlink Network Tech. Ltd. v. SIMO Holdings*,
  2021 WL 4923328 (N.D. Cal. Jul. 9, 2021)..............................................................6

*Hynix Semiconductor Inc. v. Toshiba Corp.*,
  2006 WL 3093812 (N.D. Cal. Oct. 31, 2006)........................................................24

*In re Apple Inc. Device Performance Litig.*,
  386 F. Supp. 3d 1155 (N.D. Cal. 2019) .................................................................24

iv

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOT. TO DISMISS, MOT. TO STRIKE, AND REQ. FOR
JUD. NOTICE
Case Number: 5:24-cv-01314-BLF

*In re Emery*,
    317 F.3d 1064 (9th Cir. 2003) ...................................................................................15

*In re Google, Inc. Privacy Policy Litig.*,
    58 F. Supp. 3d 968 (N.D. Cal. 2014) ..........................................................................23

*In re Sony PS3 Other OS Litig.*,
    551 Fed. Appx. 916 (9th Cir. 2014) ............................................................................18

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    313 F. Supp. 3d 1113 (N.D. Cal. 2018) ......................................................................17

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .....................................................................................5

*Kennard v. Lamb Weston Holdings, Inc.*,
    2019 WL 1586022 (N.D. Cal. Apr. 12, 2019) ............................................................18

*Kidron v. Movie Acq. Corp.*,
    40 Cal. App. 4th 1571 (1995) .....................................................................................13

*LA Tech Consulting, LLC v. Am. Express Co.*,
    2023 WL 8166780 (9th Cir. Nov. 24, 2023)...............................................................15

*Lozano v. AT&T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) ..................................................................................3, 18

*Mayhall v. Amazon Web Servs.*,
    2022 WL 2718091 (W.D. Wash. May 24, 2022)..........................................................6

*McCraner v. Wells Fargo & Co.*,
    2023 WL 2728719 (S.D. Cal. Mar. 30, 2023) ..............................................................8

*Melendez v. Westlake Servs., LLC*,
    74 Cal. App. 5th 586 (2022) .......................................................................................22

*Meyers v. Alphabet, Inc.*,
    No. 2:21-cv-01767 (C.D. Cal.) ...................................................................................24

*Moore v. Mars Petcare US, Inc.*,
    966 F.3d 1007 (9th Cir. 2020) ...............................................................................5, 22

*Morris v. Redwood Empire Bancorp*,
    128 Cal. App. 4th 1305 (2005) ...................................................................................16

*Nygren v. Hewlett-Packard Co.*,
    2009 WL 10696446 (N.D. Cal. May 28, 2009) ..........................................................20

v

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOT. TO DISMISS, MOT. TO STRIKE, AND REQ. FOR
JUD. NOTICE
Case Number: 5:24-cv-01314-BLF

*Oakdale Vill. Grp. v. Fong*,
    43 Cal. App. 4th 539 (1996) ...................................................................................14

*OTO, L.L.C. v. Kho*,
    447 P.3d 680 (Cal. 2019) ................................................................................16, 17

*PacifiCare Health Sys., Inc. v. Book*,
    538 U.S. 401 (2003) ...............................................................................................8

*Patel v. Citibank Corp.*,
    2019 WL 7987113 (C.D. Cal. Sept. 27, 2019) .....................................................23

*People ex rel. Harris v. Sarpas*,
    225 Cal. App. 4th 1539 (2014) ............................................................................22

*People v. Miller*,
    81 Cal. App. 4th 1427 (2000) ..............................................................................11

*People v. Wielograf*,
    101 Cal. App. 3d 488 (1980) ...............................................................................14

*Pirozzi v. Apple, Inc.*,
    966 F. Supp. 2d 909 (N.D. Cal. 2013) ...........................................................22, 23

*Pro-Com Prods., Inc. v. Optimal Sante, LLC*,
    2023 WL 11663237 (C.D. Cal. Oct. 30, 2023)......................................................4

*Prudential Home Mortgage Co. v. Superior Court*,
    78 Cal. Rptr. 2d 566 (Cal. App.4[th] Dist., 1998) ..................................................8

*Rattler v. MH SUB I, LLC*,
    2020 WL 3128899 (N.D. Cal. Jun. 12, 2020) ......................................................10

*Rubenstein v. Neiman Marcus Grp. LLC*,
    687 F. App'x 564 (9th Cir. 2017) ..........................................................................5

*Ruppert Sales & Eng'g v. Amphenol Corp.*,
    2016 WL 9211682 (N.D. Cal. Aug. 29, 2016) ......................................................8

*Sanchez v. Nature, Inc.*,
    626 F. Supp. 3d 1107 (N.D. Cal. 2022) ...............................................................22

*Sanchez v. Navy Fed. Credit Union*,
    2023 WL 6370235 (C.D. Cal. Aug. 14, 2023) .....................................................20

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    498 F.3d 976 (9th Cir. 2007) ...............................................................................16

vi

*Siry Invest., L.P. v. Farkhondehpour,*
    13 Cal. 5th 333 (Cal. 2022) ................................................................................. 8, 14

*Smith v. State Farm Mut. Auto. Ins. Co.,*
    93 Cal. App. 4th 700 (2001) ...................................................................................... 21

*Snapkeys, Ltd. v. Google LLC,*
    539 F.Supp.3d 1040 (N.D. Cal. 2021) ...................................................................... 14

*Sorensen v. Lexar Media, Inc.,*
    2012 WL 929849 (N.D. Cal. Mar. 19, 2012) ............................................................ 24

*Talece Inc. v. Zheng Zhang,*
    2020 WL 6205241 (N.D. Cal. Oct. 22, 2020) ............................................................. 5

*Talece Inc. v. Zheng Zhang,*
    2021 WL 1749917 (N.D. Cal. May 4, 2021) ............................................................... 4

*Ting v. AT&T,*
    319 F.3d 1126 (9th Cir. 2003) ................................................................................... 16

*Tivoli LLC v. Sankey,*
    2015 WL 12683801 (C.D. Cal. Feb. 3, 2015) ............................................................. 7

*Troyk v. Farmers Grp., Inc.,*
    171 Cal. App. 4th 1305 (2009) .................................................................................. 23

*Tu Le v. Prestige Cmty. Credit Union,*
    2023 WL 9689133 (C.D. Cal. Nov. 6, 2023) ............................................................... 8

*Von Saher v. Norton Simon Museum of Art at Pasadena,*
    2015 WL 12910626 (C.D. Cal. Apr. 2, 2015) .............................................................. 9

*Von Saher v. Norton Simon Museum of Art at Pasadena,*
    578 F.3d 1016 (9th Cir. 2009), *amended on other grounds*, 592 F.3d 954 (9th
    Cir. 2010) ................................................................................................................ 7, 9

*Welco Elecs., Inc. v. Mora,*
    223 Cal. App. 4th 202 (2014) .................................................................................... 15

*Williams v. Superior Ct.,*
    81 Cal. App. 3d 330 (1978) .................................................................................... 9, 19

*Worldwide Travel, Inc. v. Travelmate US, Inc.,*
    2016 WL 1241026 (S.D. Cal. Mar. 30, 2016) ............................................................ 21

**Statutes**

Cal. Bus. & Prof. Code §17203 .......................................................................................... 21

Cal. Civ. Proc. Code §340(a) ................................................................................8

Cal. Civ. Proc. Code §338 ...........................................................................7, 8, 9

Cal. Civ. Proc. Code §354.5 ................................................................................8, 9

Cal. Civ. Code §1770(a)(19)..............................................................................15

**Rules & Regulations**

Fed. R. Civ. P. 9(b) ...................................................................................3, 4, 5

Fed. R. Civ. P. 12(b)(6)...........................................................................................7

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOT. TO DISMISS, MOT. TO STRIKE, AND REQ. FOR JUD. NOTICE
Case Number: 5:24-cv-01314-BLF

# INTRODUCTION

Plaintiff Judy May ("Plaintiff") respectfully submits this memorandum in opposition to the combined motion to dismiss, motion to strike and request for judicial notice ("Motion" or "Mot.") filed by Google LLC, Google Arizona LLC, Google Payment Corp., and Alphabet, Inc. (collectively, "Defendants" or "Google") at ECF No. 39. For the reasons set forth herein, Google's Motion should be denied.

# FACTUAL AND PROCEDURAL BACKGROUND

This case arises from Google's conduct in perpetuating, and knowingly profiting from, formulaic "false pretense" gift card scams. It is similar in many respects to a case against Apple involving its gift cards, which is proceeding before Judge Davila. *See Barrett v. Apple Inc.*, 2022 WL 2119131 (N.D. Cal. June 13, 2022) (sustaining several causes of action under California law).

Under duress from scammers' urgent communications, Plaintiff bought Google Play gift cards at retail stores. At the moment of sale, her money was stolen and began its journey to Google. ¶¶169, 173.[1] Plaintiff then provided the cards' redemption codes to scammers, who promptly redeemed the codes to their own scammer-controlled Google Accounts. ¶¶97-98. Google credited the scammers' accounts with the cards' stored value, which the scammers then used to acquire Google Play digital products. ¶¶5, 56-58. Finally, at least 15 days after the end of the month in which the scammer used the stored credit on digital products, Google transferred some of the stolen money to the developers of the digital products, but kept a substantial portion of that money—typically 15-30%, but sometimes more—for itself. ¶¶5, 30, 70.

Google has sophisticated systems for tracking and analyzing every step of this process, from the initial purchase of Google Play gift cards at retail stores to redemption and spending in the Google Play platform. ¶¶24, 33, 36, 61, 80. For years, Google has consciously profited from the scheme, knowing scammers utilize the Google platform, knowing which Google accounts are

---

[1] Allegations in the Class Action Complaint, ECF No. 1, are cited as "¶__."

used by scammers, and knowing which digital content is purchased by scammers. ¶¶42-44, 54-61, 80.

Plaintiff is not alone. Many consumers (the "Class") have been subject to the Google Play gift card scam. ¶107. FTC data reflects that Google Play gift cards were used in about 20% (approximately $85 million) of the total $433.5 million in gift card scams reported to the FTC during 2018-2021. ¶49. The FTC-reported scams are a small percentage of the total Google Play gift card scams. ¶50-51. The total scams during this period are estimated to be $800 million, and Google's 15-30% commission on the total scams during this period are $150 million-$300 million. ¶51. Google keeps these commissions, knowing the cards were involved in scams. ¶¶58, 63.

Google failed to state on its cards and packaging or otherwise that, even if the Google Play gift card was used, if the consumer contacts Google promptly after becoming the victim of a scam and provides the redemption code to Google, Google can identify the Google Account involved in the scam, stop payment to the digital product developer, and refund the money spent on the Google Play gift card to the victim. ¶¶81-82, 85. Google has never provided an instruction on its cards and packaging directing people who have realized they are victims to call Google immediately to report the scam; indeed, for many years while the scam was ongoing, Google did not add any kind of statement about scams to Google Play gift cards and packaging. ¶93.

Many Class members contacted Google within hours or days of being scammed, *i.e.*, before Google disbursed any of the stolen money to the digital product developers. ¶64. At that point, Google still had the stolen money. ¶65. But when victims contacted Google, it did not return the money to the rightful owners, instead responding uniformly, using a standardized protocol. ¶75. Google requests and records victims' names and contact information and the gift cards' redemption codes. *Id*. Google tells the victims that the funds have been spent and that there is nothing Google can do, statements which are contrary to Google's ability to return the funds. ¶¶75-77. As a result of Google's protocol and unconscionable disclaimer described below, most victims who contact Google are discouraged from pursuing the matter further. ¶¶68, 70, 92.

Google predicates its refusal to refund on "not refundable" language on its cards and packaging and "not responsible if a Gift Card or Credit is lost, stolen, destroyed or used without your permission" language in its online Terms of Service. ¶¶38, 67. As applied to gift card scam victims, the language is unconscionable. ¶40. It discourages victims (the Class) from contacting Google in the first instance: most victims believe that any refund effort would be futile and do not report the scam to Google. ¶73. And even those who do are refused based on the disclaimer. ¶67.

On March 5, 2024, Plaintiff filed her Class Action Complaint. *See* ECF No. 1. Plaintiff asserts seven causes of action for: (I) unfair practices under the Unfair Competition Law ("UCL"); (II) unlawful practices under the UCL; (III) unfair practices under the California Consumers Legal Remedies Act ("CLRA"); (IV) unlawful practices under the CLRA; (V) receiving, retaining, withholding, and concealing (each separately actionable) stolen property under California Penal Code section 496; (VI) common law conversion; and (VII) declaratory judgment.

## ARGUMENT

### I.    Rule 9(b) Does Not Apply, But Even if it Did, Plaintiff Would Satisfy It

Google contends the claims "sound in fraud," urging application of Rule 9(b). Mot. at 4-5. Plaintiff's claims, however, do not sound in fraud, but instead arise from unfair and unlawful conduct independent of fraud. *See* ¶¶125-28 (UCL unfairness); ¶¶134-38 (UCL unlawfulness); ¶¶141- 154 (CLRA unfairness); ¶¶161- 163 (CLRA unlawfulness). Plaintiff also alleges violations of California Penal Code section 496 (¶¶ 168-176) and conversion (¶¶179-184) that do not depend on allegations of fraud.

"Unfair" and "unlawful" conduct under the UCL is distinct from "deceptive" conduct. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). Plaintiffs "do not need to meet Rule 9(b) or identify misrepresentations based on their claims that [defendant's] conduct is unfair or illegal under the UCL." *E.H. v. Meta Platforms, Inc.*, 2024 WL 557728, at *3 (N.D. Cal. Feb. 12, 2024). In *E.H. v. Meta Platforms*, the court rejected defendants' arguments that Rule 9(b) applied to claims brought under the UCL for unfair and unlawful conduct, even though those claims involved omissions. *Id.* ("[T]here is no reason to think that the only way a defendant can

incur liability under the UCL for the failure to disclose information is through the fraudulent-practices prong. If the withholding of information is part of an unfair business practice that falls short of outright fraud, it could still give rise to liability[.]"). Here, the unfair and unlawful conduct claims are not predicated on fraud. They are predicated on Google's: (1) knowingly keeping stolen funds for itself (¶¶125-26 UCL unfairness); (2) disbursing stolen funds to third parties (¶126 UCL unfairness); (3) failing to warn consumers of gift card scams (¶127 UCL unfairness); (4) unconscionable disclaimer language (¶127 UCL unfairness, ¶136 UCL unlawfulness, ¶146 CLRA); and (5) receiving, retaining, withholding and concealing stolen property in violation of section 496 (¶¶137-138 UCL unlawfulness, ¶161 CLRA).

Allegations that Google failed to disclose that it still had Plaintiff's stolen funds and still had the ability to refund her, or failed to disclose that it was able to identify scams by tracking gift card purchases and redemptions, do not sound in fraud and are not subject to Rule 9(b). *See Bautista v. Valero Mktg. and Supply Co.*, 2016 WL 3924117, at *3 (N.D. Cal. Jul. 21, 2016) (Rule 9(b) inapplicable to CLRA and UCL claims where allegations that defendant omitted information and failed to disclose surcharge did not sound in fraud).

Likewise, Plaintiff's section 496 and conversion claims do not assert that Google itself engaged in fraud.[2] In any event, Plaintiff satisfies Rule 9(b) by alleging "which . . . property was stolen, approximately when it was taken, by whom, and where it went." *Talece Inc. v. Zheng Zhang*, 2021 WL 1749917, at *6 (N.D. Cal. May 4, 2021); *see also Pro-Com Prods., Inc. v. Optimal Sante, LLC*, 2023 WL 11663237, at *2 (C.D. Cal. Oct. 30, 2023) (declining to decide whether Rule 9(b) applied to Section 496 claim because "even assuming *arguendo* a heightened pleading standard applies, the court finds Counterclaimants have pleaded facts with particularity"). In particular, Plaintiff alleges that she was scammed out of $1,000 on or about April 1-2, 2021 (¶¶

---

[2] Even the phrase "aids and abets scammers" appears only once, ¶130, and Plaintiff does not bring an aiding and abetting claim against Google.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOT. TO DISMISS, MOT. TO STRIKE, AND REQ. FOR JUD. NOTICE
Case Number: 5:24-cv-01314-BLF

1    97-98), was unaware of gift card scams despite reading the language on Google Play gift cards and

2    packaging (¶¶99-101), contacted Google "the next day" (i.e., around April 3, 2021), and was

3    informed by Google that "the money had been spent and there was nothing Google could do for

4    her." ¶103. Plaintiff also explains why Google's statement that there was "nothing it could do"

5    was false—it still had her money and the ability to stop payment of it to third parties. ¶¶64-85.

6          These allegations suffice to "place[] Defendants on sufficient notice to respond," and

7    satisfy Rule 9(b) to the extent applicable. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020

8    (9th Cir. 2020) (UCL and CLRA claims sounding in fraud "satisfie[d] the Rule 9(b) heightened

9    pleading standard in alleging the basic premise of 'what is false or misleading about a statement'");

10   *Davidson v. Kimberly–Clark Corp.,* 889 F.3d 956, 964-65 (9th Cir. 2018) (reversing dismissal

11   under Rule 9(b) where plaintiff alleged why marketing of wipes as "flushable" was false).

12         Google's demand for more specifics about "when or how" it knew Plaintiff's money was

13   stolen is misguided. Mot. at 5. As an initial matter, keeping money known to be stolen is not, itself,

14   fraud, so Rule 9(b) does not apply (and Google cites no authority to the contrary). *Id.* Even if Rule

15   9(b) applied, however, Plaintiff provides detailed allegations concerning Google's omniscience in

16   the Google Play ecosystem and overall ability to identify and track scams. ¶¶24, 33, 36, 61, 80-83.

17   Plaintiff also alleges that she reported the scam to Google in early April 2021, which is the latest

18   point at which Google would have known the money was stolen. ¶103. Without access to Google's

19   internal data relating to the gift cards she purchased, Plaintiff is not required to be more specific.

20   *See Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567-68 (9th Cir. 2017) ("Rule

21   9(b) only requires that plaintiffs specifically plead those facts surrounding alleged acts of fraud to

22   which they can reasonably be expected to have access. As such, in cases where fraud is alleged,

23   we relax pleading requirements where the relevant facts are known only to the defendant.")

24   (internal punctuation and citation omitted).

25         Finally, the cases Google cites are inapposite because in each, it was the defendant who

26   committed the fraud against the plaintiffs. Mot. at 4-5. None of the decisions address the pleading

27   standard where the defendant is *not* alleged to be the perpetrator of the underlying fraud, but

28

1   instead engages in unfair practices to perpetuate and knowingly profit from that fraud. *See Kearns*

2   *v. Ford Motor Co.*, 567 F.3d 1120, 1123 (9th Cir. 2009) (auto purchasers alleged fraudulent

3   misrepresentations by defendant manufacturer); *Talece Inc. v. Zheng Zhang*, 2020 WL 6205241

4   (N.D. Cal. Oct. 22, 2020) (corporation sued officers for concealing information, misappropriation

5   and theft); *Boulton v. Am. Transfer Servs., Inc.*, 2015 WL 2097807 (S.D. Cal. May 5, 2015)

6   (investor sued company that defrauded her into investing in it).

7   **II.     Google's Limitation of Liability is Unconscionable as Applied to Scam Victims**

8            Google urges dismissal of all claims because its disclaimer purportedly negates liability for

9   third party misconduct. Mot. at 5-6. Google's disclaimer argument is an affirmative defense, for

10  which it bears the burden. *Hong Kong uCloudlink Network Tech. Ltd. v. SIMO Holdings*, 2021

11  WL 4923328, at *8 (N.D. Cal. Jul. 9, 2021). Google cannot meet its burden. An argument very

12  similar to Google's was rejected in *Barrett* and should be rejected here, as well. *See Barrett*, 2022

13  WL 2119131, at *14 (defendant's "disclaimer of its own tortious acts" was "unconscionable and

14  an unfair practice" in violation of the UCL and CLRA). As explained in Section V(C), *infra*,

15  Plaintiff plausibly alleges that Google's disclaimer is not only unenforceable because Google seeks

16  to avoid liability for its *own* misconduct, but also gives rise to a claim under the CLRA.

17  **III.    Plaintiff's Allegations Do Not Run Afoul of the Group Pleading Doctrine**

18           Google argues that Plaintiff impermissibly relies on group pleading without alleging the

19  actions taken by each defendant. Mot. at 7. "'[G]roup pleading' is not fatal as long as the complaint

20  gives defendants fair notice of the claims against them." *DeSoto Cab Co., Inc. v. Uber Techs., Inc.*,

21  2018 WL 10247483, at *15 (N.D. Cal. Sept. 24, 2018). Where, as here, defendants are alleged to

22  be entities who acted in concert, the pleading standard is satisfied when it is "possible that the

23  allegations of wrongdoing are intended to include each and every entity defendant." *Mayhall v.*

24  *Amazon Web Servs.*, 2022 WL 2718091, at *5 (W.D. Wash. May 24, 2022) (citations and internal

25  quotations omitted). The Complaint identifies a limited subset of actors within the same corporate

26  family who each play a role in the Google Play gift card business. *See* ¶37 (quoting terms of

27  service: "Gift Cards and Credits are issued by Google Arizona LLC ("GAZ") … the redeemed

28

1    balance will be transferred from GAZ to its affiliate, Google Payment Corp. ("GPC"), and

2    thereafter maintained by GPC as Google Play balance in the user's Google Payments account.");

3    *see also* ¶190 (alleging specific defendants who disclaim liability and are involved in addressing

4    fraud). Here, the "group is much narrower, closely related, and in the same general line of [Google

5    Play gift card] business," and as such, the group pleading doctrine does not compel dismissal.

6    *Tivoli LLC v. Sankey*, 2015 WL 12683801, at *4 (C.D. Cal. Feb. 3, 2015).[3]

7    **IV.    Plaintiff's Claims are Timely, and Google's Motion to Strike Should be Denied**

8        Google asserts a statute of limitations defense. Mot. at 8. "In the Ninth Circuit, the statute

9    of limitations is generally an affirmative defense rather than an element of the plaintiff's claim."

10   *A.B. v. Google LLC*, 2024 WL 3052969, at *3 (N.D. Cal. June 18, 2024) (citing *Lasko v. Caliber*

11   *Home Loans*, 2022 WL 728820, at *1 (9th Cir. Mar. 10, 2022)). A motion to dismiss based on the

12   affirmative defense may only be granted "'if the assertions of the complaint, read with the required

13   liberality, would not permit the plaintiff to prove that the statute was tolled' or that the claims were

14   timely." *Id.* (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)). "Only when

15   the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable

16   defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Id.*

17   (citing *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 (9th Cir. 2018)).

18       Here, Plaintiff was scammed and contacted Google in April 2021. ¶¶95-103. Plaintiff filed

19   suit less than three years later, in March 2024. Google concedes that Plaintiff filed suit within the

20   statute of limitations for her UCL claims (four years), CLRA claims (three years), and conversion

21   claim (three years). Mot. at 8-9. Google also concedes that Plaintiff filed suit within the limitations

22   period for her section 496 claims with respect to actual damages (alleged at, *e.g.*, ¶177), costs of

23   suit and attorneys' fees. Mot. at 8-9.

24

25   _____

26   [3] The Parties' stipulation for the voluntary dismissal of Defendant Alphabet, Inc. without prejudice,

27   is forthcoming.

28

1    *Section 496 Treble Damages.* Google asserts, without developing the argument, that a one-
2    year limitations period applies to Plaintiff's claim for treble damages. Mot. at 8-9. To the contrary,
3    the three-year limitations period set forth in Cal. Civ. Proc. Code §338 applies. "California also
4    has a three-year statute of limitations for actions to recover stolen property." *Von Saher v. Norton*
5    *Simon Museum of Art at Pasadena*, 578 F.3d 1016, 1019 (9th Cir. 2009), *amended on other*
6    *grounds*, 592 F.3d 954 (9th Cir. 2010) (three-year limitations period under Cal. Civ. Proc. Code
7    §338 applied to section 496 claim); *McCraner v. Wells Fargo & Co.*, 2023 WL 2728719, at *3
8    (S.D. Cal. Mar. 30, 2023) (same); *Evans v. ZB, N.A.*, 2019 WL 6918278, at *6 (E.D. Cal. Dec. 19,
9    2019) (same).

10   The Supreme Court has held that statutes allowing an injured person to recover treble
11   damages serve a "remedial" purpose, and are not a penalty or forfeiture. *See PacifiCare Health*
12   *Sys., Inc. v. Book*, 538 U.S. 401, 406 (2003) (treble damages allowed under Clayton Act and RICO
13   are "remedial," not "punitive"); *see also Ruppert Sales & Eng'g v. Amphenol Corp.*, 2016 WL
14   9211682, at *2 (N.D. Cal. Aug. 29, 2016) (rejecting application of section 340 to a statutory
15   remedy allowing for the "private recovery of treble damages") (citing *Stone v. Travelers Corp.*, 58
16   F.3d 434, 439 (9th Cir. 1995)). The California Supreme Court has described the recovery of treble
17   damages under section 496 as an "enhanced civil remedy," not a penalty or forfeiture. *See Siry*
18   *Invest., L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 355-57, 365-67 (Cal. 2022) (quoting *Switzer v.*
19   *Wood*, 35 Cal. App. 5th 116 (2019)).

20   Google cites one case, *Tu Le v. Prestige Cmty. Credit Union,* 2023 WL 9689133 (C.D. Cal.
21   Nov. 6, 2023), for the proposition that the one-year limitations period under Cal. Civ. Proc. Code
22   §340(a) applies. Section 340(a), however, deals with "[a]n action upon a statute for a penalty or
23   forfeiture." As the cases cited above hold, statutes like section 496 allowing an *injured* person to
24   recover treble damages are "remedial" in nature and do not impose a penalty or forfeiture. In *Tu*
25   *Le*, the court did not cite any California or federal cases holding that the one-year limitations period
26   applies to section 496 claims. Instead, it cited *Prudential Home Mortgage Co. v. Superior Court*,
27   78 Cal. Rptr. 2d 566 (Cal. App. 1998), where the statute required the violator to "*forfeit . . . the*

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOT. TO DISMISS, MOT. TO STRIKE, AND REQ. FOR
JUD. NOTICE
Case Number: 5:24-cv-01314-BLF

1   sum of three hundred dollars ($300)." *Id.* at 568 (citing Cal. Civ. Code §2941) (emphasis added).

2   The court in *Tu Le* attempted to distinguish the Ninth Circuit's decision in *Von Saher* as "not even

3   address[ing] the California Penal Code §496 claim." *Id.* at *9. In fact, the plaintiff in *Von Saher*

4   brought two claims: one under Cal. Civ. Proc. Code §354.5, and the other under Cal. Penal Code

5   §496. *Von Saher*, 578 F.3d at 1020. The Ninth Circuit affirmed dismissal of the section 354.5 claim

6   on preemption grounds. *Id.* at 1029. It then reversed dismissal of the remaining claim, finding

7   "[t]hough [plaintiff] cannot bring her claim under §354.3, she may be able to state a cause of action

8   within the three-year statute of limitations of §338." *Id.* On remand, plaintiff pursued a section 496

9   claim. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 2015 WL 12910626, at *3

10  (C.D. Cal. Apr. 2, 2015). Accordingly, *Tu Le*'s basis for distinguishing *Von Saher* appears to be

11  mistaken.

12         In addition, in this case, Plaintiff alleges Google's retention and concealment of stolen

13  property through the present, acts which constitute continuing violations. "[O]ne of the purposes

14  of including both receiving and concealing in Penal Code section 496 is to enable prosecution for

15  the continuing purposeful concealment of stolen property where prosecution for the receipt of that

16  property is barred by the statute of limitations." *Williams v. Superior Ct.*, 81 Cal. App. 3d 330,

17  343-44 (1978) ("It would offend our sense of common justice to think that if someone acquired a

18  valuable piece of stolen property for his own use and managed to conceal it for three years, he

19  could thereafter continue to do so, and to reap the benefits of using it, with impunity. We do not

20  think that is the intent of the law."). Google makes no arguments with respect to its acts of

21  concealing and withholding stolen property, which continue to this day.

22         In any event, the Court should defer consideration of this statute of limitations defense

23  based on *Tu Le*, which was decided on a motion for summary judgment after discovery. Google's

24  argument is essentially limited to the measure of damages recoverable for a claim for receiving

25  stolen property. Plaintiff does not have the benefit of a developed record (especially as it relates to

26  her claim that the limitations period is tolled). *See Aguilar v. Boulder Brands, Inc*., 2013 WL

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOT. TO DISMISS, MOT. TO STRIKE, AND REQ. FOR
JUD. NOTICE
Case Number: 5:24-cv-01314-BLF

1  2481549, at *6 (S.D. Cal. June 10, 2013) ("The issue of the amount of damages Plaintiff can prove

2  is not appropriate for resolution on a motion to dismiss.").

3  _Motion to Strike_. Google seeks to strike Plaintiff's class allegations to the extent they define

4  the class to include any time-barred claims. Mot. at 8. Because all of Plaintiff's claims are timely,

5  and the claims of absent class member who were scammed before Plaintiff should be equitably

6  tolled, the Court should deny the request to strike or limit the class definition.

7  "Motions to strike are regarded with disfavor . . . and should not be granted unless it is

8  clear that the matter to be stricken could have no possible bearing on the subject matter of the

9  litigation." _Brown v. Hain Celestial Grp., Inc._, 913 F. Supp. 2d 881, 888 (N.D. Cal. 2012) (citation

10  and internal quotation marks omitted). Here, Google does not demonstrate that "the matter to be

11  stricken could have no possible bearing on the subject matter of the litigation." _Id._ Nor does it

12  articulate any prejudice it would suffer from denial of its request to strike or limit the class

13  definition. Moreover, courts in this district regularly deny motions to strike class allegations based

14  on limitations grounds, which is the only basis for Google's request here. _See Gardner v. Shell Oil_

15  _Co._, 2010 WL 1576457, at *5-6 (N.D. Cal. Apr. 19, 2010) (denying defendant's motion to strike

16  plaintiff's class allegations on limitations grounds); _Rattler v. MH SUB I, LLC_, 2020 WL 3128899,

17  at *4 (N.D. Cal. Jun. 12, 2020) (same).

18  Equitable tolling would extend the class period from March 5, 2020 (four years prior to

19  filing of this action) back to January 1, 2015 (the year when the Google Play gift card scam gained

20  traction). The doctrine applies where the party requesting equitable tolling is unable to obtain vital

21  information bearing on the existence of the claim. _See Albillio-De Leon v. Gonzales_, 410 F.3d

22  1090, 1100 (9th Cir. 2005). Here, Google's conduct prevented Plaintiff from discovering the basis

23  of her claims. Specifically, Google does not disclose the details of its ability to monitor Google

24  Play gift card transactions, Google Account activity, and Google Play Store purchases. ¶104. These

25  concealed facts are critical to Plaintiff's UCL claims because they bear on the unfairness of

26  Google's conduct. They are similarly critical to Plaintiff's section 496 claims because they bear

27  on Google's "actual knowledge" of the stolen nature of specific gift cards, and the timing of that

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOT. TO DISMISS, MOT. TO STRIKE, AND REQ. FOR
JUD. NOTICE
Case Number: 5:24-cv-01314-BLF

knowledge. Further, even after Plaintiff and other Class members contacted Google, it regularly failed to disclose that it retained a significant portion of the stolen funds. ¶105. Additionally, Google's disclaimers led Plaintiff and other victims to believe any refund effort would be futile, which further delayed them in understanding and pursuing their claims. ¶¶39, 43, 67-68, 71-73, 78, 92-93. Equitable tolling is appropriate under these circumstances.

## V.   Plaintiff Plausibly Pleads the Essential Elements of Each Claim

Plaintiff's allegations establishing claims for concealing and withholding stolen property in violation of section 496, conversion, and violation of the CLRA—and corresponding claims for unlawful conduct under the UCL and CLRA and declaratory relief—mirror those of the plaintiffs in *Barrett*, where all of those claims were sustained for gift card scam victims who, like Plaintiff, reported the scam to the issuer of the gift cards. *Barrett*, 2022 WL 2119131, at *15. There, the UCL, CLRA and declaratory relief claims were sustained as to all victims. *Id.* Moreover, Plaintiff here squarely addresses the perceived pleading deficiencies in the *Barrett* complaint and states additional claims for section 496 claims for *receiving* stolen property and unfair conduct under the UCL.

### A.   Plaintiff States Claims for Unlawfully Receiving, Withholding, and Concealing Stolen Property in Violation of Section 496

<u>Stolen Property</u>. Google argues, contrary to Plaintiff's well-pled allegations, that victims' money was not stolen, because the scams perpetrated on Plaintiff and the Class resulted in "valid" and "legitimate" sales, and therefore victims "voluntarily relinquished" their property. Mot. at 20. It is well recognized, however, that section 496 extends to property that "has been stolen or that has been obtained *in any manner* constituting theft," including theft by false pretenses. *Bell v. Feibush*, 212 Cal. App. 4th 1041, 1044 (2013) (Theft by false pretenses is "the consensual but fraudulent acquisition of property from its owner."). Scams, including the Google gift card scams, constitute theft by false pretense. Scammers, using false identities and false representations, trick victims into purchasing Google gift cards and providing the card numbers to the scammers. ¶¶17, 54-55.

1      Google next argues that money relinquished as part of a "valid sale" cannot be converted

2  into stolen property by "subsequent events involving a third party." Mot. at 20. But the sale is not

3  "valid" as scammers made false representations *prior* to the gift card purchases. *See People v.*

4  *Miller*, 81 Cal. App. 4th 1427, 1446 (2000) ("Theft by false pretense does not require that the

5  [thief] take the property; it requires that the [thief] use false pretenses to induce the [victim] to give

6  the property to him."). Victims' property was unlawfully obtained through theft, and it matters not

7  for purposes of section 496 that Google was not the thief. *See Barrett v. Apple Inc.*, 2023 WL

8  3977633, at *5 (N.D. Cal. June 13, 2023) (noting that "the situation . . . where the defendant alleged

9  to have violated §496 also stole the property—is not the one at hand here"). Google's reliance

10  upon *AdTrader, Inc. v. Google LLC*, 2018 WL 3428525 (N.D. Cal. July 13, 2018), is misplaced

11  because plaintiff paid Google pursuant to a valid agreement and did not allege that Google falsely

12  charged fees based on non-existent advertising impressions. *Id.* at *9. Here, the gift card sales

13  transaction was premised on false representations and is more akin to the loan transaction in *Bell*

14  *v. Freibush. See AdTrader,* 2018 WL 3428525, at *9 (noting that the plaintiff in *Bell* stated a

15  section 496 claim where "the loan transaction itself was fraudulent because it was premised on the

16  false existence of a scam business").

17      *"Knowing" vs. "Suspecting."* Google argues that it is not alleged to have "knowingly"

18  received or withheld stolen property. Mot. at 20. This ignores the allegations concerning the

19  various means by which Google has actual knowledge that gift card purchases were induced by

20  scams. *See* ¶¶31-34, 56-61, 80-83, 88. This actual knowledge surpasses the "red flags" in *Freeney*

21  *v. Bank of Am., Corp.*, 2016 WL 5897773, at *11 (C.D. Cal. Aug. 4, 2016). Plaintiff does not allege

22  merely that Google *should have known* the gift card purchases involved stolen money, but instead

23  that it had *actual knowledge* that specific gift cards were purchased and redeemed as part of the

24  scam. *See Bhatia v. Silvergate Bank*, 2024 WL 1199679, at *28 (S.D. Cal. Mar. 20, 2024)

25  (distinguishing *Freeney* where bank had actual knowledge of fraudulent schemes).

26      *Timing of Knowledge.* Google argues that Plaintiff does not state a claim for *receiving*

27  stolen property because she "does not plead . . . that Google knew the property was stolen *before*

28

taking possession." Mot. at 20. Google cites the denial of reconsideration in *Barrett*, but ignores critical distinctions in this case. In *Barrett*, the court concluded that the operative complaint did not allege either that "the stolen property was Plaintiffs' money" or that the property "was stolen upon Plaintiffs' purchase of the gift card sales at retail stores[.]" *Barrett*, 2023 WL 3977633, at *5. The *Barrett* plaintiffs sought leave to amend to clarify that the property alleged to be stolen was the victim's money and that the theft occurred at the time of retail sale, but leave was denied based on the passage of time. *Id.* at *6. Here, by contrast, Plaintiff clearly alleges these facts at the outset. ¶¶169, 174.

Further, the court in *Barrett* understood the plaintiffs to argue not only that the theft occurred at the point of retail sale, but also that Apple was "immediately in receipt of stolen property." *Barrett*, 2023 WL 3977633, at *5. Plaintiff here clearly alleges that Google does not receive the money paid for the gift cards immediately upon the retail sale, but instead that the money flows from the retail store, to Google's payment integrator, and then on to Google after some time passes. ¶173. In the time between the retail transaction and Google's receipt of the money, Google learns that the money flowing to it was the product of a scam. ¶174. Google ignores these allegations when it asserts Plaintiff did not allege the money was stolen by the time it received it.

*Knowledge from Victim Reports*. The Complaint also alleges that Google gained knowledge that gift cards were stolen by reports directly from victims. ¶¶64, 103. For example, Plaintiff alleges that, within a day of being scammed, she contacted Google to report the scam, yet Google told Plaintiff that there was nothing it could do. ¶¶64-78, 95-103. Google argues that reporting a gift card scam does not rise to the level of actual knowledge. To the contrary, in *Barrett*, the court held that such allegations were sufficient to establish knowledge and state a claim for withholding and concealing property in violation of section 496. *See Barrett*, 2022 WL 2119131, at *6 (rejecting the same argument and finding *Freeney* and *Kidron v. Movie Acq. Corp.*, 40 Cal. App. 4th 1571 (1995), to be "inapposite or otherwise unpersuasive"). Google's attempt to distinguish *Barrett* falls flat. The allegation that some scammers were also Apple app developers

1  played no role whatsoever in the *Barrett* court's determination that plaintiffs who had contacted
2  Apple to report gift card scams stated claims for knowingly withholding and concealing stolen
3  property. *Id.* at *6.

4       <u>Intent.</u> Google's knowing acceptance, retention, and concealment of scammed gift card
5  funds is no mere "ordinary commercial default." Mot. at 21. Instead, Google refuses to refund
6  victims and unlawfully keeps money it knows was stolen. *See People v. Wielograf*, 101 Cal. App.
7  3d 488, 494 (1980) ("If the defendant received or concealed stolen property with *general criminal*
8  *intent . . . to deprive the owner of possession, or renders more difficult a discovery by the owner . . .*
9  he possesses the requisite wrongful intent") (emphasis added). Plaintiff alleges Google's general
10 criminal intent. ¶¶67-78. Google discourages victims from contacting it and asserts that it no longer
11 possesses the stolen funds and cannot assist the victim. ¶¶67-78. *See Boulton*, 2015 WL 2097807,
12 at *3 ("[I]ntent, knowledge, and other conditions of a person's mind may be alleged generally")
13 (quoting Fed. R. Civ. P. 9(b)).

14      Google's reliance on *Formic Ventures LLC v. SomaLogic, Inc.*, 2023 WL 6037899 (N.D.
15 Cal. Sept. 15, 2023), is misplaced. In *Formic*, the court held that mere noncompliance with a
16 contractual obligation to pay failed to establish the requisite intent. *Id.* at *1. Here, Google knew
17 victims were deprived of their money through criminal activity and had a policy of claiming there
18 was nothing it could do, even though it still had the funds. ¶¶75-77. Such a policy requires "careful
19 planning and deliberation," which shows the requisite intent. *Siry Invest., L.P.*, 13 Cal. 5th at 362
20 (2022).

21           **B.  Plaintiff States a Claim for Conversion**

22      Google argues that Plaintiff "relinquished" ownership of her money when she paid for gift
23 cards. Mot. at 22. Google ignores the fact that the purchase transaction was induced under false
24 pretenses—that is, Plaintiff was defrauded by a third party who stole her money by tricking her
25 into purchasing the gift cards. *See Oakdale Vill. Grp. v. Fong*, 43 Cal. App. 4th 539, 549 (1996)
26 (reversing trial court's finding that defendant could not be liable for conversion because "one who
27 accepts goods from a fraudulent possessor is also liable for conversion"). *Snapkeys, Ltd. v. Google*

28

1   *LLC*, 539 F.Supp.3d 1040, 1056 (N.D. Cal. 2021), is distinguishable because the plaintiff stated a

2   claim for conversion. *See id.* (conversion claim survived motion to dismiss as to recovery of

3   physical items rather than intellectual property). It was only after document discovery and

4   depositions that the court granted summary judgment based on an agreement and other testimony

5   about physical items that are inapplicable here.

6        Google also argues that Plaintiff fails to plead a wrongful act by Google, claiming that "any

7   wrongful acts were performed by scammers, not Google." Mot. at 22. Plaintiff alleges that *Google*

8   wrongfully refused to refund and retained funds belonging to her, despite its actual knowledge

9   (acquired not only through its own data but also through Plaintiff's phone call to Google to report

10  the scam) that the money was stolen. ¶¶178-85. In any event, Google's state of mind is irrelevant;

11  conversion is a strict liability tort. *See In re Emery*, 317 F.3d 1064, 1069 (9th Cir. 2003) ("In

12  California, conversion is a strict liability tort: Questions of good faith, lack of knowledge, and

13  motive are ordinarily immaterial."); *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 208-09

14  (2014) ("The basis of a conversion action rests upon the unwarranted interference by defendant

15  with the dominion over the property of the plaintiff from which injury to the latter results.

16  Therefore, neither good nor bad faith, neither care nor negligence, neither knowledge nor

17  ignorance, are the gist of the action.") (internal quotations omitted).

18       Contrary to Google's argument, wrongful acts are not limited to those enumerated in *LA*

19  *Tech Consulting, LLC v. Am. Express Co.*, 2023 WL 8166780 (9th Cir. Nov. 24, 2023). Although

20  the enumerated acts are "typically" involved, they are not necessary elements of the claim. Here,

21  Plaintiff alleges that Google kept and misappropriated funds rightfully belonging to others. ¶¶6,

22  178-185. Finally, in *Barrett*, the court held that the plaintiffs who contacted Apple to report the

23  scam—as Plaintiff did here—stated conversion claims. *Barrett*, 2022 WL 2119131, at *7-8.

**C.  Plaintiff Plausibly States a Claim Under the CLRA**

25       Plaintiff plausibly alleges that Google's disclaimer is unconscionable and inapplicable as

26  applied to victims of gift cards scams, and in violation of Civil Code §1770(a)(19). ¶¶127, 146,

27  152. To plead a practice as unconscionable, a plaintiff must allege that it is both procedurally and

28

substantively unconscionable. *Antonelli v. Finish Line, Inc.*, 2012 WL 525538, at *3 (N.D. Cal. Feb. 16, 2012). Unconscionability is a sliding scale: more evidence of substantive unconscionability requires less evidence of procedural unconscionability, and vice versa. *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 981-82 (9th Cir. 2007).

### 1. Procedural Unconscionability

Analysis of procedural unconscionability "begins with an inquiry into whether the contract is one of adhesion." *OTO, L.L.C. v. Kho*, 447 P.3d 680, 690 (Cal. 2019). "California law treats contracts of adhesion . . . as procedurally unconscionable to at least some degree." *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010). Here, Plaintiff alleges that Google includes the "unconscionable and adhesive disclaimer" on its packaging and in its Online Terms and Conditions. ¶¶40, 127, 146, 152. *See Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003) ("[a] contract is procedurally unconscionable if it is a contract of adhesion, *i.e.*, a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it.")

Where a contract is alleged to be adhesive, the next inquiry is "whether circumstances of the contract's formation created such oppression *or* surprise." *OTO*, 447 P.3d at 690 (emphasis added). Google's argument that there was no "surprise" does not carry the day because allegations of either surprise *or* oppression satisfy the test, and the Complaint alleges oppression. ¶¶41-13, 149. "Oppression occurs where a contract involves lack of negotiation and meaningful choice." *OTO*, 447 P.3d 690. Here, "Google understands that the scams involve deceiving consumers into believing that they have an immediate need to make payment" and "that all targets of gift card scams will go to a retail location and select a Google Play gift card from a retail sales rack, believing it to be the only acceptable form of payment under urgent circumstances." ¶¶41-43. The scams depend on deceiving consumers into believing that they need to make a payment and that the only acceptable form of payment is a Google Play gift card, and scam victims believe they have no meaningful choice but to purchase the cards in an urgent manner. *Id*. Courts have recognized a variety of situations where adhesion contracts are oppressive, despite the availability

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOT. TO DISMISS, MOT. TO STRIKE, AND REQ. FOR JUD. NOTICE
Case Number: 5:24-cv-01314-BLF

1    of alternatives. *See Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1320 (2005)

2    (providing examples).

3        Google argues that Plaintiff could access Google Play services without a gift card, but that

4    is irrelevant. Neither Plaintiff nor members of the Class were attempting to access Google Play

5    services. They were attempting to make a payment under urgent circumstances and believed gift

6    cards were necessary. ¶¶41-43, 127, 146, 152. In *Barrett*, the court disagreed with defendant's

7    assertion that for procedural unconscionability to exist, the oppressing party must be the defendant.

8    *Barrett*, 2022 WL 2119131, at *13 (rejecting argument that *defendant* must coerce; procedural

9    unconscionability only requires "'an absence of meaningful choice' in the bargaining process").

## 2.  Substantive Unconscionability

11       "Substantive unconscionability pertains to the fairness of an agreement's actual terms and

12   to assessments of whether they are overly harsh or one-sided." *See OTO*, 447 P.3d at 690

13   (agreement reflected substantive unconscionability). Here, Plaintiff alleges the disclaimer

14   language "attempt[s] to disclaim [Google's] liability for loss or damage resulting from Google

15   Play gift card scams" notwithstanding "the profit that it makes and retains from such scams." ¶¶

16   39-40. Plaintiff has plausibly alleged substantive unconscionability. *See In re Yahoo! Inc.*

17   *Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1136-38 (N.D. Cal. 2018) (contract

18   provision that disclaimed liability for damages was substantively unconscionable).

19       Google's argument that it is simply enforcing its "industry standard limitation" ignores the

20   allegations. Mot. at 19. Google keeps for itself (or pays to others) money that was scammed from

21   victims under the pretext that gift card purchases are not refundable. ¶¶5, 51, 58, 62-63, 87, 121.

22   In *Barrett*, the court found a similar disclaimer "substantively unconscionable in that it purports to

23   avoid liability for [defendant's] own conduct as to withholding or concealing stolen property and

24   conversion." 2022 WL 2119131, at *12 (citing Cal. Civ. Code §1668) (against public policy are

25   "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from

26   responsibility for his own fraud, or willful injury to the person or property of another, or violation

27   of law, whether willful or negligent.").

28

### D.  Plaintiff Plausibly States a Claim Under the UCL

*Unfairness*. Plaintiff alleges that Google's conduct was unfair. ¶¶2-3, 40-48, 64-87, 89-94, 99, 103, 125-128, 145-149. The UCL prohibits "unfair conduct"—even if it is also not "deceptive" or "unlawful." *Kennard v. Lamb Weston Holdings, Inc.*, 2019 WL 1586022, at *9-10 (N.D. Cal. Apr. 12, 2019). "Unfair conduct" is established by one of three tests. *In re Sony PS3 Other OS Litig.*, 551 Fed. Appx. 916, 922 (9th Cir. 2014) (reversing dismissal of plaintiff's claim under the unfairness prong of the UCL). The three tests include: tethering; gravity of harm outweighs business utility; and consumer injury outweighs countervailing benefits. *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 933 (N.D. Cal. 2013). A challenged practice needs to satisfy only one of the tests to be "unfair." *Lozano*, 504 F.3d at 736. Notably, Google fails to address the third test. Mot. at 13.

Under the tethering test, a practice is unfair where the practice implicates a public policy that is "tethered to specific constitutional, statutory, or regulatory provisions." *Bias*, 942 F. Supp. 2d at 933. Under the balancing test a practice is unfair if it "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Id.* Under the consumer injury test, a practice is "unfair" if the injury is substantial, not outweighed by countervailing benefits to consumers or competition, and is one the consumers could not reasonably have avoided. *Id.*

### 1.  Keeping Scammed Money for Itself is Unfair Under All Three Tests

Plaintiff alleges that Google keeps for itself a significant portion of all scam victims' money, which is "unfair" under all three tests. In particular, Plaintiff alleges that Google unfairly retains 15-30% of scam victims' money. ¶¶5, 51, 57-58, 62-63, 65-66, 69. It may keep more if it freezes the scammer's Google accounts or funds for developers whose Apps are involved in the scam. ¶¶5-6, 70. Under the tethering test, this conduct is unfair because it violates section 496. ¶168. Under the balancing test, keeping scammed money is unfair because it offends public policy, is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, and the

1  harm outweighs any utility of the conduct. ¶149. Under the consumer injury test, keeping scammed

2  money greatly outweighs any potential countervailing benefit to consumers or competition, and

3  the resulting injury to Plaintiff and Class members could not have reasonably been avoided. ¶150.

4  In similar circumstances, the courts have held keeping funds belonging to plaintiff to be "unfair."

5  *Day v. GEICO Cas. Co.*, 580 F. Supp. 3d 830, 845 (N.D. Cal. 2022) (denying motion to dismiss

6  and finding plaintiff sufficiently alleged defendant unjustly retained monies belonging to Plaintiff

7  and the class).

8  **2.   Disbursing Stolen Money to Others is Unfair Under All Three Tests**

9  Plaintiff alleges that Google receives scam victims' money, knowing that it is stolen, and

10 (after its take) disburses it to third parties several days or weeks after the scam. ¶¶30, 57, 60, 62,

11 70, 82, 128, 147. Under the tethering test, this conduct is unfair because it violates section 496. ¶¶

12 136, 161; *see also Williams*, 81 Cal. App. 3d at 343-44 (concealing stolen property is a violation

13 of the affirmative duty to return it to its rightful owner). Under the balancing test, Google's

14 disbursement of scammed money is unfair because it offends public policy, is immoral, unethical,

15 oppressive, unscrupulous, and substantially injurious to Plaintiff and the Class and the harm

16 sustained outweighs any utility of the conduct. ¶149. Under the consumer injury test, Google's

17 disbursement of scammed money greatly outweighs any potential countervailing benefit to

18 consumers or competition, and the resulting injury to Plaintiff and Class members could not have

19 reasonably been avoided. ¶150. A defendant can be held liable under the unfair prong of the UCL

20 even if it is not the ultimate recipient of the misappropriated funds. *See City & Cnty. of San*

21 *Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 695 (N.D. Cal. 2020) (denying defendant's

22 motion to dismiss UCL claim finding the UCL permits restitution as a remedy for indirectly

23 misappropriated funds).

24  **3.   Discouraging Scam Victims from Seeking Refunds and Refusing to**
     **Refund Any Portion of the Stolen Money Is Unfair Under All Three**
25     **Tests**

26 Plaintiff alleges that Google engaged in unfair conduct designed to discourage scam

27 victims from contacting it to recoup their funds, and from continuing to pursue refund requests, by

28

including language on its website, cards, and packaging representing that cards will not be refunded or replaced and that "[o]nce you provide the codes to a scammer, they'll likely spend the funds on the card immediately." ¶¶68, 70, 92. Google claimed that the money was gone, when in fact Google still had it. ¶¶30, 70, 82, 128, 147. The analysis under the three tests is essentially the same as above. ¶¶175-76, 149, 150. In similar circumstances, courts have held a defendant's discouraging reimbursement requests was "unfair." *Nygren v. Hewlett-Packard Co.*, 2009 WL 10696446, at *5 (N.D. Cal. May 28, 2009) (denying motion to dismiss under the unfair prong of the UCL where defendant refused to honor refund requests).

Google argues that its warning language is not "likely to deceive a reasonable consumer, as is necessary to state a *fraudulent* claim under the UCL or CLRA," Mot. at 14 (emphasis added), but Plaintiff alleges that the warnings are *unfair*—not fraudulent. ¶¶37-48, 91-93. Google ignores the fact that, despite the scam being rampant, it provided *no warning at all* until 2020. ¶93. Google also argues that Plaintiff has not identified any "legislatively declared policy," but Plaintiff alleges violations of section 496 and the CLRA.

Google argues that its failure to issue refunds is fair because Plaintiff "identifies no policy imposing a duty to confirm the source of every dollar spent in the Google Play stores," Mot. at 15, but Plaintiff does not contend that Google must confirm the source of every dollar. Plaintiff alleges that Google *has actual knowledge* of which gift cards were purchased as the result of a scam, and that because Google has that knowledge, it must refund. ¶¶5, 174, 180. Google's suggestion that Plaintiff wants Google to "insure" against fraud, citing *Sanchez v. Navy Fed. Credit Union*, 2023 WL 6370235 (C.D. Cal. Aug. 14, 2023), is mistaken. Returning money to its rightful owner is not "insuring" in any sense. In *Sanchez*, the plaintiff reported the fraud "a few weeks" after it occurred, and there was no allegation that the defendant credit union still had her money at that point. *Id*. at *2. Here, Plaintiff alleges that Google still had her money when she reported the fraud and it is retaining at minimum its commission to this day. ¶¶64-85.

Finally, Google argues that its "bright-line policy" against refunds is fair because it would be burdensome to investigate reports of fraud. Mot. at 16. Setting aside the repugnancy of an

1  argument that Google cannot be bothered to confirm reports of fraud from customers of its multi-

2  billion dollar gift card business, that argument is flatly contrary to Plaintiff's allegation that Google

3  has actual knowledge of which cards were purchased as the result of fraud. ¶¶31-34, 56-61, 80-83,

4  88.

5       *Unlawfulness.* Google does not dispute that violations of section 496 and the CLRA are

6  actionable as "unlawful" under the UCL and CLRA. *Smith v. State Farm Mut. Auto. Ins. Co.*, 93

7  Cal. App. 4th 700, 718 (2001) ("Virtually any law—federal, state or local—can serve as a predicate

8  for an action under [the UCL]."). Instead, Google argues that Plaintiff has not properly alleged

9  violations of Section 496 or the CLRA. To the contrary, as explained in Sections V(A) and V(C)

10  *supra*, Plaintiff sufficiently alleges violations of these statutes. Accordingly, Plaintiff alleges

11  "unlawful" conduct in violation of the UCL and CLRA. *See Barrett*, 2022 WL 2119131, at *14

12  (denying motion to dismiss UCL and CLRA "unlawfulness" claim where plaintiffs alleged

13  violations of section 496 and the CLRA); *Worldwide Travel, Inc. v. Travelmate US, Inc.*, 2016

14  WL 1241026, at *8 (S.D. Cal. Mar. 30, 2016) (denying motion to dismiss UCL "unlawfulness"

15  claim tied to section 496 claim).

16            **E.  Plaintiff Plausibly Alleges the Need for Equitable Relief Under the UCL**

17       Google's reliance on *Sonner* for the proposition that the need for equitable relief is absent

18  from the UCL claim is misplaced. Mot. at 10. Plaintiff alleges an inadequate remedy at law. ¶¶131,

19  140, 191. Under the UCL, plaintiffs may seek equitable restitution, disgorgement of profits, and

20  injunctive relief. Cal. Bus. & Prof. Code §17203; *see Estakhrian v. Obenstine*, 233 F. Supp. 3d

21  824, 843-44 (C.D. Cal. 2017) ("[i]njunctive relief and restitution are available remedies under the

22  UCL," as is "[r]estitutionary disgorgement, which focuses on the victim's loss").

23       Here, Plaintiff seeks disgorgement and restitution. ¶¶131, 140. Google does not address

24  these forms of equitable relief. Mot. at 10-11. Plaintiff plausibly alleges that Google received 100%

25  of the money stolen during the gift card scam, kept significant portions of that money (its

26  commission plus frozen funds), and disbursed the remainder to third parties. ¶¶5-6, 51, 57-58, 63,

27  70, 121, 126, 128. Equitable relief may be pled in the alternative or in addition to damages at law.

28

*Brown v. Food for Life Baking Co., Inc.*, 658 F. Supp. 3d 738, 743 (N.D. Cal. 2023) (denying defendant's motion to dismiss plaintiff's UCL claim for equitable relief). Plaintiff may seek disgorgement and restitution because the trier of fact may ultimately determine that Plaintiff is not entitled to money damages (a remedy at law), but Google's retained commissions and other amounts should be disgorged or the subject of restitution (equitable relief). In *Clark v. Yodlee, Inc.*, for example, the court held that plaintiffs' equitable claim for disgorgement was not barred by *Sonner* because a legal remedy would not "reach the profits that Defendant earned from its allegedly unauthorized misappropriation and sale of Plaintiffs' sensitive private data." No. 20 Civ. 5991, ECF No. 356, at p.6 (N.D. Cal. Sept. 15, 2023). Post-*Sonner* decisions have held that plaintiffs may pursue equitable relief at the same time as damages when the equitable relief sought is not available at law. *Id. See also Moore*, 966 F.3d at 1021 fn.13 (reversing district court's dismissal of UCL claim).

Plaintiff also seeks injunctive relief. ¶¶131, 140. An injunction is necessary because Google fails to adequately warn consumers about the existence and prevalence of gift card scams and discourages consumers from contacting, or following up, with Google to seek refunds from scams. ¶¶125-128, 134-138. This misconduct is ongoing. ¶¶43-44, 73, 79, 84, 90-91.

### F.  Plaintiff Plausibly Alleges Statutory Standing Under the UCL and CLRA

Plaintiff alleges standing under the UCL and CLRA. Statutory standing requires an injury "as a result of" the alleged violations. *Sanchez v. Nature, Inc.*, 626 F. Supp. 3d 1107, 1115 (N.D. Cal. 2022). Courts analyze statutory standing jointly for UCL and CLRA claims. *Id.* at 1116. Plaintiffs may vindicate their rights under the UCL and CLRA where the initial conduct was initiated by a third party, but the defendant failed to take action that could have eliminated the injury. *See Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 922-23 (N.D. Cal. 2013) (consumer satisfied standing requirements for her UCL and CLRA claims). The conduct of two or more parties may combine to create an injury, and both are liable under the UCL and CLRA. *See People ex rel. Harris v. Sarpas*, 225 Cal. App. 4th 1539, 1563 (2014) (two defendants who contributed to and benefited from the UCL violation were jointly and severally liable); *see also Melendez v. Westlake*

*Servs., LLC*, 74 Cal. App. 5th 586, 596 (2022) (affirming award of damages, attorneys' fees, and costs to be paid jointly and severally by multiple defendants who violated the CLRA).

Here, Plaintiff alleges that she was scammed by third parties and that Google—rather than returning the money to her—kept a significant portion (at minimum, its 15% commission) and paid the remainder to others. ¶¶5, 30, 51, 57-58, 62-63, 87, 121. Had Google not retained its commission and paid third parties, but instead returned Plaintiff's money to her, she would not have suffered injury. *Id.* Google's retention of the money for itself and others caused the injury, and it was "the result of" Google's conduct. *See Pirozzi*, 966 F. Supp. 2d at 922-23 (finding Apple caused harm under the UCL and CLRA even when the complaint concerned the characteristics of third-party applications); *see also In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988-89 (N.D. Cal. 2014) (third-party wrongdoing sufficient to extend liability to defendant under UCL).

Google's argument that Plaintiff was tricked by scammers, not Google, ignores its own conduct that perpetuated the gift card scam. *See Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1340 (2009) ("case law does not support [the defendant]s' argument that they cannot be liable for restitution under the UCL because [the billing company], rather than [the defendants], was the direct recipient of the service charges."). Finally, the cases Google cites are distinguishable. In *Patel v. Citibank Corp.*, 2019 WL 7987113, at *4-6 (C.D. Cal. Sept. 27, 2019), neither UCL or CLRA claims were at issue, nor was the court addressing allegations that the banks and gift card issuers knowingly received or kept proceeds from the scams. Likewise, in *Coffee v. Google, LLC*, 2022 WL 94986, at *10 (N.D. Cal. Jan. 10, 2022), plaintiff did not allege that Google knowingly received and retained money from a false pretense scam, but instead alleged that certain gaming features were illegal slot machines. As a result, the causation and standing analyses in those cases are inapplicable here.

## VI.    Plaintiff Plausibly Alleges a Claim for Declaratory Relief

Plaintiff seeks a declaration that Defendants' disclaimer of its own unlawful conduct is unconscionable and unenforceable. ¶¶186-193. Such allegations are sufficient at the pleading

23

1  stage. *See Barrett*, 2022 WL 2119131, at *14 ("Plaintiffs have also stated a claim for declaratory

2  judgment seeking a declaration that [Defendant's] attempt to disclaim liability is unconscionable

3  and unenforceable as to its own conduct.").

4  **VII.    The Court Should Deny Google's Request for Judicial Notice of Certain Exhibits**

5         Defendants seek judicial notice of Exhibit C, the complaint in *Meyers v. Alphabet, Inc.*,

6  No. 2:21-cv-01767 (C.D. Cal.), which is irrelevant and inappropriate for judicial notice. Google

7  cites Exhibit C to argue that "Google was previously sued for *preventing* potentially legitimate

8  users from redeeming gift cards as part of its efforts to 'detect suspicious gift card activity,'" an

9  assertion that is neither pled in the Complaint nor relevant to the allegations. Mot. at 16, 23; *see In*

10  *re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1165 (N.D. Cal. 2019) ("content

11  is not a proper subject of judicial notice at the motion to dismiss stage when it is not referenced or

12  relied upon in the complaint"). Likewise, Exhibit D, a compilation of web pages containing Target

13  and Walmart's gift card terms and conditions, has no bearing on Plaintiff's allegations concerning

14  *Google*'s terms and conditions. Mot. at 23. This case is not about third-party retailers of gift cards

15  or their website terms. Exhibit D is irrelevant and should not be judicially noticed. *In re Apple Inc.*

16  *Device Performance Litig.*, 386 F. Supp. 3d at 1165.

17  **VIII.   Leave to Amend Is Appropriate**

18         If the Court identifies any pleading deficiencies, leave to amend should be granted. "[R]ule

19  15's policy of favoring amendments to pleadings should be applied with extreme liberality."

20  *Sorensen v. Lexar Media, Inc.*, 2012 WL 929849, at *1 (N.D. Cal. Mar. 19, 2012); s*ee also Hynix*

21  *Semiconductor Inc. v. Toshiba Corp.*, 2006 WL 3093812, at *2 (N.D. Cal. Oct. 31, 2006) ("[c]ourts

22  rarely deny a motion for leave to amend for reason of futility."). Here, there is no delay or bad

23  faith, and Plaintiff's claims cannot be characterized as frivolous. Defendants have refused to

24  engage in discovery, and much of the information relevant to Plaintiff's claims is solely within

25  Google's possession. Leave to amend, if needed, would be proper.

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOT. TO DISMISS, MOT. TO STRIKE, AND REQ. FOR
JUD. NOTICE
Case Number: 5:24-cv-01314-BLF

1

**CONCLUSION**

2        Defendants' motion should be denied in its entirety. If the Court deems any aspect of the

3  Complaint deficient, leave to amend should be granted.

4                                        Respectfully Submitted,

5  Dated: June 27, 2024                  **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*s/ Joseph P. Guglielmo*

6                                  Joseph P. Guglielmo (*pro hac vice*)

7                                  Amanda M. Rolon (*pro hac vice*)
The Helmsley Building

8                                  230 Park Ave., 17th Floor
New York, NY 10169

9                                  Telephone: 212-223-6444
jguglielmo@scott-scott.com

10                                arolon@scott-scott.com

11

12                                Hal D. Cunningham (CA Bar No. 243048)
600 W. Broadway, Suite 3300

13                                San Diego, CA 92101
Telephone: 619-233-4565

14                                hcunningham@scott-scott.com

15                                **CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**

16                                *s/ Nyran Rose Rasche*

17                                Nyran Rose Rasche (*pro hac vice*)
Nickolas J. Hagman (*pro hac vice* forthcoming)

18                                135 South LaSalle Street, Suite 3210
Chicago, IL 60603

19                                Telephone: 312-782-4880
nrasche@caffertyclobes.com

20                                nhagman@caffertyclobes.com

21

22                                **KIRBY MCINERNEY LLP**
*s/ Anthony F. Fata*

23                                Anthony F. Fata (*pro hac vice*)
Sarah E. Flohr (*pro hac vice*)

24                                211 West Wacker Drive, Suite 550
Chicago, IL 60606

25                                Telephone: 312-767-5180
afata@kmllp.com

26                                sflohr@kmllp.com

27                                *Attorneys for Plaintiff and the Putative Class*

28                                    25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>**CERTIFICATE OF SERVICE**</u>

I, Joseph P. Guglielmo, certify that on June 27, 2024 the foregoing document entitled **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, MOTION TO STRIKE, AND REQUEST FOR JUDICIAL NOTICE** was filed electronically in the Court's ECF; thereby upon completion the ECF system automatically generated a "Notice of Electronic Filing" as service through CM/ECF to registered e-mail addresses of parties of record in this case.

<u>*s/ Joseph P. Guglielmo*</u>
Joseph P. Guglielmo