1

2

3 **UNITED STATES DISTRICT COURT**

4 **NORTHERN DISTRICT OF CALIFORNIA**

5 **SAN JOSE DIVISION**

6

7 JUDY MAY,                                    Case No.  24-cv-01314-BLF

8                        Plaintiff,

9            v.                               **ORDER GRANTING IN PART AND
                                             DENYING IN PART MOTION TO
10 GOOGLE LLC, et al.,                          DISMISS**

11                        Defendants.         [Re:  ECF No. 39]

12

13            This class action suit is brought by Plaintiff Judy May ("May"), individually, and on behalf

14 of all others similarly situated (collectively, "Plaintiffs"). May filed a Class Action Complaint

15 ("CAC") in this matter against Google LLC, Google Arizona LLC, Google Payment Corp.,

16 Alphabet Inc., and Does 1-10. ECF 1. In the CAC, May asserts the following claims: 1) unfair

17 practices in violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code

18 § 1750 et seq.; 2) unlawful practices in violation of the CLRA; 3) unfair practices in violation of the

19 California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200; 4) unlawful practices

20 in violation of the UCL; 5) receiving, retaining, withholding, or concealing stolen property in

21 violation of California Penal Code § 496 ("Penal Code § 496"); 6) conversion; and 7) declaratory

22 judgment under 28 U.S.C. § 2201. ECF 1.

23            Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Google LLC, Google

24 Arizona LLC, Google Payment Corp., Alphabet Inc., and Does 1-10 seek to dismiss all causes of

25 action in the CAC. ECF 39. May opposes. ECF 45. Pursuant to the parties' stipulation, the Court

26 dismissed without prejudice defendant Alphabet Inc. from this action. ECF 52. Google LLC, Google

27

28

United States District Court
Northern District of California

Arizona LLC, Google Payment Corp., and Does 1-10 (collectively, "Google") filed a reply. ECF 55. The Court has considered the moving and responding papers, the relevant portions of the record, and arguments made during a hearing on the motion to dismiss on September 26, 2024. For the reasons described below, the Court GRANTS Google's motion to dismiss WITH LEAVE TO AMEND IN PART and WITHOUT LEAVE TO AMEND IN PART, and DENIES Google's motion to dismiss IN PART.

## I.    BACKGROUND

The following allegations are taken from the CAC and taken as true for the purposes of this motion.

### A.  Google's Digital Platforms and Their Developers

Google owns and operates the Google Play Store, which hosts millions of mobile apps and digital multimedia content for consumers to purchase and download. ECF 1, ¶¶ 18-19. Google implements a service fee structure where Google charges a commission of approximately 15-30% on all paid apps, in-app purchases, and app subscriptions. *Id.*, ¶ 23. This commission applies to all monetary transactions conducted through the platform, including those made with Google Play gift cards. *Id.* Consumers must establish a Google Account with detailed personal information to access and purchase apps and content from the Google Play Store. *Id.*, ¶ 25. This includes providing their name, email address, billing information, and phone verification. *Id.*

Individuals and companies can develop apps for distribution on the Google Play Store as developers. *Id.*, ¶ 27. For developers interested in distributing their applications on the platform, Google has established specific requirements. *Id.*, ¶ 28. These include creating a Google Account, accepting the Developer Distribution Agreement, and paying a $25 registration fee. *Id.*, ¶ 27. Additional requirements may include providing government identification, a credit card under the developer's legal name, bank account information, physical address, and contact details. *Id.*, ¶ 27.

The payment process between Google and the developers follows a structured timeline. After a consumer makes a purchase, Google implements a two-hour cancellation window before processing the charge. *Id.*, ¶ 30. Developer payments are then processed after the 15th of the following month, provided they meet the minimum payment threshold. *Id.* This creates a typical delay of at least two weeks between when a consumer makes a purchase and when the developer receives payment. *Id.*

### B.  Google Play Gift Cards

Through retail partners, Google offers prepaid Google Play gift cards that allow consumers to make purchases both on the Google Play Store and within apps downloaded from the platform. *Id.*, ¶¶ 31-32. Each Google Play gift card features a unique redemption code and remains dormant until activated at the point of sale, with Google tracking the exact moment of purchase and activation. *Id.*, ¶ 33. To use these gift cards, consumers must have a valid Google Account. *Id.*, ¶ 34. When redeeming the Google Play gift cards, consumers log into their Google Accounts and enter the Google Play gift card's redemption code, which transfers the stored value to their Google Account for immediate use. *Id.*, ¶¶ 34-35. Once redeemed, the physical card holds no further value *Id.*, ¶ 35. Google maintains detailed tracking of all redemption codes and serial numbers of Google Play gift cards, each redemption, and its corresponding Google Account. *Id.*, ¶ 36.

The Google Play gift cards come with basic terms and conditions on their packaging, which are recited as:

> "Terms and Conditions: See play.google.com/us-card-terms for full terms. Must be 13+ years of age, US resident. Google Play card is issued by Google Arizona LLC ("GAZ"). Requires Google Payments account and Internet access to redeem. Redeemed balance is maintained by GAZ's affiliate, Google Payment Corp. ("GPC"), in your Google Payments account. Usable for purchases of eligible items on Google Play only. Not useable for hardware and certain subscriptions. Other limits may apply. No fees or expiration dates. Except as required by law, card not redeemable cash or other cards; not reloadable or refundable; cannot be combined with other non-Google Play balances in your Google Payments account, resold, exchanged or transferred for value. User responsible for loss of card. For assistance or to view your Google Play card balance, visit support.google.com/googleplay/go/cardhelp. To speak to customer care call us at 1-855-

466-4438."

*Id.*, ¶ 37. The full terms of conditions for Google Play gift cards (the "Online Terms and Conditions") are available online. *Id.*, ¶ 38. Plaintiffs argue in the CAC that despite knowing that scammers often deceive consumers by creating artificial urgency and presenting gift cards as the only payment option, Google does not provide adequate warnings on retail packaging to prevent scams. *Id.*, ¶¶ 41-44.

### C.  Google Play Gift Card Scams

While the FTC reported $433.5 million in total gift card scams from 2018-2021, this figure likely represents only a fraction of actual cases, given that many consumers either do not know how to report scams or choose not to due to privacy concerns and the time-consuming reporting process. *Id.*, ¶ 50. According to FTC data, Google Play gift card scams accounted for 20% of reported cases, totaling $86.7 million over the four years from 2018-2021 (approximately $21.675 million annually). *Id.*, ¶ 51.

Google Play gift card scams typically involve four steps. First, scammers convince victims to purchase Google Play gift cards to pay for something outside of the Google Play Store. *Id.*, ¶ 54. For instance, scammers may impersonate agents from a government agency (*e.g.,* the IRS) and demand payment to avoid trouble (*e.g.*, arrest, seizure of property). *Id.* Once scammers successfully convince a victim to buy a Google Play gift card, they will pressure the victim to reveal its redemption code and purchase more Google Play gift cards. *Id.*, ¶ 55. Second, the scammers redeem the Google Play gift cards and transfer the stored value into scammer-controlled Google Accounts. *Id.*, ¶¶ 56-57. Alternatively, the scammers may resell the redemption codes. *Id.*, ¶ 58. Third, the scammers spend the redeemed value by purchasing apps or making in-app purchases on the Google Play Store. *Id.*, ¶¶ 59-60. Fourth, Google pays its developers 70%-85% of the purchases and keeps the remainder as its own commissions. *Id.*, ¶¶ 62-63.

//

United States District Court
Northern District of California

Google has the technical means to track transactional information related to the Google Play gift cards, including 1) purchase information, such as the location, the date and time, and the value of the purchase; 2) the identity of the Google Account(s) that redeemed the Google Play gift cards; and 3) Google Play purchases made with the Google Play gift cards. *Id.*, ¶ 61. Nonetheless, Google imposes a "no refund" policy on its Google Play gift cards. *Id.*, ¶¶ 67, 92. When victims of scams contact Google for a refund of their Google Play gift cards, they are frequently advised that the funds in the Google Play gift cards have been spent, and there is nothing Google can do. *Id.*, ¶¶ 74-78.

### D.  Judy May

In April 2021, May fell victim to a gift card scam involving Google Play gift cards. ECF 1, ¶ 95. The scam began when May received a message from someone posing as a family member, directing her to contact a supposed government agent about grant money from the U.S. Department of Health and Human Services ("HHS"). *Id.* The scammer, pretending to be a government agent, told May she was eligible for an HHS grant but needed to cover certain costs upfront to receive same-day delivery of the grant money. *Id.*, ¶¶ 95-96. May was instructed to purchase Google Play gift cards and provide the codes on the back to cover these alleged costs, with the promise of reimbursement. *Id.*, ¶ 96.

On April 1, 2021, May bought a $200 gift card from Family Dollar in Connersville, Indiana, and shared the code with the scammer. *Id.*, ¶ 97. The next day, she purchased four more $200 gift cards from a CVS Pharmacy in Connersville, Indiana, and again shared the codes with the scammer. *Id.*, ¶ 98. Although May read the language on the gift cards, she was unaware of the nature and prevalence of Google Play gift card scams and did not realize she was being scammed. *Id.*, ¶ 99. The complaint alleges that if the packaging had clearly warned about gift card scams or stated that anyone requesting payment via Google Play gift cards was a scammer, May would not have made the purchases. *Id.*, ¶¶ 100-01. May only realized she had been scammed after contacting her relative

about the supposed government agent and learning that the person she had been communicating with on Facebook Messenger was not legitimate. *Id.*, ¶ 102. When May contacted Google the day after realizing she had been scammed, she was informed that the money had already been spent and "there was nothing that Google could do for her." *Id.*, ¶ 103.

## II.    LEGAL STANDARD

### A.  Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

//

//

6

**B.  Leave to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipses omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**III.    REQUEST FOR JUDICIAL NOTICE**

Google requests the Court to take judicial notice of four exhibits: A) a copy of the gift card and packaging as they appeared when May purchased the Google Play gift cards in April 2021; B) Google Play Gift Card And Prepaid Play Balance Terms of Service (May 1, 2019), publicly available at https://play.google/intl/en_us/card-terms/; C) the Complaint in *Meyers v. Alphabet, Inc.*, No. 2:21-cv-01767-FMO-MAA (C.D. Cal. Filed Feb. 25, 2021); and D) publicly available terms and conditions of Target and Walmart gift cards. ECF 39 at 23. May does not object Google's request with respect to Exhibits A and B. ECF 45 at 24. With respect to Exhibits C and D, May argues that those exhibits are irrelevant to the suit and inappropriate for judicial notice. *Id.* May does not dispute the authenticity of the documents. *Id.* In response, Google argues that Exhibit C is relevant in showing similar lawsuits' bearing on Google's business decisions, and Exhibit D is relevant in showing Google's "no refund" policy is "widely used" for gift cards. ECF 55 at 15.

The Court may take judicial notice of information that is "readily verifiable and, therefore, the proper subject of judicial notice." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 938

(C.D. Cal. 2011). Additionally, the Court may take judicial notice of the existence of other lawsuits. *See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992). Accordingly, the Court grants Google's request for judicial notice of Exhibits A, B, C, and D.

## IV.    DISCUSSION

The Court now turns to Google's motion to dismiss claims in the CAC. For the following reasons, Google's motion to dismiss is GRANTED with LEAVE TO AMEND IN PART and WITHOUT LEAVE TO AMEND IN PART and DENIED IN PART.

### A.    Rule 9(b) (All Causes of Action)

Google first argues that all of Plaintiffs' claims are subject to dismissal for failure to allege fraud with the specificity required under Rule 9(b) of the Federal Rules of Civil Procedure. ECF 39 at 4-5. Google argues that because all of Plaintiffs' claims sound in fraud, the heightened pleading standard of Rule 9(b) applies, and Plaintiffs have not pled sufficient facts in support of their claims to meet the standard. *Id.* In their Opposition, Plaintiffs argue that Rule 9(b) does not apply to any of their claims and that even if it does, Plaintiffs' factual allegations are sufficient to meet the requirement. ECF 45 at 3-6.

Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The applicability of Rule 9(b) hinges not on the elements of the claim but rather on the nature of the allegations themselves: "Rule 9(b) applies to 'averments of fraud' in all civil cases in federal district court," including "particular averments of fraud" even when fraud is not an essential element of the claim. *Vess v. Cuva-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.

2009) (quotation marks and citation omitted). "Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Vess*, 317 F.3d at 1104.

In accessing the applicability of Rule 9(b) to claims in which fraud is not an essential element, the Ninth Circuit has explained that "[i]n some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim," in which case, "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)," even though fraud is not a required element of the claim. *Id.* at 1103. On the other hand, "a plaintiff may choose not to allege a unified course of fraudulent conduct in support of a clam, but rather to allege some fraudulent and some non-fraudulent conduct," in which case "only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements." *Id.*

Here, Plaintiffs bring unfair practice and unlawful practice claims under the UCL and the CLRA, a claim pursuant to Penal Code § 496 and a conversion claim. ECF 1. None of Plaintiffs' claims is predicated on fraud. Plaintiffs allege that Google unlawfully: 1) kept stolen funds; 2) distributed stolen funds to third parties; 3) failed to warn consumers of gift card fraud; 4) included unconscionable disclaimer language on its gift card packaging and Terms and Conditions; and 5) received, retained, withheld and concealed stolen property. ECF 1, ¶¶ 125-27, 136-38, 146, 161. Plaintiffs do not allege that Google intended to make false misrepresentations by concealing the whereabouts of the allegedly stolen funds and/or by omitting its capability to trace gift card transactions. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b)'s heightened pleading standard to UCL and CLRA claims because plaintiff alleged that defendants intended to conceal information from customers). The Court notes that Google admitted in its motion to dismiss that "Plaintiff has not pled fraud" and that "Plaintiff merely asserts that Google failed to disclose the risk of third-party conduct or that it holds the proceeds of a sale for some time before depositing them to developers and retaining a commission." ECF 39 at 6. Thus,

the Court finds Rule 9(b) inapplicable. *See Bautista v. Valero Mktg. & Supply Co.*, No. 15-cv-05557-RS, 2016 WL 3924117, at *3 (N.D. Cal. July 21, 2016) (refusing to apply Rule 9(b) standards to claims alleging defendants omitted information and failed to disclose surcharge); *E.H. v. Meta Platforms, Inc.*, No. 23-cv-04784-WHO, 2024 WL 557728, at *4 (N.D. Cal. Feb. 12, 2024) (finding Rule 9(b) inapplicable for claims under the "unlawful" and "unfair" prongs of the UCL). Accordingly, the Court DENIES Google's motion to dismiss on the basis that the pleadings fail to meet Rule 9(b)'s standard.

### B.  Limitation of Liability Bar (All Causes of Action)

Google next argues globally that the limitation of liability provisions on the Google Play gift card packaging cut off its liability for third-party misconduct. ECF 39 at 5-6. In their opposition, Plaintiffs argue that Google's limitation of liability defense fails because the Terms and Conditions of Google Play gift cards are "unconscionable as applied to scam victims," and, as the Court in *Barrett* found, Google cannot disclaim "its own tortious acts."  ECF 45 at 6 (citing *Barrett v. Apple Inc.*, No. 5:20-CV-04812-EJD, 2022 WL 2119131, at *14 (N.D. Cal. June 13, 2022)).

The California state courts have held that a limitation-of-liability clause can be enforceable with respect to a breach-of-contract claim so long as the clause is not unconscionable. *See Darnaa, LLC v. Google Inc.*, 236 F. Supp. 3d 1116, 1125 (N.D. Cal. 2017), *aff'd sub nom. Darnaa, LLC v. Google LLC*, 756 F. App'x 674 (9th Cir. 2018) (citing *Food Safety Net Services v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1126 (2012)). Here, the Google Play gift card Terms and Conditions provide:

> **Limitations.** The Gift Card or Credit may be used for purchases of eligible items on Google Play only. Limits may apply to redemption and use. Items ineligible for purchase using Gift Card or Credit include certain items in the "Devices" section of Google Play (e.g., phones, tablets and related device accessories) . . . . The Gift Card or Credit is not redeemable for cash or other cards, is not reloadable or refundable, cannot be combined by you with other non-Google Play balances in your Google Payments account, and cannot be resold, exchanged or transferred for value, except as required by law. . . .

* * *

United States District Court
Northern District of California

**Fraud.** [Google is] not responsible if a Gift Card or Credit is lost, stolen, destroyed or used without your permission. [Google] will have the right to close customer accounts and bill alternative forms of payment if a fraudulently obtained Gift Card or Credit is redeemed and/or used to make purchases on Google Play.

\* \* \*

**General Terms.** . . . When you purchase, receive or redeem a Gift Card or Credit, you agree that the laws of the State of California apply, without regard to principles of conflict of laws, and that such laws will govern these Gift Card and Credit terms and conditions.

ECF 1, ¶ 37. A plain reading of the Terms and Conditions would shield Defendants from liability for third-party misconduct, including the third-party induced Google Play gift card purchases through scams, unless Plaintiffs can show the Terms and Conditions are unenforceable due to unconscionability. *See Darnaa*, 236 F. Supp. 3d at 1125; *see also Sanchez v. Navy Fed. Credit Union*, No. EDCV 23-285 JGB (KKx), 2023 WL 6370235, at *11-19 (C.D. Cal. Aug. 14, 2023) (finding the bank not liable for "authorized" transactions between its customer and third-party scammers in light of the parties' agreement).

Turning to unconscionability, under California law, a contract provision is "unconscionable, and therefore unenforceable, only if it is *both* procedurally and substantively unconscionable." *In re iPhone Application Litig.*, NO. 11-MD-02250-LHK, 2011 WL 4403963, at *7 (N.D. Cal. Sept. 20, 2011) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (2000)); *see also Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010) (explaining that, under California law, "both procedural and substantive unconscionability must be present for the contract to be declared unenforceable"). "The procedural element of unconscionability focuses on two factors: oppression and surprise." *Aron v. U–Haul Co. of Cal.*, 143 Cal.App.4th 796, 808 (2006). "The substantive element of unconscionability focuses on the actual terms of the agreement and evaluates whether they create 'overly harsh' or 'one-sided' results as to 'shock the conscience.'" *Id.* (citation omitted).

//

In the CAC, Plaintiffs allege that Google's "attempt to disclaim liability for loss or damage resulting from Google Play gift card scams" and its disclaimers on Google's gift card packaging and Google's Online Terms and Conditions are unconscionable. *See* ECF 1, ¶¶ 40, 146, 151-52, 193; ECF 45 at 6, 15-18. However, Plaintiffs have not alleged facts supporting those conclusory allegations.

"The procedural element of unconscionability focuses on two factors: oppression and surprise." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1138 (N.D. Cal. 2010) (internal quotation marks and citation omitted). In order to establish oppression—a requisite element of a claim of procedural unconscionability—Plaintiffs must allege facts showing "an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Tietsworth*, 720 F. Supp. 2d at 1139. "[A]ny claim of 'oppression' may be defeated if the complaining party had reasonably available alternative sources of supply from which to obtain the desired goods or services free of the terms claimed to be unconscionable." *Id.* Here, although May did not bargain for these terms, she has not alleged facts showing that she did not have a "reasonably available alternative" to the use of Google Play gift cards. May argues that she did not have a choice when the scammers led her to believe the Google Play gift cards were "the only acceptable form of payment under urgent circumstances." ECF 45 at 16 (citing ECF 1, ¶¶ 41-43). But May does not allege that Google imposed that restriction, or conditioned purchase of its products on the use of Google Play gift cards. Additionally, May was not using the Google Play gift cards in their designed way (*i.e.*, accessing services on Google Play), and this is not a "a case of adhesive contract" where May lacked "any realistic way to look elsewhere for a more favorable contract." *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1320 (2005). Moreover, the CAC does not allege that May was "surprised" by the liabilities disclaimed by Google or that May could not or did not access Google's Online Terms and Conditions at the time of purchase. *See Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2017 WL 976048, at *12 (N.D. Cal. Mar. 14, 2017). Indeed, May "read the language on the gift

cards she purchased," making it unlikely that she was surprised by Google's disclaimer. ECF 1, ¶ 99. May has not pled facts showing procedural unconscionability.

"The substantive element of unconscionability focuses on the actual terms of the agreement and evaluates whether they create overly harsh or one-sided results as to shock the conscience." *Tietsworth*, 720 F. Supp. 2d at 1138. As a preliminary matter, the contract at issue involves access to a "nonessential recreational activity"—entertainment services on Google Play—and thus, the contract is not substantively unconscionable because "the consumer always has the option of simply forgoing the activity." *Lum v. Merlin Ents. Grp. U.S. Holdings Inc.*, 2023 WL 2583307, at *12 (S.D. Cal. Mar. 20, 2023) (citing *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1245 (2007)). Moreover, May does not plead facts alleging Google's disclaimer and/or no-refund policy created "overly harsh or one-sided results as to shock the conscience." *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1144 (N.D. Cal. 2013).

Plaintiffs' reliance on *Barrett* is also misplaced. ECF 45 at 6 (citing *Barrett*, 2022 WL 2119131, at *14). There, the *Barrett* Court found "[Apple's] disclaimer is substantively unconscionable in that it purports to avoid liability for Apple's own conduct as to withholding or concealing stolen property and conversion." *Id.* Here, the disclaimer on Google Play gift cards seeks to disclaim Google's liability against third-party misconduct, and the CAC has not alleged any misconduct by Google. *See* ECF 45 at 17 (citing ECF 1, ¶¶ 5, 51, 58, 62-63, 87, 121). Indeed, as Google correctly points out, the *Barrett* Court found the disclaimer there not unconscionable as to third-party liability. *See Barrett*, 2022 WL 2119131, at *14. And, to the extent May alleges that Google "attempts to apply its disclaimer language to exculpate itself from its own violations . . .", no facts have been alleged to support this conclusion. ECF 1, ¶ 138. Thus, the Court finds Plaintiffs have failed to adequately plead facts alleging substantive unconscionability.

Thus, the Court GRANTS Google's motion to dismiss Plaintiffs' claims on the basis of limitation of liability WITH LEAVE TO AMEND.

### C. Group Pleading (All Causes of Action)

Google argues that by grouping different Google entities in the CAC, Plaintiffs failed to plead facts establishing each Google entity as a plausible defendant. ECF 39 at 7. According to Google, the CAC "offers no allegations about [each Google] entities' conduct" and is "fatally deficient." *Id.*

To fulfill the requirement of Federal Rule of Civil Procedure 8(a), a complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. However, a complaint may fail to give the "fair notice" if it does not differ between the defendants. *See Corazon v. Aurora Loan Servs., LLC*, No. 11-cv-00542-SC, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011) ("In the few allegations where [plaintiff] alleges misconduct by a singular defendant, [plaintiff] fails to specify which one."). But so-called "group pleading" is not fatal if the complaint gives defendants fair notice of the claims against them. *See DeSoto Cab Co., Inc. v. Uber Techs., Inc.*, No. 16-CV-06385-JSW, 2018 WL 10247483, at *16 (N.D. Cal. Sept. 24, 2018) (finding the so-called "group pleading" fairly claims the four Uber entities participated in the alleged wrongful conduct); *see also Tivoli LLC v. Sankey*, No. 14-cv-1285-DOC-JCG, 2015 WL 12683801, at *3-4 (C.D. Cal. Feb 3, 2015) (finding the "group" nature of the pleading did not "deprive each defendant of fair notice" of their alleged wrongful conduct).

The Court rejects Google's contention that the "group" nature of the allegations requires dismissal of the claims. Here, the CAC fairly claims that the Google entities are related. It is entirely plausible that the Google entities acted in concert in carrying out the alleged wrongdoings. *See Tivoli*, 2105 WL 12683801, at *4. Moreover, having rejected the need to plead the claims under Rule 9(b), the Court is satisfied that each Defendant has fair notice of the claims against it. Thus, the Court DENIES Google's motion to dismiss based on group pleading.

//

//

United States District Court
Northern District of California

### D. Time Bar (Penal Code § 496, Conversion, UCL and CLRA Claims)

Google asserts a statute of limitations defense and contends that certain claims are time-barred, and a portion of the class allegations should be stricken. ECF 39 at 8. Specifically, Google contends that 1) May's Penal Code § 496 claim for treble damages is barred by one-year statute of limitation, and 2) a portion of the class claims for compensatory damages under Penal Code § 496, conversion, UCL and CLRA are barred by statutes of limitations ranging from three to four years. *Id.* at 8-9. In the CAC, May alleges claims for absent class members stretching back to January 1, 2015. ECF 1, ¶ 108. May filed the CAC on March 5, 2024. ECF 1. Google contends that class allegations that fall outside of the applicable statutes of limitations should be stricken pursuant to Federal Rule of Civil Procedure Rule12(f). *Id.* at 8.

Federal Rule of Civil Procedure Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion made under this rule is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quotation marks and citation omitted). For the following reasons, the Court GRANTS Google's motion to strike the class allegations WITHOUT LEAVE TO AMEND IN PART, and WITH LEAVE TO AMEND IN PART.

#### 1. Treble Damages (Penal Code § 496)

In the CAC, Plaintiffs seek statutory treble damages pursuant to Penal Code § 496 along with compensatory damages and costs and attorneys' fees. ECF 1, ¶¶ 170, 177. Google argues that Plaintiffs' Penal Code § 496 claim for treble damages is time-barred as it falls outside of the applicable statute limitation. ECF 39 at 8-9. In response, Plaintiffs contend that "the three-year limitations period set forth in Cal. Civ. Proc. Code § 338 applies" to their claim for treble damages under Penal Code § 496. ECF 8 (citing *Von Saher v. Norton Simon Museum of Art at Pasadena*, 578 F.3d 1016, 1019 (9th Cir. 2009), *amended on other grounds*, 592 F.3d 954 (9th Cir. 2010)).

United States District Court
Northern District of California

The Court disagrees with Plaintiffs' interpretation of the statute. Penal Code § 496(c) permits victims of crimes defined in Penal Code § 496(a) to initiate a civil lawsuit to recover "three times the amount of actual damages," which constitute treble damages. "[T]he settled rule in California is that statutes which provide for recovery of damages additional to actual losses incurred, such as double or treble damages, are considered penal in nature[], and thus governed by one-year period of limitations stated in [California Code of Civil Procedure] § 340, subdivision (1)." *Tu Le v. Prestige Cmty. Credit Union*, No. 8:22-cv-00259, 2023 WL 9689133, at *9 (C.D. Cal. Nov. 6, 2023) (citing *Prudential Home Mortg. Co. v. Superior Court*, 66 Cal. App. 4th 1236, 1242 (1998)). Plaintiffs' reliance on *Von Saher* is misplaced as the Ninth Circuit there did not consider the statute limitations period of Penal Code § 496. 578 F.3d at 1019.

Plaintiffs next rely on an antitrust case—*PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406 (2003)—and argue treble damages can be recovered for "'remedial' purpose." ECF 45 at 8. The Court finds *PacifiCare* distinguishable. In *PacifiCare*, the Supreme Court explained that "different statutory treble damages" could be placed on "different points along the spectrum between purely compensatory and strictly punitive awards." *PacifiCare*, 538 U.S. at 405. The Supreme Court explained that, for example, the treble-damage provision of the False Claims Act is "essentially punitive in nature," whereas the treble-damage provision of § 4 of the Clayton Act "is in essence a remedial provision." *Id.* at 405-06 (internal citation omitted). While the Plaintiffs are correct that treble damages could be remedial in nature, the treble-damage provision under Penal Code § 496 is punitive in nature. *See Prudential Home Mortgage*, 66 Cal. 4th at 1242 ("The action to recover [civil penalty under Penal Code § 496] is a penal action . . . [and] must be brought within one year.").

Plaintiffs then rely on *Siry* to establish the recovery of treble damages under Penal Code § 496 is "not a penalty or forfeiture" because the Supreme Court of California there explained the recovery is an "enhanced civil remedy." ECF 45 at 8 (citing *Siry Invest., L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 355-57, 365-67 (2022)). Plaintiffs' reliance on *Siry* is misplaced because the

16

Supreme Court of California there did not address the statute of limitations for treble-damages claims under Penal Code § 496. *See Siry*, 13 Cal. 5th at 353 n.15.

The Court finds that a one-year statute of limitations period applies to Plaintiffs' Penal Code § 496 claim for treble damages. Here, Plaintiffs filed this lawsuit on March 5, 2024. ECF 1. Thus, any treble-damage claims that accrued prior to March 5, 2023, are time-barred. *Tu Le*, 2023 WL 9689133, at *9. Thus, the Court GRANTS Google's motion to dismiss with respect to treble damages under Penal Code § 496 WITHOUT LEAVE TO AMEND. And because lead plaintiff May filed her claim more than one year after her alleged 2021 scam, she cannot proceed on behalf of other absent class members who were scammed within one year of filing the initial complaint. Compensatory damages and attorneys' fees are not dismissed.

**2. Equitable Tolling (Penal Code § 496, Conversion, UCL and CLRA)**

Other than treble damages pursuant to Penal Code § 496, the applicable statutes of limitations for Plaintiffs' remaining causes of action range from three to four years: Penal Code § 496 – 3 years for compensatory damages, Cal. Penal Code § 801; Conversion – 3 years, Cal. Civ. Proc. Code § 338; UCL – 4 years, Cal. Bus. & Prof. Code Ann. § 17208; and CLRA – 3 years, Cal. Civ. Code Ann. § 1783. In the CAC, Plaintiffs seek to toll the applicable statutes of limitations and extend the class period from March 5, 2020 (four years before the filing of this action) back to January 1, 2015, due to "Google's knowing, active concealment, and denial of the facts alleged." ECF 1, ¶¶ 104-06, 108; ECF 45 at 10-11. Plaintiffs argue that equitable tolling is warranted because Google concealed information that "prevented Plaintiffs from discovering the basis of her claims." ECF 45 at 10.

The equitable tolling doctrine permits a court to toll the statute of limitations when a plaintiff, "possessing several legal remedies, reasonably and in good faith, pursues one designed to lessen the extent of [her] injuries or damage." *Addison v. State*, 578 F.2d 941, 943 (1978); *see Butler v. Nat'l Cmty. Renaissance of California*, 2014 WL 4473959, at *10–11 (9th Cir. Sept. 12, 2014). A statute

17

of limitations may be tolled, in certain circumstances, while an aggrieved party diligently pursues her claims in an alternative forum. *See, e.g., McDonald v. Antelope Valley Cmty. College Dist.*, 45 Cal. 4th 88, 110 (2008). The Ninth Circuit has also held that equitable tolling can "be applied in situations where, 'despite all due diligence, [the party requesting equitable tolling] is unable to obtain vital information bearing on the existence of the claim." *Albillo-De Leon v. Gonzales*, 410 F.3d 1090, 1100 (9th Cir. 2005) (citing *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995)) (alternation in original). "In tolling statutes of limitations, courts have typically assumed that the event that 'tolls' the statute simply *stops the clock* until the occurrence of a later event that permits the statute to resume running." *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1195 (9th Cir. 2001).

In the CAC, Plaintiffs allege that Google concealed and misrepresented its ability to "monitor and control Google Play gift card transactions, Google Account activity, and Google Play Store purchases" and class members "could not have reasonably discovered the true nature of Google's conduct." ECF 1, ¶ 104. But Plaintiffs have not alleged class members reasonably relied on Google's misrepresentations or exercised diligence in pursuing their claims. *See McDonald*, 45 Cal. 4th at 101-04; ECF 45 (citing ECF 1, ¶¶ 39, 43, 67-68, 71-73, 78, 92-93); ECF 55 at 7. Additionally, Plaintiffs have not pled that Defendants had a fiduciary duty to disclose the sought information or that Defendants fraudulently concealed such information. *See Bettle v. Toyota Motor Corp.*, 645 F. Supp. 3d 978, 985-86 (C.D. Cal. 2022) (finding plaintiff failed to plead a basis for fraudulent concealment to toll the statute of limitations); ECF 39 at 9. In their opposition, Plaintiffs have not responded to Defendants' arguments. ECF 45 at 10. Rather, Plaintiffs rely on *Albillo-De Leon* and restate that facts concealed by Google were critical to their claims. *Id*. The Court finds *Albillo-De Leon* distinguishable. There, the Ninth Circuit granted defendant's request to toll the statute of limitation based on ineffective assistance of counsel because the defendant acted diligently in discovering the ineffective assistance and in requesting new counsel. *See Albillo-De Leon*, 410

18

F.3d at 1100. Here, Plaintiffs have failed to allege sufficient facts, such as their diligence or any affirmative deceptive conduct by Defendants, to support this claim. *See Bettle*, 645 F. Supp. 3d 978, 985-86; *McDonald*, 45 Cal. 4th at 101-04. Thus, the Court GRANTS WITH LEAVE TO AMEND Google's motion to dismiss Plaintiffs' compensatory damage claims pursuant to § 496, conversion claim, UCL claims, and CLRA claims to the extent that they are time-barred, and GRANTS WITH LEAVE TO AMEND Google's motion to strike Plaintiffs' class allegations for compensatory damages pursuant to Penal Code § 496, conversion, UCL and CLRA to the extent that they encompass periods beyond those permitted by the statutes of limitations.

### E.  Evaluation of Claims under Rule 12(b)(6)

#### 1.  Statutory Standing To Bring UCL and CLRA Claims (First, Second, Third and Fourth Causes of Action)

Google argues that May has failed to allege facts establishing statutory standing under the UCL and the CLRA because her harm was caused by third-party scammers, not Google. ECF 39 at 11. May contends that she has sufficiently pled facts establishing statutory standing under both the UCL and the CLRA because she has alleged Google failed to "take action that could have eliminated the injury." ECF 45 at 22.

The UCL prohibits an individual or entity from engaging in any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009). A private person has statutory standing under the UCL only if he or she "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.

The CLRA similarly imposes additional statutory requirements on a plaintiff to show standing. The CLRA provides that a plaintiff "must not only be exposed to an unlawful practice but also have suffered some kind of damage" as a result of the alleged violations of the statute. *Bower*

United States District Court
Northern District of California

*v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1556 (2011). Thus, a plaintiff is required to show "a causal connection or reliance" on an affirmative misrepresentation or a material omission. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011). In other words, the plaintiff needs to allege that a defendant's misrepresentation or omission "'played a substantial part, and so has been a substantial factor' in influencing the plaintiff's actions which, in turn, led to his harm." *Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102, 1113 (N.D. Cal. 2010) (citation omitted).

The Court finds May has failed to plead facts establishing statutory standing under the UCL or the CLRA. As a preliminary matter, May has failed to allege that she suffered harm as a result of Google's misconduct. In the CAC, May faults Google for failing to "unequivocally" warn consumers of Google Play gift card scams. *See* ECF 1, ¶¶ 43, 44 ("Google does not describe the scam or unequivocally inform consumers prior to the sale of that card," and fails to "unequivocally" state "anyone who is asking for Google Play gift cards as a form of payment is a scammer."). But May suffered economic harm because of third-party scammers' fraudulent inducement, not Google's omission or misrepresentation.[1] May's reliance on *Pirozzi* is misplaced. ECF 45 at 23 (citing *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 922-23 (N.D. Cal. 2013)). There, the Court found the plaintiff had statutory standing to bring claims under the UCL because she overpaid for an iPhone by relying on the defendant's misrepresentation on its website and in-store advertisement about iPhone's security. Unlike *Pirozzi*, here, May suffered economic harm due to the fraudulent emergency created by the third-party scammers who demanded Google Play gift cards as the only payment option. ECF 1, ¶¶ 41-44; 95-98. Because May does not allege Google induced her Google Play gift card purchases, May's contention fails.

---

[1] Plaintiffs acknowledge that Defendant does warn gift card customers of potential scams. Plaintiffs instead complain that the warning is not "unequivocal" and emphatic. ECF 1, ¶ 43. Plaintiffs allege that Defendant's warning that "[a]ny other request for the code *may* be a scam" is "anemic." *Id.*, ¶ 45 (emphasis in original).

United States District Court
Northern District of California

United States District Court
Northern District of California

In her opposition, May separately argues that she suffered injury because Google kept commissions from purchases made by scammers using the Google Play gift cards at issue rather than issuing her a refund. ECF 45 at 23 (citing ECF 1, ¶¶ 5, 30, 51, 57-58, 62-63, 87, 121). This allegation of economic injury is insufficient to satisfy the standing requirement under UCL or CLRA because it is based on Google's post-sale conduct that did not induce the alleged Google Play gift card purchase. *See, e.g., Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1201-02 (N.D. Cal. 2014) (dismissing UCL and CLRA claims for lack of statutory standing because they relied on the defendant's "unfair or deceptive" conducts that occurred post-sale); *Durkee v. Ford Motor Co.*, No. C 14-0617-PJH, 2014 WL 4352184, at *3 (N.D. Cal. Sept. 2, 2014) (dismissing CLRA claim "based on events following a sales transaction" because such events "did not result[] in the sale or lease of goods or services to a consumer").

Accordingly, Google's motion to dismiss May's UCL and CLRA claims is GRANTED to the extent it is based on a lack of statutory standing WITH LEAVE TO AMEND.

### 2. UCL Claims (First and Second Causes of Action)

In the first and second causes of action, May seeks equitable remedies – disgorgement, restitution, and injunctive relief – pursuant to the "unfair" and "unlawful" prongs of UCL. ECF 1, ¶¶ 131, 140. Google seeks dismissal of May's UCL claims because May failed to allege that 1) she lacks an adequate remedy at law, 2) she has failed to establish Article III standing for injunctive relief, and 3) she has failed to adequately plead unfair or unlawful conduct under UCL. ECF 39 at 10-11, 13-17.

### a. May has failed to allege an inadequate remedy at law.

Remedies under the UCL are equitable in nature and legal damages cannot be recovered. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144 (2003). The Ninth Circuit has held that plaintiffs seeking equitable relief under the UCL in a federal court must establish that they lack an adequate remedy at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d

834, 844 (9th Cir. 2020); *see also Philips v. Ford Motor Co.*, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015) (*citing Knox v. Phoenix Leasing, Inc.*, 29 Cal. App. 4th 1357, 1368 (1994)) ("A plaintiff seeking equitable relief in California must establish that there is no adequate remedy at law available."); *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009) ("[E]quitable relief is not appropriate where an adequate remedy exists at law."). Courts in this District generally require plaintiffs seeking equitable relief under UCL to allege some facts suggesting the lack of an adequate remedy at law. *See, e.g., Guthrie v. Transamerica Life Ins. Co.*, 561 F.Supp.3d 869, 875 (N.D. Cal. 2021) ("I and many other district judges applying *Sonner* have understood it to require that a plaintiff must, at a minimum, *plead* that she lacks adequate remedies at law if she seeks equitable relief."); *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F.Supp.3d 552, 638 (N.D. Cal. 2020) (granting plaintiffs "leave to amend to expressly allege that their remedies at law are inadequate and to support their claim to equitable restitution under the UCL").

The Court finds that May has not sufficiently alleged that she lacks an adequate remedy at law to pursue her request for disgorgement and restitution. Here, Plaintiff alleges conclusively that she "lack[s] an adequate remedy at law." ECF 1, ¶ 191. But May has failed to plead any facts as to why the damages she seeks under her CLRA, conversion, and/or Penal Code § 496 claims are inadequate. Thus, the Court GRANTS Google's motion to dismiss May's UCL claims on the basis that May has failed to allege that she lacks an adequate remedy at law WITH LEAVE TO AMEND.

**b.  May lacks Article III standing to seek injunctive relief.**

A plaintiff must have Article III standing for each element of relief sought. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (rejecting the argument that constitutional standing in a pending damages suit affords the plaintiff Article III standing to seek a distinct equitable remedy). A plaintiff who has been wronged is only entitled to injunctive relief if he can show that he faces "real or immediate threat . . . that he will again be wronged in a similar way." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (citation omitted). "Past exposure to illegal conduct does

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). "Where standing is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that [she] will again be wronged in a similar way.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018).

Here, May seeks to enjoin further unfair and unlawful acts or practices by Google. ECF 1, ¶¶ 131, 140. But the CAC has failed to show a *likelihood* that May will be a victim of gift card scams again given her awareness of such scams, and thus May has not pleaded facts establishing her entitlement to injunctive relief. *See Davidson*, 889 F.3d at 969-70 (9th Cir. 2018). Thus, the Court GRANTS Google's motion to dismiss May's claims for injunctive relief under the UCL WITH LEAVE TO AMEND.

### c. May Has Failed to Adequately Plead Unfair Conduct that Violates the UCL (First Cause of Action)

Google further challenges May's UCL claim on the ground that May does not plead any "unfair" conduct that violates the UCL. ECF 39 at 13-17. The "unfair" prong of the UCL creates a cause of action for a business practice that is unfair even if not proscribed by some other law. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003). "The UCL does not define the term 'unfair' ... [and] the proper definition of 'unfair' conduct against consumers 'is currently in flux' among California courts." *Id.* Some California courts apply a "tethering" test, under which the "unfairness must be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) (internal quotation marks omitted). Under this test, "[p]laintiffs do not need to plead any direct violations of a statute . . . Instead, Plaintiffs need merely to show that the effects of defendant's conduct 'are comparable to or the same as a violation of the law, or otherwise significantly threaten or harm competition.'" *In re Adobe Sys., Inc. Privacy Litig.,* 66 F. Supp. 3d

1197, 1227 (N.D. Cal. 2014) (quoting *Cel-Tech*, 20 Cal. 4th at 187). Other California courts apply a balancing test, which requires courts to "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (internal quotation marks omitted). Applying this test, the California Courts of Appeal have stated that "an unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255 (2006) (internal quotation marks omitted) (emphasis added).

Google contends that May's allegations are insufficient to state a claim under either test because May has failed to allege Google's conduct "undermines an existing legislative policy" or is "substantially injurious, immoral, or unethical." *See generally* ECF 39 at 13-17. In response, May argues that she pled three unfair acts in the CAC that satisfy both tests: 1) Google allegedly keeps 15-30% of scam victims' money, ECF 45 at 18 (citing ECF 1, ¶¶ 5, 51, 57-58, 62-63, 65-66, 69); 2) Google knows the money it received was stolen and distributes to its developers several days or weeks after, ECF 45 at 19 (citing ECF 1, ¶¶ 5, 51, 57-58, 62-63, 65-66, 69); and 3) Google allegedly discouraged scam victims from seeking refunds and refusing to issue a refund, ECF 45 at 19-20 (citing ECF 1, ¶¶ 30, 68, 70, 82, 92, 128, 147, 149-50, 175-76). The Court agrees with Google. The Court notes that the CAC does not contain a single factual allegation to support May's conclusory argument. Indeed, the CAC identifies no public policy suggesting Google has a duty to refund the scammed victims or that the harm of Google's conduct outweighs any benefits. *See, e.g., Day v. GEICO Casualty Co.*, 580 F. Supp. 3d 830, 845 (N.D. Cal. 2022) (denying motion to dismiss plaintiff's UCL unfairness claim because the complaint adequately pled the insurance company's failure to issue premium credits violated insurance policy); *City & Cnty. Of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 694 (N.D. Cal. 2020) (denying motion to dismiss plaintiffs' UCL unfairness claim because the complaint adequately pled that the oversupply of prescription opioids

in San Francisco violated public policy and its harm of injuring consumers outweighs any benefits on the health and general welfare of the society). May further contends that the "tethering" test is satisfied because the alleged acts violate Penal Code § 496 and CLRA. ECF 45 at 20. But as the Court explains below, May has failed to adequately plead claims under Penal Code § 496 or CLRA.

As such, the Court GRANTS Google's motion to dismiss May's UCL claim to the extent the claim is premised on the unfair prong of the UCL WITH LEAVE TO AMEND.

### d. May Has Failed to Adequately Plead Unlawful Conduct that Violates the UCL (Second Cause of Action)

Google next challenges May's UCL claim on the ground that May does not plead any "unlawful" conduct that violates the UCL. ECF 39 at 17. The "unlawful" prong of the UCL prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel–Tech Commcn's Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999) (internal quotation marks omitted). By proscribing "any unlawful" business practice, the UCL permits injured consumers to "borrow" violations of other laws and treat them as unlawful competition that is independently actionable. *Id.*

As predicates for her claim under the UCL's "unlawful" prong, May alleges that Google violated California Penal Code § 496 and the CLRA. ECF 1, ¶¶ 136-138. As discussed below, the Court finds May has not adequately pled her Penal Code § 496 and CLRA claims. Thus, May has not adequately alleged unlawful conduct that may serve as a basis for a claim under the UCL's unlawful prong. *See Hodson v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) ("[Plaintiff] did not violate the CLRA; thus, it did not violate the unlawful prong of the UCL."). Accordingly, the Court GRANTS Google's motion to dismiss May's UCL unlawful claim WITH LEAVE TO AMEND.

### 3. CLRA Claims (Third and Fourth Causes of Action)

In the CAC, May alleges that her claims for unfair practices in violation of the CLRA rest on Google's use of an unconscionable and adhesive disclaimer on its gift card packaging and in

Google's Online Terms and Conditions. ECF 1, ¶¶ 37-39, 146, 163, 190. May alleges that Google's attempt to disclaim liability discourages victims from contacting Google and is unlawful as to its conduct that violates Penal Code § 496 and UCL. *Id.*, ¶¶ 147, 152, 161-63. Google contends that May has failed to adequately plead procedural and substantive unconscionability, and thus, May's CLRA claims should be dismissed. ECF 39 at 18-19.

"The CLRA makes unlawful . . . various 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer.'" *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 639 (2009). These prohibited acts or practices include "representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law," and "inserting an unconscionable provision in the contract." *Id.* (internal quotation marks, citation, and alterations omitted).

As discussed above, the Court agrees with Google that May has failed to adequately plead both procedural and substantive unconscionability. Thus, the Court GRANTS Google's motion to dismiss May's CLRA claims WITH LEAVE TO AMEND.

### 4. California Penal Code § 496 (Fifth Cause of Action)

A civil cause of action under Penal Code § 496 can be brought by "[a]ny person who has been injured" by a defendant "who buys or receives any property that has been stolen or that has been obtained  in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained." Cal. Penal Code § 496 (a), (c). To state a claim for a violation of Penal Code § 496(a), May must plead three elements: (1) the property was stolen or that has been obtained in any manner constituting theft; (2) the defendant received or was in possession of the stolen property; and (3) the

defendant knew the property was stolen. *See Bell v. Feibush*, 212 Cal. App. 4th 1041, 1044 (2013). "For the purpose of Penal Code § 496(a), stolen property extends to property that has been stolen by conversion or false pretense." *Casamassima v. Cuadra*, No. 20-CV-04071-JSC, 2020 WL 7482214, at *4 (N.D. Cal. Nov. 16, 2020).

First, Google contends that May has failed to plead the funds were stolen because May paid for Google Play gift cards with cash and received Google Play gift cards of equal value, and thus "[she voluntarily] relinquishe[d] the rights to the funds." ECF 39 at 20. Google argues that converting "the money relinquished as part of a valid sale" into stolen property "by subsequent events involving a third party" would make the application of Penal Code § 496 "unbounded in the context of sale." *Id.* In response, May relies on *Bell* and argues the purchases of Google Play gift cards "constitute theft by false pretense" as the purchases were induced by false representations by the third-party scammers. ECF 45 at 11-12 (citing ECF 1, ¶¶ 17, 54-55).

May's reliance on *Bell* is misplaced. There, the defendant received a loan from the plaintiff based on the false pretense that the defendant owned the trademark "Toughlove" and needed the money to settle a lawsuit over his interests in the so-called "toughlove" industry. 212 Cal. App. 4th at 1043. But because the defendant's representations were false as "the so-called toughlove business was a scam," the court held that the defendant was liable under Penal Code § 496(c) because "theft" under the meaning of Penal Code § 496 constitutes knowingly defrauding a person of money by false representation. *Id.* at 1043, 1048. The Court finds that the theft based on fraud in *Bell* is wholly different from the false pretense which May alleges in this case. Unlike *Bell*, here, there is no allegation that Google made any false representations to induce May to purchase the Google Play gift cards. *See AdTrader, Inc. v. Google LLC*, 2018 WL 3428525, at *9 (N.D. Cal. July 13, 2018). To the extent that May alleges that Google made false representations about its ability to issue a refund on the Google Play gift card, such allegations pertain to purported misrepresentation regarding Google's refund policy but not whether Google induced the Google Play gift card

purchases through false pretense. *Id.* Thus, the Court finds May's allegation that Google received the "stolen" funds when she purchased Google Play gift cards is deficient.

Second, Google contends that even if it possessed funds used to purchase the gift cards, May has failed to adequately plead that Google had knowledge that the funds were stolen or that it knowingly withheld stolen property. ECF 39 at 20-21. The Court agrees with Google. In the CAC, May alleges that Google had "actual knowledge that specific gift cards were purchased as the result of fraud" because: 1) scammers redeem the gift cards into Google Accounts controlled by themselves; 2) "Google knows which Google Accounts the gift card has been redeemed into;" and 3) Google possesses the technology and means to identify the Google Play gift cards and Google Accounts associated with scams.  ECF 1, ¶¶ 5, 31-34, 56-61, 80-83, 88. But May has failed to allege that Google deployed that technology to detect this scam or that Google had actual knowledge that May's Google Play gift card purchases themselves were the result of scams. *See Freeney v. Bank of Am. Corp.*, No. CV 15-2376-JGB-PJWX, 2016 WL 5897773, at \*12 (C.D. Cal. Aug. 4, 2016) (holding receiving stolen property under Penal Code § 496 requires proving that a defendant "had actual knowledge that the goods it received or sold were in fact stolen"). To the extent that May alleges Google knew the funds it received were stolen because May called Google to report the gift card scam, there is no allegation that Google had a duty to investigate her report and/or that the information she reported was sufficient for Google to identify the scam or stolen funds. *See Kidron v. Movie Acq. Corp.*, 40 Cal. App. 4th 1571, 1585 (1995) (finding complaint failed to sufficiently plead that defendant had actual knowledge of fraud).

In her opposition, May relies on *Barrett* and argues that Google had actual knowledge of the alleged theft at the time of the retail sale of the gift cards and had actual knowledge that the funds it received and/or retained were stolen from May. ECF 45 at 12-13 (citing *Barrett*, 2022 WL 2119131, at \*2); ECF 1, ¶¶ 169, 174. The Court disagrees. In *Barrett*, the scammers spent the value of the gift cards on applications controlled by the scammers themselves, and the Court found that "the theft is

not complete until the scammers obtain the redemption codes and redeem the funds for their own purposes." *Barrett*, 2022 WL 2119131, at *2, 5. While both cases involve "scammers [misleading] victims into purchasing the cards," here, there is no allegation that the scammers spent the gift cards on Google Play applications controlled by themselves. *Id.*, 2022 WL 2119131, at *5; ECF 1, ¶¶ 169, 174. May has also failed to allege why the funds were stolen at the time of the retail sale of the Google Play gift cards because May still possessed the credits in the Google Play gift cards at that time. ECF 1, ¶ 169. Thus, the Court finds that May has failed to adequately allege that Google actually knew it received or concealed funds stolen from May.

Lastly, Google contends that May has failed to adequately plead criminal intent. ECF 39 at 21. The Court agrees with Google because May does not plead that Google received and/or retained funds from May by "careful planning and deliberation," which is required for violating Penal Code § 496. *See Siry Investment, L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 362 (2022). While May pled that Google implements a "no refund" policy for its gift card sales, and "discourages victims from contacting it" by falsely telling them that the funds have been spent and "there is nothing Google can do," May does not plead Google deliberately retained May's money as required by Penal Code § 496. *See id.*; ECF 1, ¶¶ 67-78.

For the above reasons, the Court finds that May has not adequately pled a Penal Code § 496 claim. Thus, the Court GRANTS Google's motion to dismiss May's claims pursuant Penal Code § 496 WITH LEAVE TO AMEND.

### 5. Conversion (Sixth Cause of Action)

Under California law "[c]onversion is the wrongful exercise of dominion over the property of another." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010). The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. *Id.* The alleged converter must have assumed control over the property or applied the property to his own

use. *Id.*

Google moves to dismiss May's conversion claim on two grounds. First, Google argues that May has failed to plead that she had ownership right to possess the funds once she relinquished them to purchase Google's gift cards. ECF 39 at 22. In response, May argues that the purchase was the result of fraud by third-party scammers who induced Plaintiff to purchase the Google Play gift cards. ECF 45 at 14. The Court finds May's argument unpersuasive to the extent that the conversion claim is based on false pretenses induced by scammers. In the CAC, May conclusively pleads that she had the right to possess the funds used to purchase the Google Play gift cards "[a]t all relevant times." ECF 1, ¶179. But when May purchased the Google Play gift cards, her possession right to the funds was exchanged for possession right to the credits in the Google Play gift cards. In any event, Google did not retain the ownership right of the economic value of the funds when May relinquished it to purchase gift cards—at that point, May still had possession of the credits in Google Play gift cards and could freely spend them on the Google Play Store. *See Snapkeys, Ltd. v. Google LLC*, 539 F. Supp. 3d 1040, 1056 (N.D. Cal. 2021) (finding no genuine issue of material fact on the issue of retained ownership or a right to possession when the plaintiff gave Google his smartwatch for promotion purposes).

Second, Google argues that May has failed to plead that it committed a wrongful act which typically involves misappropriating, commingling, or misapplying the funds for the benefit of others. *Id.* (citing *LA Tech & Consulting, LLC v. Am. Express Co.*, 2023 WL 8166780, at *1 (9th Cir. Nov. 24, 2023)). In response, May argues that a wrongful act is not limited to those enumerated in *LA Tech*, and May pleads other wrongful acts—Google wrongfully refused to issue a refund and retained funds belonging to May—in the CAC. ECF 45 at 15; ECF 1, ¶¶181-82.

The Court finds May has failed to adequately plead that Google committed a wrongful act. In support of the conversion claim, May pleads: 1) May purchased the Google Play gift cards under false pretenses; 2) Google denied May's request to refund the Google Play gift cards; 3) Google

30

knowingly and intentionally retained commissions on all purchases made with May's Google Play gift cards; and 4) Google possesses other means and technology to determine which Google Play gift cards have been redeemed by scammers, the identity of the Google Accounts involved in Google Play gift card scams, and the identity of the victims. ECF 1, ¶¶ 178-85. But May has failed to allege how Google wrongfully asserted disposition of property rights over May's funds in the Google Play gift cards or that Google had a duty to investigate, identify, and refund the alleged scam. *See Oakdale Village Group v. Fong*, 43 Cal. App. 4th 539, 549 (1996) (finding a bona fide purchaser from a fraudulent possessor not liable for conversion).

Thus, Google's motion to dismiss May's conversion claim is GRANTED WITH LEAVE TO AMEND.

### 6. Declaratory Judgment (Seventh Cause of Action)

Under the Declaratory Judgment Act, 28 U.S.C. § 2201, May seeks declaratory judgments with respect to her claims that Google engaged in misrepresentation, that Google is not liable for third-party misconduct, and that Google included an unconscionable and/or unenforceable provision in its disclaimer language. CAC ¶¶ 186-93. In the motion to dismiss, Google argues that the Court should dismiss May's declaratory judgment claim because she "has not stated an underlying cause of action" as the claim should fall with the other claims. As discussed above, the Court finds that May has failed to sufficiently allege any viable cause of action. Thus, the Court GRANTS Defendants' motion to dismiss May's claim for declaratory judgment WITH LEAVE TO AMEND. *See Surf & Sand, LLC. v. City of Capitola*, 2008 WL 2225684, at *2 n.5 (N.D. Cal. May 28, 2008), *aff'd sub nom. Surf & Sand, LLC v. City of Capitola*, 377 Fed. Appx. 662 (9th Cir. 2010) (finding claim for declaratory relief "rises or falls" with other claims).

//

//

//

United States District Court
Northern District of California

## V.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Google's motion to dismiss for failure to comply with Rule 9(b) is DENIED;

(2) Google's motion to dismiss based on Limitation of Liability Bar is GRANTED WITH LEAVE TO AMEND;

(3) Google's motion to dismiss based on group pleading is DENIED;

(4) Google's motion to strike May's class allegations that are time-barred is GRANTED WITH LEAVE TO AMEND in line with the discussion above;

(5) Google's motion to dismiss May's claim No.1 for unfair practices in violation of the UCL is GRANTED WITH LEAVE TO AMEND;

(6) Google's motion to dismiss May's claim No. 2 for unlawful practices in violation of the UCL is GRANTED WITH LEAVE TO AMEND;

(7) Google's motion to dismiss May's claim No. 3 for unfair practices in violation of the CLRA is GRANTED WITH LEAVE TO AMEND;

(8) Google's motion to dismiss May's claim No. 4 for unlawful practice in violation of the CLRA is GRANTED WITH LEAVE TO AMEND;

(9) Google's motion to dismiss May's claim No.5 for receiving, retaining, withholding, or concealing stolen property in violation of Cal. Penal Code § 496 is GRANTED WITH LEAVE TO AMEND to the extent it seeks compensatory damages, attorneys' fees and costs and GRANTED WITHOUT LEAVE TO AMEND to the extent it seeks treble damages;

(10)    Google's motion to dismiss May's claim No. 6 for conversion is GRANTED WITH LEAVE TO AMEND; and

(11)    Google's motion to dismiss May's claim No. 7 for declaratory judgment pursuant 28 U.S.C. §2201 is GRANTED WITH LEAVE TO AMEND.

Any amended complaint SHALL be filed within forty-five (45) of the date of this Order. Failure to meet the deadline to file an amended complaint or failure to cure the deficiencies identified on the record or in this Order will result in a dismissal of the deficient claims with prejudice. Leave to amend is limited to the defects addressed in this Order, and Plaintiffs may not add parties or claims without prior leave of the Court.

Dated: November 4, 2024

BETH LABSON FREEMAN

United States District Judge