ANTHONY F. FATA (*pro hac vice*)
SARAH E. FLOHR (*pro hac vice*)
KIRBY MCINERNEY LLP
211 West Wacker Drive, Suite 550
Chicago, Illinois 60606
Telephone: 312-767-5180
afata@kmllp.com
sflohr@kmllp.com

*Attorneys for Plaintiff and the Putative Class*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDY MAY, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC, GOOGLE ARIZONA LLC, GOOGLE PAYMENT CORP., and DOES 1 Through 10, Inclusive,<br><br>Defendants. | Case No. 5:24-cv-01314-BLF<br><br>Hon. Beth Labson Freeman<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff JUDY MAY ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this First Amended Class Action Complaint ("Complaint") against Defendants GOOGLE LLC, GOOGLE ARIZONA LLC, and GOOGLE PAYMENT CORP. (collectively, "Google") and DOES 1 through 10 (collectively, with Google, "Defendants"). The following allegations are based upon personal knowledge as to Plaintiff's own facts, upon investigation by Plaintiff's counsel, and upon information and belief where facts are solely in the possession of Defendants.

## NATURE OF THE CASE

1.      This case arises from gift card scams utilizing Google Play gift cards.

2.      For nearly a decade, Google has knowingly kept millions of dollars in stolen money from victims of gift card scams who purchased Google Play gift cards. Google has done so despite its ability to track gift card scams and the fact that some of the victims of the theft, described herein as the "Contact Subclass," have contacted Google directly and provided Google with the information necessary to confirm that the funds were scammed.

3.      Google's practice of knowingly keeping stolen funds is, standing alone, unfair. It is also, standing alone, unlawful.

4.      Google also employs a number of practices designed to perpetuate the theft at issue – a common gift card scam well known to Google – and to make it easier for Google to keep the stolen funds for itself. Those practices alone, and particularly when taken together, are unfair and unlawful.

5.      Google plays a direct and vital role in the gift card scams by allowing gift cards, which it knows were involved in fraud, to be redeemed and spent on digital currency and/or digital products which scammers can resell for currency.

6.      Google intentionally conceals from gift card scam victims, through a deliberate policy of misrepresentation and misleading omission, that it knowingly retains control of the full amount associated with the scammed gift cards after the gift cards are redeemed and for at least 15 days after any purchase.

7.    Google profits directly from the gift card scams in two ways. First, Google deposits a percentage of the stolen money into Google Play Developer accounts, while unfairly and unlawfully retaining the remainder of the stolen money as its own commission of approximately 15%-30% of the face value of the gift card. Google retains these commissions despite actual knowledge that the specific gift cards were purchased as the result of fraud. Second, Google denies redemption of the scammed gift cards or withholds payments for purchases made with the scammed gift cards from Google Play Developers. On information and belief, when Google thwarts these scammers' efforts, Google retains up to 100% of the stolen money for itself.

8.    Google has failed to refund the money paid to Plaintiff and the Class for the stolen gift cards. Instead, Google deliberately retains up to 100% of the stolen money despite having knowledge that the gift cards were purchased as the result of gift card scams.

## **PARTIES**

9.    Plaintiff Judy May is a resident and citizen of Brownsville, Indiana. On April 1 and 2, 2021, Plaintiff was scammed into purchasing $1,000.00 in Google Play gift cards. On April 3, 2021, Plaintiff reported the scam to Google. Google informed Plaintiff that it would not refund the money she spent on the gift cards and that there was nothing it could do. Plaintiff followed up with Google consistently from April 3, 2010 through April 8, 2024. On April 10, 2024, Google reiterated that there was nothing it could do for her. This was not true. Google did not inform Plaintiff that it still had the ability to control the funds because they were still in its (or soon would be in its) possession and had not yet been dispersed to any Google Play Developers.

10.    Defendant Google LLC is a business incorporated under the laws of the State of Delaware with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google LLC designs its products in California, and its marketing efforts emanate from California. Defendant Google LLC is a citizen of the State of California.

11.    Defendant Google Arizona LLC is a business incorporated under the laws of the State of Arizona with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043. Defendant Google Arizona LLC is a citizen of the State of California.

12.     Defendant Google Payment Corp. is a Delaware corporation with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043. Defendant Google Payment Corp. is a citizen of the State of California.

13.     The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by such fictitious names. Each of the Defendants designated herein as DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the Defendants designated herein as DOES when such identities become known.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because: (1) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest or costs; and (2) there is minimal diversity because at least one Plaintiff and Defendants are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a).

15.     This Court may exercise jurisdiction over Defendants because Google is a citizen of this District, maintains its principal place of business in this District, has continuous and systematic contacts with this District, does substantial business in and within this District, receives substantial revenues from marketing, distribution, and sales of Google Play gift cards in this District, and engages in unlawful practices in this District as described in this Complaint, so as to subject itself to the personal jurisdiction of this District, and thus rendering the exercise of jurisdiction by this Court proper and necessary.

16.     Venue is proper in this judicial District pursuant to 28 U.S.C. §1391(b) because Google is headquartered in this District, advertises in this District, receives substantial revenues and profits from the sale of Google Play gift cards which it directs into the stream of commerce in this District. As such, a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District.

17.     Intradistrict Assignment (L.R. 3-2(c) and (e) and 3-5(b)): This action arises in Santa Clara County, in that a substantial part of the events which give rise to the claims asserted herein occurred in Santa Clara County. Pursuant to L.R. 3-2(e), all civil actions that arise in Santa Clara County shall be assigned to the San Jose Division.

## FACTUAL ALLEGATIONS

**Overview of the Google Play Ecosystem**

18.     Google exclusively owns and operates online platforms including the Google Play Store. Consumers who access the Google Play Store can purchase and download digital applications for mobile devices ("apps") or digital media (such as songs, movies, and television shows).

19.     The Google Play Store hosts millions of apps that consumers purchase or download directly from the Google Play Store. Google separates the apps available on the Google Play Store into different categories, including various types of free apps and paid apps.[1] In addition, certain apps allow consumers to buy special merchandise for that app through "in-app purchases."

**Google Play Gift Cards**

20.     Google Play gift cards (along with credit cards, debit cards, and PayPal) are one form of payment that may be used in the Google Play ecosystem to purchase apps or to make in-app purchases.

21.     Defendant Google Arizona LLC issues the Google Play gift cards.[2] Google sells Google Play gift cards to consumers through retailers like grocery stores and convenience stores.

22.     Google sells gift cards for the amount shown on the face of the gift card (or an amount selected by the consumer within the range reflected on the face of the card), and the amount of stored value activated on the card is equal to the amount in dollars paid by the consumer.

---

[1] *See Google Play Commerce – Monetization Options*, GOOGLE PLAY ANDROID DEVELOPER, available at https://developer.android.com/distribute/best-practices/earn/monetization-options (last visited Dec. 4, 2024).

[2] *See Google Play Gift Card and Prepaid Play Balance Terms of Service*, GOOGLE (May 1, 2019), available at https://play.google.com/intl/en_us/about/card-terms/ (last visited Dec. 4, 2024) (attached to this Complaint as Exhibit A).

23.     Google Play gift cards are activated at the time of purchase. After activation, Google Play gift cards may only be redeemed and used in the Google Play system for the amount paid for the card. Each Google Play gift card has a unique redemption code on the back of the card.

24.     Prior to purchase and activation, the gift cards have no value. That is, the value stored on gift cards sitting on a display rack is zero or dormant until a consumer takes the gift cards to the retailer's register and purchases them.

25.     At the point of purchase, the retailer activates the Google Play gift card through electronic communications with the integrator. The dollars paid for the card become available for redemption into a Google Account. Unless properly activated, a Google Play gift card cannot be redeemed.

26.     Through point-of-sale activation data, Google knows the moment a particular Google Play gift card is purchased and the stored value that is activated. It also knows the retail location at which the card was purchased and the redemption of other cards purchased at that location at or around the same time as the card at issue.

27.     After the Google Play gift card purchaser pays for the gift card at the point of sale, the retailer transfers the funds to an entity known as an "integrator," which then transfers the funds to Google. It typically takes several days or weeks for Google to receive the funds that a consumer paid for a gift card.

**Google Play Gift Card Terms and Conditions**

28.     The packaging for Google Play gift cards contains minimal terms and conditions.[3] For example, the packaging visible to consumers prior to purchase provides:

> **Terms and Conditions:** See play.google.com/us-card-terms for full terms. Must be 13+ years of age, US resident. Google Play card is issued by Google Arizona LLC ("GAZ"). Requires Google Payments account and Internet access to redeem. Redeemed balance is maintained by GAZ's affiliate, Google Payment Corp. ("GPC"), in your Google Payments account. Usable for purchases of eligible items on Google Play only. Not useable for hardware and certain subscriptions. Other limits may apply. No fees or expiration dates. Except as required by law, card is not redeemable for cash or other cards; not reloadable or refundable; cannot be combined with other non-Google Play balances in your Google Payments account,

---

[3] Google occasionally changes the language on the Google Play gift cards and the cards' packaging, but the terms on all Google Play gift cards and packaging are substantially similar.

resold, exchanged or transferred for value. User responsible for loss of card. For assistance or to view your Google Play card balance, visit support.google.com/googleplay/go/cardhelp. To speak to customer care call us at 1-855-466-4438.

29.     This web address on the back of the Google Play gift card packaging directs users to the full terms and conditions for Google Play gift cards (the "Online Terms and Conditions"). The Online Terms and Conditions, which apply to Google Play gift cards and their related codes (together, "Credits") provide, *inter alia*, that:

> **Limitations**. The Gift Card or Credit may be used for purchases of eligible items on Google Play only. Limits may apply to redemption and use. Items ineligible for purchase using Gift Card or Credit include certain items in the "Devices" section of Google Play (e.g., phones, tablets and related device accessories) . . . . The Gift Card or Credit is not redeemable for cash or other cards, is not reloadable or refundable, cannot be combined by you with other non-Google Play balances in your Google Payments account, and cannot be resold, exchanged or transferred for value, except as required by law. . . .

*     *     *

> **Fraud**. [Google is] not responsible if a Gift Card or Credit is lost, stolen, destroyed or used without your permission. [Google] will have the right to close customer accounts and bill alternative forms of payment if a fraudulently obtained Gift Card or Credit is redeemed and/or used to make purchases on Google Play.

*     *     *

> **General Terms**. . . . When you purchase, receive or redeem a Gift Card or Credit, you agree that the laws of the State of California apply, without regard to principles of conflict of laws, and that such laws will govern these Gift Card and Credit terms and conditions.[4]

30.     As set forth in Paragraph 29 above, in the "Fraud" section of the terms and conditions, Google retains the contractual right to "close customer accounts and bill alternative forms of payment if a fraudulently obtained Gift Card or Credit is redeemed and/or used to make purchases on Google Play." Therefore, Google has the ability, and right, to refund scam victims, charge the scammers "alternative forms of payment," and pay the Google Play Developer.

---

[4] *See Google Play Gift Card and Prepaid Play Balance Terms of Service*, *supra* n. 2.

**Google Account Creation**

31.    Before a user, or a scammer, can redeem Google Play gift cards and purchase digital content from the Google Play Store, they must first create and register an account with Google, called a "Google Account."[5] When creating a Google Account, users must provide personal information, including their name, birthdate, gender identification, and a recovery email address.

32.    Google requires that all Google Accounts be verified with the telephone number or the email address associated with the Google Account.[6]

33.    When users create Google Accounts, Google captures certain data not provided, including the users' IP address, location, and other information concerning the users' locations.[7]

34.    As alleged in Paragraphs 87 – 90 below, the data Google collects when a Google Account is created may be used in its algorithms for detecting gift card scams.

35.    As alleged in Paragraph 41 below, Google blocks gift cards purchased in the U.S. from being redeemed to a Google Account based in another country.

**Redeeming Google Play Gift Cards**

36.    Google Play gift cards are one form of payment for Google Play digital content.

37.    Google Play gift cards may only be redeemed onto a Google Account. There is no way, for example, to share the gift card directly with the Google Play Developer. As noted in Paragraphs 52 – 54 below, Google serves as the agent for the Google Play Developer.

38.    Users redeem Google Play gift cards by logging into their Google Account and entering the redemption code on the back of the card. The stored value on the Google Play gift card is then transferred to the consumer's Google Account and is immediately available to make purchases in the Google Play Store, assuming the Google Account is not frozen or flagged based on suspicions of being connected to frauds or scams.

---

[5] *See Google Account*, GOOGLE, available at https://www.google.com/account/about/ (last visited Dec. 4, 2024).

[6] *Verify Your Account – Google Account Help*, GOOGLE, available at https://support.google.com/accounts/answer/114129 (last visited Dec. 4, 2024).

[7] *See Privacy Policy*, GOOGLE, available at https://policies.google.com/privacy (last visited Dec. 4, 2024).

39.    At the time of redemption, funds equal to the redeemed stored value are transferred from Defendant Google Arizona LLC to Defendant Google Payment Corp.[8]

40.    When a Google Play gift card is redeemed, all of the stored value on the card is transferred to the redeemer's Google Account, and the card itself once again has no stored value.

41.    Google actively tracks redemption codes and serial numbers of Google Play gift cards. When a Google Play gift card is redeemed, Google knows the identity of that card and the identity of the Google Account that was used to redeem it. Google only allows Google Play gift cards to be redeemed in the same country where the cards were purchased.[9]

42.    With respect to purchases with stored value from gift cards, Google reserves "the right to close customer accounts and bill alternative forms of payment if a fraudulently obtained Gift Card or Credit is redeemed and/or used to make purchases on Google Play."[10]

43.    Google has the ability to suspend and/or terminate Google Accounts. By doing so any value held in those accounts is frozen and retained by Google. Google also reserves the right to disable a customer's access to their Google Account without issuing a refund to the customer.[11] Google may restrict access to a Google Account upon the detection of suspicious activity in connection with that account.[12]

44.    When a Google Play gift card is redeemed into a Google Account, Google has actual knowledge of the following: (1) with respect to the redeeming Google Account, when it was created, the user's information, and the IP address location or country in which it was created, and that Google account's transaction history; (2) with respect to the gift card prior to redemption, the precise location in and time at which the gift card was purchased and other gift cards that were

---

[8] *Google Play Gift Card and Prepaid Play Balance Terms of Service*, *supra* n. 2.

[9] *Id.*

[10] *See id*.

[11] *Google Play Terms of Service*, Google Play, (Mar. 15, 2023), available at https://play.google.com/about/play-terms/index.html (last visited Dec. 4, 2024).

[12] *Google Pay/Google Payments Additional Terms of Service (U.S.)*, Google (Apr. 5, 2021), available at https://payments.google.com/payments/apissecure/get_legal_document?ldo=0&ldt=buyertos&ldr=us (last visited Dec. 3, 2024).

purchased at that location at that time; (3) <u>with respect to the redemption</u>, the precise moment of redemption, the IP address and location of the device used to make the redemption, and all of the redemption codes and serial numbers for the cards being redeemed into the Google account at or around the same time; and (4) <u>the amount of time</u> between when the gift card was purchased and when it was redeemed into the Google Account.

45.    In its Online Terms of Service for Google Play gift cards, Google reserves the right to terminate a Google Account upon determining that a fraudulently obtained gift card was redeemed onto that Account and/or used by that Account to make purchases.[13]

46.    As alleged in Paragraph 79 below, Google has algorithms and other systems in place to detect gift card redemptions and Google Play purchases that are, or are highly likely, associated with fraud or scams.

47.    Google waits two hours after a consumer purchases an app or game from the Google Play Store before charging the Google Account; this allows buyers to cancel purchases.

48.    As alleged in Paragraph 56 below, Google does not pay the seller of the digital content until the 15th day of the month following the month of purchase. Accordingly, the shortest amount of time it takes Google to pay digital content sellers is at least 15 days, and the longest amount of time is several weeks. Additionally, Google can contractually hold and refuse to issue funds for as long as needed to dispel suspicions of fraud.

**Google Play Purchases and Google Play Developers**

49.    Stored value that is redeemed from gift cards onto a Google Account may be used to make purchases of Google Play digital products.

50.    When a purchase is made using stored value from a Google Play gift card, Google has actual knowledge of the following: (1) <u>with respect to the redeeming Google Account</u>, when it was created, the user's information, and the IP address location or country in which it was created, and that Google account's transaction history; (2) <u>with respect to the gift card prior to redemption</u>, the precise location in and time at which the gift card was purchased and other gift

---

[13] *Google Play Gift Card and Prepaid Play Balance Terms of Service*, *supra* n. 2.

cards that were purchased at that location at that time; (3) <u>with respect to the redemption</u>, the precise moment of redemption, the IP address and location of the device used to make the redemption, and all of the redemption codes and serial numbers for the cards being redeemed into the Google account at or around the same time; (4) <u>the amount of time</u> between when the gift card was purchased and when it was redeemed into the Google Account; and (5) <u>with respect to the app or in-app purchase</u>, the precise location of the device through which purchases are being made, the item being purchased, and the amount of time between the earlier gift card purchase and the purchase of Google Play digital content.

51.    Individuals and companies who develop apps for distribution on the Google Play Store are known as "Google Play Developers." Google Play Developers are required to create and register a Google Account, enter into the Google Play Developer Distribution Agreement, and pay a $25 registration fee.[14] Further, Google may request that Google Play Developers provide Google with a valid government ID and a credit card under the developer's legal name.[15]

52.    If Google Play Developers want to distribute an app that charges a fee for download and/or has in-app purchases, they can use Google Play's billing system,[16] which requires the Google Play Developer to provide Google with the developer's bank account information, physical address, legal name, and contact information.[17] Google Play Developers appoint Google as their "agent" relative to their apps made available on the Google Play Store.[18] When a purchase is made

---

[14] *See How to Use Play Console – Play Console Help*, GOOGLE, available at https://support.google.com/googleplay/android-developer/answer/6112435 (last visited Dec. 4, 2024).

[15] *See id.*

[16] On information and belief, use of Google Play Store's billing system was mandatory up to a certain date known to Google.

[17] *Google Play Developer Distribution Agreement*, GOOGLE, (Feb. 5, 2024), available at https://play.google/developer-distribution-agreement.html (last visited Dec. 4, 2024); *Payments – Play Console Help*, GOOGLE, available at https://support.google.com/googleplay/android-developer/answer/9858738 (last visited Dec. 4, 2024); *Create a Payments Profile – Google Payments Center Help*, GOOGLE, available at https://support.google.com/paymentscenter/answer/7161426 (last visited Dec. 4, 2024).

[18] *See Google Play Developer Distribution Agreement, supra* n. 17.

10

on the Google Play Store, the customer enters into a separate sales contract with the Google Play Developer, *i.e.*, the seller of the product available for purchase for whom Google serves as agent.[19]

53.    Because Google is acting as the "agent" for the Google Play Developer with respect to payment for digital content sales, any knowledge Google (the agent) has in connection with gift card scams generally or a particular gift card redemption into a Google Account is imputed to the developer (the principal).

54.    Because Google is acting as the "agent" for the Google Play Developer, any rights Google (the agent) has vis-à-vis Google Account holders—including the right to suspend accounts and purchases and bill alternative forms of payment—is imputed to the developer (the principal).

55.    Google pays Google Play Developers after a consumer purchases an app from the Google Play Store, makes an in-app purchase, or pays a subscription to an app downloaded from the Google Play Store. Google makes all payments to Google Play Developers electronically.[20]

56.    Google does not pay Google Play Developers immediately after a consumer completes a transaction. Instead, pursuant to its payment policy, Google waits until at least the 15th day of the month following the month in which the purchase occurred.[21] For example, if a purchase is made on April 1, the Google Play Developer will not be paid until at least May 15. Also, Google will not initiate this payment unless the Google Play Developer meets the minimum payment threshold for that period.[22] Therefore, there is always a delay of at least 15 days, and usually more, between the time when a consumer makes a purchase in the Google Play Store and the time when Google pays the Google Play Developer.

57.    As alleged in Paragraph 103 below, Google reserves the right to withhold payments from Google Play Developers if in-app purchases were the product of fraud or a scam.

---

[19] *Google Play Terms of Service*, *supra* n. 11.

[20] *See Merchant Payout Schedule – Google Payments Center Help*, Google, available at https://support.google.com/paymentscenter/answer/7159355 (last visited Dec. 4, 2024); *Order Processing & Payouts – Play Console Help*, Google, available at https://support.google.com/googleplay/android-developer/answer/137997 (last visited Dec. 4, 2024).

[21] *See id.*

[22] *See id.*

**Google's Commission from Gift Card Sales**

58.    Google receives a commission (which it calls a "service fee") on the sale of all purchased apps, purchases made within apps ("in-app purchases"), and paid subscriptions to apps made on the Google Play Store, including those made with Google Play gift cards. The commission varies between 15% and 30% of the product's purchase price. [23]

59.    Google keeps for itself 15%-30% of all Google Play purchases that are made using Google Play gift cards that were procured through scams.

60.    Upon information and belief, when a Google Play gift card is not redeemed, or the balance of that gift card is redeemed to a Google Account but never used for a purchase, Google retains the full amount paid for the gift card. This belief is based on the following information: (1) Google states that victims of gift card scams cannot be refunded; (2) Google has not published information about how victims can redeem frozen funds; and (3) as alleged below in Paragraph 93 below, Google denied refund requests from the purchasers of gift cards after refusing redemption. In some instances, Google also retains 100% of the gift card value and, subsequently, the gift card funds, when it confirms these funds were spent in the Google Play Store using fraudulently obtained gift cards.

**Google Play Gift Card Scams**

61.    Gift card scams are prevalent. From January 2018 to September 2021 alone, victims of gift card scams reported losses to the Federal Trade Commission ("FTC") in excess of $433.5 million, with the dollar amounts increasing significantly each year. [24] In 2023, consumers reported $217 million in gift scam losses to the FTC. [25]

---

[23]    *See Service Fees – Play Console Help*, GOOGLE, available at https://support.google.com/googleplay/android-developer/answer/112622 (last visited Nov. 22, 2024).

[24]    Emma Fletcher, *Scammers Prefer Gift Cards, But Not Just Any Card Will Do*, FED. TRADE COMM'N (Dec. 8, 2021), available at https://www.ftc.gov/news-events/data-visualizations/data-spotlight/2021/12/scammers-prefer-gift-cards-not-just-any-card-will-do.

[25]    *Consumer Sentinel Network Data Book 2023*, FED. TRADE COMM'N, (Feb. 2024), available at https://www.ftc.gov/system/files/ftc_gov/pdf/CSN-Annual-Data-Book-2023.pdf.

62.     In the first nine months of 2021, the period in which Plaintiff May was scammed, $147.8 million in gift card scam losses were reported to the FTC, far exceeding the $115.1 million gift card scam losses reported across the entirety of 2020.[26] Given these figures represent only the fraction of victims who know they can report scams to the FTC and decide to complete a detailed online FTC form asking for their personal information, it can be reasonably inferred that these reported losses reflect only a small portion of the actual gift card scam losses over that period. Many victims do not report gift card fraud to the gift card issuer, the FTC, or any law enforcement entity.[27]

63.     Google Play gift card scams reflect approximately $17 million of the $147.8 million in gift card scam losses reported to the FTC between January and September 2021.[28] The median individual reported losses from January 1, 2021 through September 30, 2021 for victims of gift card scams using Google Play was approximately $500 and approximately 6% of victims reported a loss of $5,000 or more in Google Play gift cards.[29]

64.     If only 10% of scam losses were reported to the FTC, a generous estimate considering less than 5% of mass-market consumer fraud victims report the fraud to the FTC,[30] the total amount of money stolen through Google Play gift card scams exceeded $220 million in 2021 alone. Google's commission on this $220 million stolen through Google Play gift card scams would equal between $33 million and $66 million in ill-gotten proceeds to Google in 2021. This same formula applied to the reported losses in 2023 would result in a loss by consumers of over

---

[26] Fletcher, *Scammers Prefer Gift Cards, But Not Just Any Card Will Do, supra* n. 24.

[27] *See, e.g.*, Tamara Lytle, *Gift Cards are for Gifts – Not Grifters*, AARP (Nov. 7, 2019), available at https://www.aarp.org/money/scams-fraud/info-2019/prevent-gift-card-fraud.html (director of fraud victim support at the American Association for Retired Persons, or AARP, says that victims often do not contact law enforcement because "[t]hey are embarrassed and ashamed and they don't think it does any good").

[28] Fletcher, *Scammers Prefer Gift Cards, But Not Just Any Card Will Do, supra* note 24.

[29] *Id.*

[30] Keith B. Anderson, *To Whom Do Victims of Mass-Market Consumer Fraud Complain?* at 1 (May 2021), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3852323 (study showed that only 4.8% of mass-market consumer fraud victims complained to the Better Business Bureau ("BBB") or a government entity).

$248 million that year in Google Play gift card scams with Google retaining commissions between $37 million and $74 million in 2023.

65.     Scammers demand payment in gift cards because "[g]ift cards are essentially cash, meaning anyone who has the code can spend the amount on the card."[31] From 2018 through at least 2021, gift cards were the most frequently reported vehicle for fraud. During this period, 26.6% of all fraud victims who reported losses to the FTC indicated that their money was stolen using gift cards or reloadable cards.[32] According to one digital security service, Google Play gift cards are "uniquely valuable" to scammers in comparison to other gift cards because they are easier to convert into products that can be exchanged back into cash.[33]

66.     Google is aware of the widespread nature of Google Play gift card scams and has been for years. Google has received notice from victims of Google Play gift card scams and requests for information from law enforcement agencies related to Google Play gift card scams for years, beginning on a date known only to Google. The FTC had identified Google Play gift cards as an item requested by scammers more than two years before Plaintiff May fell victim to a Google Play gift card scam in 2021.[34]

67.     Google knows precisely how its Google Play gift cards are used by scammers to steal money from their victims.

68.     As Google acknowledges on its website, the first step in the typical Google Play gift card scam is to convince the victim "to buy a Google Play gift card and share the code so that you can pay for something outside Google Play." Google describes the typical scams in formulaic terms:

> A scammer calls and pretends to be from a government agency (like the IRS in the US. Other countries have agencies with different names). The scammer says that

---

[31] *BBB Study: Growth of Gift Card Scams Causes Retailers to Innovate Solutions*, BETTER BUSINESS BUREAU (Nov. 16, 2023), available at https://www.bbb.org/article/investigations/29516-bbb-study-growth-of-gift-card-scams-causes-retailers-to-innovate-solutions.

[32] Fletcher, *Scammers Prefer Gift Cards, But Not Just Any Card Will Do, supra* note 24.

[33] Sofia Kaufman, *Types of Google Play Gift Card Scams and How to Report It*, AURA (Jan. 18, 2024), available at https://www.aura.com/learn/google-play-gift-card-scams.

[34] Cristina Miranda, *Scammers Demand Gift Cards*, FED. TRADE COMM'N (Oct. 16, 2018), available at https://consumer.ftc.gov/consumer-alerts/2018/10/scammers-demand-gift-cards.

you owe money for taxes, bail money, debt collection, and more. They tell you that to avoid arrest, or to prevent the seizure of physical items or your personal identification information (like your SSN in the US. Other countries use different names), you have to pay them with gift cards.

A scammer claims to be a family member in trouble, an attorney, or another representative of your family member. The scammer tells you that they need to be paid in gift cards in order to remedy the situation. They may deter you from attempts to contact the family member to verify the claim. Don't believe them. Never buy gift cards for them or provide them with any gift card codes.

These examples only cover some types of scams. Scammers constantly change the ways they trick people. If anyone asks you for a code, it could be a scam.[35]

69.     Upon information and belief, Google knows that scammers instill a sense of urgency in their victims. In the words of the FTC: "They will say to pay them right away or something terrible will happen."[36] As Google recognized in its description of the Google Play gift card scams, scammers want to prevent victims from consulting with others about the scammer's request.

70.     The theft of the victims' money occurs when victims purchase gift cards at the inducement of the scammer because the victims purchased the gift cards under false pretenses which were devised to trick the victims into parting with their money. Gift card scam victims have no independent intent or desire to purchase gift cards, nor do they intend to use them for recreational purposes in the Google Play Store.

71.     If scammers successfully convince a victim to make an initial purchase of Google Play gift cards and share the redemption codes, the scammers then typically demand that the victim purchase additional Google Play gift cards and share the additional redemption codes.

72.     Once scammers obtain the redemption codes for the Google Play gift cards that were purchased by victims, the next step in obtaining money from the scams is redeeming the Google Play gift cards and transferring the stored value from the gift cards onto a Google Account.

---

[35] *See What to Do if You're a Victim of a Google Play Gift Card Scam – Google Play Help*, GOOGLE, available at https://support.google.com/googleplay/answer/9057338 (last visited Dec. 4, 2024) (attached to this Complaint as Exhibit B); *Avoiding and Reporting Gift Card Scams*, FED. TRADE COMM'N, available at https://www.consumer.ftc.gov/articles/paying-scammers-gift-cards (last visited Dec. 4, 2024).

[36] *Avoiding and Reporting Gift Card Scams*, *supra* note 35.

FIRST AMENDED CLASS ACTION COMPLAINT

Scammers usually redeem the stored value onto their own scammer-controlled Google Accounts to make in-app purchases.

73.    Typically, the Google Account that redeemed the Google Play gift card, which is controlled by the scammer, will spend the stored value by purchasing digital content like apps or making in-app purchases.[37] Upon information and belief, scammers then monetize the funds by selling the digital items purchased on third-party markets.

74.    Google knows that the stored value in Google Play gift card scams is used to make purchases immediately after the gift card is redeemed. As noted, at the time of the events at issue, Google's webpage stated: "Once you provide the codes to a scammer, they'll likely spend the funds on the card immediately."[38]

75.    When scammers redeem the gift cards into a Google Account, at the latest, the theft is complete. Victims are left with Google Play gift cards drained of any stored value.

76.    After providing Google Play gift card redemption codes to scammers, victims like Plaintiff May become targets for refund and recovery scams. Recovery scammers use information sold or traded by other scammers to identify victims who have previously paid a scammer. The recovery scammer then contacts the victim and claims that they can obtain a refund for the victim or recover the prize promised by the original scammer. To obtain the trust of the victim, recovery scammers present themselves as working on behalf of a government agency, consumer advocacy organization, or law firm. These recovery scammers profit by convincing victims that funds must be paid upfront before the recovery can occur or by requesting confidential personal information from the victim which they can use to steal their funds or identity. Gift cards are among recovery scammers' preferred means of payment.

---

[37] Alternatively, scammers can resell the redemption codes. On the rare occasions when this occurs, it is the buyer in the illicit transaction that redeems the code onto his or her Google Account. Due to the discounts and delays associated with resale markets and the counterparty risks, the latter method of monetizing stolen gift cards is the less profitable and by far less common way of obtaining money through Google Play gift card scams. In any event, Google's role remains the same even when the scammer resells the redemption code.

[38] *What to Do If You're a Victim of a Gift Card Scam – Google Play Help*, GOOGLE, available at https://support.google.com/googleplay/answer/9361829 (as of Feb. 28, 2021) (attached to this Complaint as Exhibit C). The quoted language remained on Google's webpage for gift card scam victims until revisions made in 2024.

**Google's Actual Knowledge of Gift Card Scams**

77.    Google is a highly sophisticated participant in the technology industry and actively monitors and tracks key information at each point in the Google Play gift card scam process from the time the Google Play gift card is sold through redemption and use.

78.    Google defines its role in the Google Play ecosystem to include "helping developers fight fraud."[39] Google uses automated models in its Google Play Store to detect apps and app content that violates Google's policies.[40]

79.    Google has built algorithms into the Google Play ecosystem that detect when a Google Play gift card is being redeemed or used by a scammer. Mrinalini Loew, head of Product Management for Google Play Commerce in April 2020, testified that Google Play "tr[ies] to build algorithms into [its] cart to better identify if a scammer is trying to use a gift card[.]"[41] Upon information and belief, Google's gift card fraud detection algorithms were developed as a result of Google's knowledge of how Google Play gift card scams operate and the extensive data Google has learned from past gift card scams. The information supporting this belief includes: (1) the public availability of information about how gift card scams operate; (2) Google's technological abilities; and (3) the vast amount of data available to Google regarding past scams.

80.    Google is not alone in developing and deploying algorithmic tools for detecting gift card scams. Like Google Play gift cards, Walmart gift cards are also frequently used by scammers. By 2018, Walmart implemented a technology called "Redemption," which deploys algorithms to detect gift card fraud. Based on its knowledge that scammers often live outside of the United States and work with associates inside the United States to redeem and spend Walmart gift cards, Walmart identified scammed cards using this technology and intercepted the funds during the

---

[39] *How Google Play Works: 2019 Google Play Public Policy*, GOOGLE PLAY, at 23, (attached to this Complaint as Exhibit D).

[40] *Enforcement Process – Play Console Help*, GOOGLE, https://support.google.com/googleplay/android-developer/answer/9899234 (last visited Dec. 3, 2024).

[41] Transcript of Proceedings at 3136:15-19, *In Re Google Play Store Antitrust Litig.*, No. 21 MD 02981 (N.D. Cal. Dec. 12, 2021), ECF 849 (hereinafter "Loew Transcript") (excerpt attached to this Complaint as Exhibit E).

1   laundering process. Walmart turned the intercepted funds over to law enforcement to be returned

2   to gift card scam victims.[42]

3        81.    Although Google has not announced its gift card fraud detection technology,

4   Google has announced other real-time fraud detection tools. According to an article published by

5   Aura, "Google developers [] work to improve gift card security features. One of the ways they do

6   this is by geo-restricting app store access."[43] Google's website describes the process of geo-

7   restricting Google Play Accounts. For example, "when you change your country or region, your

8   Google Play balance from your old country or region becomes unusable in your new country or

9   region."[44]

10        82.    Google describes its "Scam Detection on Phone" tool as a "powerful on-device AI

11   to notify you of a potential scam call happening in real-time by detecting conversation patterns

12   commonly associated with scams." Its Google Play Protect technology "analyzes behavioral

13   signals related to the use of sensitive permissions and interactions with other apps and services" to

14   provide users real-time alerts about dangerous apps based on their suspicious activity.[45] These real-

15   time detection tools benefit from the immense amount of data possessed by Google. Google asks

16   Google Play Developers to provide Google with data it can use "to detect suspicious behavior and

17   block some types of fraudulent transactions before they are completed."[46]

18        83.    Google's deployment of an algorithm-based tool to detect gift card fraud in real-

19   time is consistent with tools deployed by Google in other aspects of its business, including

20   Google's efforts to combat fraud on its advertising platforms. Google serves as an intermediary

21   between advertisers and web publishers. Advertisers pay Google to place their ads on websites and

22

23   <sub>_____</sub>

[42] *BBB Study: Growth of Gift Card Scams Causes Retailers to Innovate Solutions*, *supra* n. 31.

24   [43] Kaufman, *Types of Google Play Gift Card Scams and How to Report It*, *supra* n. 33.

25   [44] *How to Change Your Google Play Country*, GOOGLE PLAY HELP, available at https://support.google.com/googleplay/answer/7431675 (last accessed December 17, 2024).

26   [45] *Safer with Google: New Intelligent, Real-Time Protections on Android to Keep You Safe*,

27   GOOGLE SECURITY BLOG, (Nov. 13, 2024), available at https://security.googleblog.com/2024/11/new-real-time-protections-on-android.html.

28   [46] *Fight Fraud and Abuse – Developers*, GOOGLE, available at https://developer.android.com/google/play/billing/security (last visited Dec. 4, 2024).

1  Google pays publishers to display those ads. As alleged in *AdTrader, Inc. v. Google LLC*, Google's

2  agreements with advertisers and publishers generally required that payments for these

3  advertisements be made per click. However, Google is not obligated to receive or make payments

4  based on invalid traffic, clicks not reflective of genuine interest colloquially referred to as click

5  fraud or ad fraud. Google deployed automated filters to detect this invalid traffic. When invalid

6  traffic was detected during a billing cycle using this technology, Google reversed transactions

7  before billing to avoid paying the publisher and charging the advertisers for that invalid traffic.

8  Google's ability to detect invalid traffic in time to prevent payment to publishers based on that

9  invalid traffic is consistent with its use of algorithms to detect gift card fraud.[47]

10  84.     Google can and does refuse redemption of Google Play gift cards. Google has

11  required individuals seeking to redeem select gift cards to provide front and back images of the

12  gift card and a receipt for the gift card; and to identify the store and location where the gift card

13  was purchased. Google refuses to redeem these select gift cards if the gift card holder is unable to

14  complete this form.[48] Google's ability to suspend gift card redemption is supported by the FTC's

15  representation to the public that: "If the money is still on the card, Google can put a freeze on it."[49]

16  85.     Google's scam and fraud detection is such that it refuses redemption to some

17  Google Play gift card holders even after they have attempted to prove the legitimacy of their

18  purchase by providing Google with requested information and proof of purchase. For example,

19  one consumer, Glenn Ginoza, stated that he purchased a $100 Google Play gift card from a CVS

20  in Huntington Beach, California on November 24, 2020. When he attempted to redeem this gift

21  card, he was prompted to provide the information described above. He provided this information,

22  including his receipt establishing proof of purchase. Google still refused redemption, stating: "We

23  have noticed some inconsistencies with your account and the information you provided us; because

24

25  [47] Second Amended Complaint, *AdTrader, Inc. v. Google LLC*, No. 17 Civ. 07082 (BLF) (N.D.
26  Cal. Aug. 13, 2018), ECF 70; *see* Redacted Order Granting in Part and Denying in Part Plaintiffs'
    Motion for Class Certification at 2-3, *AdTrader, Inc. v. Google LLC*, No. 17 Civ. 07082 (BLF)
    (N.D. Cal. Mar. 24, 2020), ECF 288.

27  [48] These facts were alleged in *Meyers v. Alphabet, Inc.*, No. 21 Civ. 01767 (N.D. Cal.). This Court
    has taken judicial notice of the initial complaint in that case.

28  [49] *Avoiding and Reporting Gift Card Scams*, *supra* note 35.

1    of this we are unable to help you redeem these gift cards." Other gift card holders who attempted

2    to redeem their gift cards received similar denial messages from Google.[50]

3         86.    Google's admission of the existence of an algorithm to detect gift card scams and

4    the fact that even legitimate consumers have been denied redemption support a strong inference

5    that Google's algorithm provides it with actual notice of gift card scams in real-time, at the moment

6    the cards are redeemed. Indeed, the algorithm is so sensitive that even legitimate transactions are

7    alleged to have been caught in its dragnet.

8         87.    At the moment a scammer attempts to redeem a Google Play gift card, Google has

9    actual knowledge of the following facts:

10        a.   the retail store (and country) where the Google Play gift card was purchased;

11        b.   the date and time of purchase;

12        c.   the amount of value stored on the card;

13        d.   whether the Google Play gift card was purchased with other gift cards (and the amount

14             of value stored on those cards);

15        e.   the date and time of the redemption;

16        f.   the identity of the Google Account used to redeem the gift card;

17        g.   any prior indications of fraud associated with the redeeming Google Account;

18        h.   the contact information provided for that Google Account;

19        i.   the IP address and country location of the device used to create the Google Account;

20        j.   the date and time of the redeeming Google Account's creation;

21        k.   whether the Google Account has redeemed other gift cards;

22        l.   whether the Google Account has made any previous purchases;

23        m.   the amount of time that has elapsed between the Google Play gift card purchase and

24             the redemption;

25

26

27

28   ---

[50] Second Amended Class Action Complaint, *Ginoza v. Alphabet, Inc.*, No. 21 Civ. 01767, (C.D. Cal. filed May 3, 2022), ECF No. 60 (attached to this Complaint, as Exhibit F).

FIRST AMENDED CLASS ACTION COMPLAINT

n.  the IP address and location (and country) of the device used to process the redemption and whether it differs from the location (and country) in which the gift card was purchased; and

o.  whether the Google Account is attempting to redeem other gift cards at the same time, and the amount of those gift cards.

88.    At the moment a scammer makes a purchase using the funds redeemed from the Google Play gift card, Google has actual knowledge of the facts identified in Paragraph 87(a)-(o) above and, in addition, the following facts:

a.  the timing of the purchase;

b.  the digital product purchased and its cost;

c.  other digital products being purchased at the same time;

d.  the amount of time between the gift card purchase and the digital product purchase;

e.  the amount of time between the gift card redemption and the digital product purchase; and

f.  the identity of the Google Play Developer selling the product.

89.    Upon information and belief, Google incorporates the data points identified in Paragraphs 87 – 88 above into its algorithm. This belief is based on the following information: (1) Google has admitted that it has an algorithm in place; (2) Google's public facing statements concerning the information it collects from users of its Google Play ecosystem; (3) Google's right to suspend redemptions of gift cards that it suspects were involved in a fraud or scam and its enforcement of that right; (4) Google's right to block redemptions in another country of gift cards purchased in the U.S.; (5) the fact that these data points would be logical to include in such an algorithm; (6) the fact that Google at some point developed a fund with the purported purpose of reimbursing gift card scam victims; and (7) the fact that Google has the right to withhold payments for app or in-app purchases from Google Play Developers if it suspects fraud or scams.

90.    After the scammer makes the purchase using funds from the Google Play gift card, Google also knows of any subsequent activity relating to the Google Account in which the stolen gift card was redeemed, including any additional gift card redemptions or purchases.

91.     Google has an obligation under California law to confirm whether a Google Play gift card has been redeemed when contacted by the holder of that Google Play gift card. Cal. Civ. Code § 1749.5(b) requires that gift certificates sold in the state of California be "redeemable in cash for its cash value, or subject to replacement with a new gift certificate at no cost to the purchaser or holder" and that gift certificates with a cash value under $10 be redeemable in cash. Because Google has an obligation to redeem in cash or with a replacement gift card any stored value remaining on a gift card at the request of the holder, Google has an obligation to confirm whether value remains on the gift card when contacted by consumers seeking refunds, including scam victims.

**Google's Control of the Victim's Funds**

92.     After the scam victim pays the retailer, and the retailer pays the integrator, the integrator sends Google the money paid by gift card scam victims to purchase Google Play gift cards from retailers. Typically, this process takes days or weeks.

93.     When Google denies redemption of a gift card, Google does not refund the gift card purchaser or holder the amount paid for that gift card. For example, Mr. Ginoza contacted Google with proof of his Google Play gift card purchase after Google refused redemption of the gift card. Mr. Ginoza requested a refund, but Google denied this request. Other gift card holders and purchasers had similar experiences in which Google denied redemption and failed to refund the value of the gift card.[51]

94.     After a Google Play gift card is redeemed onto a Google Account, Google retains control over any redeemed value. The value of the gift card is merely transferred from Defendant Google Arizona LLC to Defendant Google Payment Corp.

95.     As alleged in Paragraphs 29 – 30 above, Google reserves the right to freeze Google Accounts that it suspects to have been involved in a gift card scam or fraud.

96.     Google reserves the right to delay, hold, cancel, or reverse processing of any transaction made by a Google Account in the Google Play Store if Defendant Google Payment

---

[51] Second Amended Class Action Complaint, *Ginoza v. Alphabet, Inc.*, *supra* note 50.

1  Corp. "in its sole discretion, believes that the transaction is invalid, suspicious, involves

2  misconduct or fraud," or violates any applicable law or Google policy.[52]

3      97.    Google retains possession of the value on a gift card after it is redeemed onto a

4  Google Account balance and used to make an in-app purchase. After a purchase is made in the

5  Google Play Store and Google receives the payment from the Google Account, Google does not

6  initiate payment to the Google Play Developer until at least the 15th of the month following the

7  month when the purchase occurred.

8      98.    Google retains control over the funds to be paid to Google Play Developers during

9  the interim period between the completion of the purchase and the payment to the Google Play

10  Developer. Google likewise within that timeframe retains the right to require alternative forms of

11  payment for digital purchases for Google Accounts suspected of fraud.

12      99.    Although Google is obligated to hold the amounts payable to Google Play

13  Developers in separate accounts from its general corporate funds, Google reserves the right to

14  withhold payments to Google Play Developers during this period. Google may withhold these

15  payments to Google Play Developers or reverse payments previously made if a consumer requests

16  a refund and/or Google believes the transaction was invalid, involved misconduct or fraud, or

17  otherwise violated applicable law or Google policies.[53]

18      100.   Google deducts refunds issued to customers from these payments to Google Play

19  Developers.[54] Google represents its ability to refund unauthorized purchases on Google Accounts

20  and requires that such unauthorized purchases be reported within 120 days.[55]

21

22

23

24

---

25  [52] *Google Pay/Google Payments Additional Terms of Service (U.S.), supra* n. 12.

26  [53] *Google Payments Terms of Service – Seller (US)*, GOOGLE (Mar. 27, 2023), available at
https://payments.google.com/payments/apissecure/u/0/get_legal_document?ldo=0&ldt=sellertos
&ldr=US (last visited Dec. 4, 2024).

27  [54] *Google Play Developer Distribution Agreement, supra* n. 17.

28  [55] *Learn about Google Play Refund Policies*, GOOGLE PLAY HELP, available at
https://support.google.com/googleplay/answer/2479637 (last visited Dec. 4, 2024).

23

101.    Google reserves the right to suspend or bar any Google Play Developer or app from the Google Play Store for violations of Google Play Store policies, including fraud.[56] Google further reserves the right to withhold payments due any Google Play Developer in the event that any product or portion of a product sold by that Google Play Developer is suspended or barred based on policy violations.[57] Google has suspended Google Play Developer accounts and withheld payments otherwise due to those accounts for fraudulent payments within their apps. For example, in August 2023, an individual identifying themselves as the owner of a Google Play Developer account posted on the Google Play Community forum operated by Google that their account had been terminated and payment due to them withheld.  According to this individual, Google had informed them that this termination occurred because Google confirmed "fraudulent payment activity" within the account, in violation of the Developer Distribution Agreement and other policies.[58]

102.    Google's webpage for Google Play Developers explains that in-app purchases may be "canceled, revoked, or charged back" including when a purchase is cancelled by Google. In at least some circumstances, where purchases are voided, previously purchased in-app items can be clawed back by the Google Play Developer.[59]

103.    Because Google does not pay Google Play Developers until, at the earliest, the 15th day of the month following the month of purchase, there is always a delay of at least fifteen days, between the time when a consumer makes a purchase in the Google Play Store and the time when Google pays the Google Play Developer. Google can withhold and claw back payments due Google Play Developers during this interim period following the purchase.

---

[56] *How Google Play Works*, at 31, *supra* n. 39; *Google Play Developer Distribution Agreement*, *supra* n. 17.

[57] *Google Play Developer Distribution Agreement*, *supra* n. 17; *see Merchant Payout Schedule*, *supra* n. 20.

[58] *My Developer Account is Removed Because of Fraudulent Payment Activity Within My Apps*, GOOGLE    PLAY    CONSOLE    HELP    (Aug.    4,    2023),    available    at https://support.google.com/googleplay/android-developer/thread/228796508/my-developer-account-is-removed-because-of-fraudulent-payment-activit%E2%80%A6 (last accessed Dec. 4, 2024).

[59] *Fight Fraud and Abuse, supra* n. 46.

104.     When Class members contact Google within this interim period between Google Play Store purchases made by the scammers and distribution to Google Play Developers, Google still has (or soon will have) the entirety of the stolen funds.

105.     If the scammer had immediately redeemed the Google Play gift cards purchased by Plaintiff May onto a Google Account upon receipt of the codes on April 2, 2021 and made in-app purchases with those funds, Google would not have paid any of those funds to the Google Play Developer until on or after May 15, 2021. Google retained the entirety of the funds for more than a month after Plaintiff May reported to Google that her gift card purchases had been induced by a scammer.

106.     The behavior described above is consistent with Google's alleged withholding of payments from third parties without refunding the victims of that suspicious activity in the context of its advertising platform. When Google's ad fraud filters detected invalid traffic after the close of the billing cycle, Google was obligated to pay corresponding debits to publishers and credits to advertisers on subsequent invoices. In *AdTrader, Inc. v. Google LLC*, plaintiffs alleged that Google charged advertisers for invalid clicks and failed to issue credits for those charges even as Google withheld payment to that publisher for those same clicks.[60]

107.     The former head of Google Play Commerce testified that Google maintains a fund for the purpose of reimbursing gift card scam victims.[61] As specifically alleged above, Google retains funds from scammers or suspected scammers that it does not refund to scam victims; Google retains funds paid for Google Play gift cards after denying their redemption; Google retains funds from suspended Google Accounts; and Google retains funds withheld from payments to suspended or barred Google Play Developers. Upon information and belief, Google uses these withheld funds to, at least in part, maintain this reimbursement fund.

**Google's Deliberate Policy of Concealment**

108.     As alleged in Paragraphs 87 – 91 above, Google has access to all of the data it needs to identify gift card scams in real time.

---

[60] *See* Second Amended Complaint, *AdTrader, Inc. v. Google LLC, supra* n. 47.

[61] Loew Transcript at 3136:15-19.

109.    As alleged in Paragraphs 79 – 89 above, Google has algorithms and systems in place to detect gift card scams in real time.

110.    As alleged in Paragraphs 103 – 105 above, Google is also aware of scams reported directly to it by gift card scam victims while it remains in (or soon will have) possession and control of the gift card funds.

111.    As alleged in Paragraphs 84 – 86 above, Google sometimes uses its systems to prevent redemption of gift cards that its systems indicate have been involved in a fraud or scam.

112.    As alleged in Paragraphs 95 – 101 above, Google uses its systems to block Google Play purchases and require other forms of payment if it suspects a fraud or a scam.

113.    As alleged in Paragraphs 102 – 105 above, Google reserves the right to withhold from Google Play Developers payment for purchases that it suspects were the product of a fraud or a scam.

114.    Google uniformly informs the public that, because scammers spend the funds immediately, there is nothing it can do to reimburse scam victims.

115.    Google uniformly, and pursuant to a scripted response, informs scam victims who contact it that their funds are gone and/or there is nothing it can do.

116.    When scam victims contact Google, it responds consistently with its policy and using a standardized protocol or script. Google requests and records victims' names and contact information and the redemption codes on the back of the Google Play gift cards. Google also maintains law enforcement and regulatory agency reports that it encourages victims to complete. Google then, and continues, to tell the scam victims that Google is unable to refund the stolen funds and conceals from them the fact that those funds are still in (or about to be in) Google's possession or control.

117.    Google's failure to refund and its pattern of formulaic responses is consistent with its treatment of customers in its peer-to-peer payment platform ("P2P"). The Consumer Financial Protection Bureau ("CFPB") found reasonable cause to determine that Google's failure to investigate unauthorized transfers made via its P2P payment platform posed risks to consumers. After consumers notified Google that transfers were unauthorized, Google refused to issue a

refund. In many cases, the CFPB found, Google told customers that no erroneous transfer had occurred but refused to provide customers with any explanation for how it reached that determination. "Generally, Google appears to have responded to all claims, disputes and consumer complaints by using language from a template regardless of the facts presented by the customer."[62] The CFPB determined that Google failed to advise consumers of what additional options or recourse was available to them and even failed to follow its own policy of capping consumer losses at $50 when Google was informed of unauthorized transactions within two business days.[63]

118.    The Online Terms of Service specifically state that Google is "not responsible if a Gift Card or Credit is lost, stolen, destroyed or used without your permission."

119.    Google maintains a webpage purporting to tell victims of Google Pay gift card scams "what you can do and need to know." On information and belief, this website is the first result seen by many victims seeking information about Google Play gift card scams using Google's search engine. This webpage states Google's no-refund policy and misleads gift card scam victims into believing that Google no longer controls their funds despite those funds likely still being in (or about to be in) Google's possession.[64]

120.    At or around the time at which Plaintiff May was scammed in 2021, the first heading on the webpage stated, "Get my money back." Underneath this heading, Google stated that "Google Play Gift Cards are not redeemable for cash, not reloadable and non-refundable, unless required by law," linked to the Online Terms and Service, and stated that "Any information that you can give will allow us to investigate and may help us prevent future scams."[65] Similarly, Google support representatives represented to Plaintiff May that the complaint was being escalated to specialized teams for further investigation on the backend. Google has subsequently removed

---

[62] Supervisory Designation Proceeding, *In re Google Payment Corp.*, File No. 2024-CFPB-SUP-0001 (Nov. 8, 2024), at 10.

[63] *Id.*

[64] *What to Do if You're a Victim of a Gift Card Scam, supra* n. 38.

[65] *Id.*

1  this "Get my money back" heading and moved the statement that Google Play gift cards are not

2  refundable and the link to the Online Terms of Service further down on the webpage.[66]

3    121.    Google encourages victims to report the scam to the FTC or law enforcement **before**

4  reporting it to Google despite Google's knowledge that a timely report to Google would permit

5  Google to refund victims' losses while it is still likely in possession, or about to be in possession,

6  of the stolen funds. At or around the time at which Plaintiff May was scammed in 2021, Google

7  instructed scam victims to immediately report the scam to local law enforcement and the FTC.

8  Then under a separate heading "Report the Scam to Google," Google told victims "If you report

9  the scam, you may be taking actions that can help stop the scammer and may help us prevent

10  similar suspicious activities in the future."[67] Google has subsequently modified this webpage to

11  state that victims should first report the scam to local law enforcement, "can also" report the scam

12  to the FTC, and can "next" report the scam to Google to assist in preventing similar activity in the

13  future.[68] Google makes this instruction despite knowing the immediacy with which gift card

14  scammers act to redeem and spend stored value in the Google Play store.

15    122.    By omitting from its communications with victims its ability to deny redemption,

16  freeze Google Accounts, and return the funds still in its possession to scam victims, Google

17  misleads victims into falsely believing that Google cannot return their funds and that contacting

18  Google would not be a productive use of their time.

19    123.    Google's webpage discourages victims from contacting Google by falsely telling

20  them that their stolen property cannot be recovered once the code is provided to the scammer.

21  When Plaintiff May was scammed in 2021, the webpage stated: "Once you provide the codes to a

22  scammer, they'll likely spend the funds on the card immediately."[69] This language remained on

23  the webpage until revisions to the webpage made by Google in 2024. The webpage, as currently

24  constituted, includes answers to questions commonly posed by scam victims from individuals

25

26  _____

[66] *What to Do if You're a Victim of a Google Play Gift Card Scam, supra* n. 35.

27  [67] *What to Do if You're a Victim of a Gift Card Scam, supra* n. 38.

[68] *What to Do if You're a Victim of a Google Play Gift Card Scam, supra* n. 35.

28  [69] *What to Do if You're a Victim of a Gift Card Scam, supra* n. 38.

Google represents as "Product Experts within the Google Play Help Community." The embedded answer to the question of whether a scam victim can receive a refund states, "[i]f you gave the codes to the scammers, those cards will already be drained and the proceeds laundered beyond recovery."[70] This representation is false and willfully misleading. Google knows that the proceeds are not "laundered beyond recovery" upon or shortly after scammers redeem gift cards and that Google is still in (or about to be in) possession of the stolen funds. Google's own policies are clear that it retains control over these proceeds, well after the time of redemption and purchase.

124.    These statements on Google's webpage intentionally and deliberately mislead victims to believe that the scammers have already redeemed the cards to purchase apps, songs, and other content, and that Google therefore no longer has the victims' money and that there is, in fact, nothing Google can do.

125.    Google neither informs consumers that it is keeping a percentage, or in certain instances up to 100%, of the money stolen from victims, nor does Google inform victims that it keeps victims' money for at least 15 days after the end of the month the transaction took place before paying third-party vendors. By suggesting to victims that Google no longer controls the proceeds of the scam after gift card redemption, Google conceals its continued control over the stolen funds and the profit it receives from those stolen funds.

126.    Google's misrepresentations that funds still in (or about to be in) Google's possession have been spent are consistent with a similar approach previously taken by Google in regard to the withheld payments to ad publishers. On August 25, 2017, the Wall Street Journal published an article describing how Google failed to offer full refunds to advertisers after detecting ad fraud. Google offered these fraud victims only a small fraction (7%-10%) of the money they paid to Google. Google represented to the Journal that complete refunds were not provided because Google "doesn't control the rest of the money spent."[71] This statement, like Google's similar statements about proceeds from gift cards being "immediately" spent and scam proceeds being

---

[70] *What to Do if You're a Victim of a Google Play Gift Card Scam, supra* n. 35.

[71] Lara O'Reilly, *Google Issuing Refunds to Advertisers Over Fake Traffic, Plans New Safeguard*, WALL STREET JOURNAL (Aug. 25, 2017), available at https://www.wsj.com/articles/google-issuing-refunds-to-advertisers-over-fake-traffic-plans-new-safeguard-1503675395.

1   "laundered beyond recovery," was false. Google could and did withhold funds from publishers

2   upon detection of invalid activity which it failed to refund to advertisers. Google's policy in regard

3   to advertising fraud victims, like its policy in regard to gift card fraud victims, would allow Google

4   to knowingly retain profit from these fraudulent schemes at margins that exceed the profit margin

5   it derived from legitimate transactions.

6       127.   Based on Google's omissions and misrepresentations, victims believe that the

7   money stolen from them at the point of retail sale of the Google Play gift cards is now in the hands

8   of third-party content providers, rather than remaining with Google. In fact, Google representatives

9   affirm this representation to the Contact Subclass by stating that Google is unable to refund gift

10  cards.

11      128.   The message conveyed by Google intentionally discourages victims of gift card

12  scams from contacting Google and intentionally convinces most of the victims who do contact

13  Google to quietly accept Google's refusal to issue a refund, and not pursue legal action, approach

14  the press, or pursue the refusal with law enforcement or legislators.

15      129.   Google has a duty to disclose and not conceal from Plaintiff and Class members the

16  foregoing material facts. Google's duty to disclose arises out of: (1) its misrepresentation to

17  consumers that there is nothing Google can do; and (2) its exclusive knowledge and active

18  concealment of material facts which allows Google to identify all accounts involved in Google

19  Play gift card scams, stop payment to scammers, and return the value of Google Play gift cards to

20  scam victims, which it is still in possession of.

21      130.   Google's omissions and false and misleading statements, as set forth above, are

22  intentional and done for the purpose of concealing, withholding, and retaining its commission on

23  all in-app purchases made with fraudulently obtained Google Play gift cards and any funds frozen

24  on suspicion of gift card fraud.

25      131.   As a direct and proximate result of Google's conduct, misrepresentations, and

26  omissions described herein, Plaintiff and Class members suffered damages including the amount

27  of money that Plaintiff and Class members spent on Google Play gift cards that were not refunded

28  to them by Google.

**Google's Gift Card Scam Profits**

132.    Google conceals its control over Google Play gift card victims' stolen property. Its "no-refund" policy is profitable.

133.    At least 15 days after the end of the month when a purchase was made in the Google Play Store, Google pays the Google Play Developer 70%-85% of the purchase price of the digital goods and retains the remainder of the stolen money as its own commission. Google keeps this 15%-30% commission regardless of whether the gift card is redeemed and spent by the scammer (who resells the in-app purchases and obtains money from the resale) or by a third party who purchased the stolen Google Play gift card redemption codes from the scammer.

134.    When Google denies redemption of a Google Play gift card after detecting gift card fraud, Google retains 100% of the money paid to purchase that gift card. If the scammer or a third party, for whatever reason, fails to seek redemption of a gift card, Google retains 100% of the stolen money paid to purchase that Google Play gift card.

135.    For example, for each $200 Google Play gift card purchased by Plaintiff May, Google knew it would be entitled to between $30 and $60 in commission on any in-app purchase in Google Play Store. Google also knew that if the Google Play gift card was never redeemed or redeemed and never spent, Google would retain $200 from that gift card.

**Google's Unconscionable Disclaimer**

136.    When consumers purchase a Google Play gift card at retail, they become bound by the terms on the packaging, which incorporate the full Online Terms and Conditions. However, no victim of a Google Play gift card scam is bound by Google's attempt to apply its disclaimer language, which purports to limit Google's liability for Google Play gift cards which are lost, stolen, or used without permission.

137.    Google cannot disclaim liability for its own intentional conduct in withholding, retaining, and concealing funds it knows to be stolen.

138.    Google knows that more Google Play gift cards will be sold if people who have no independent desire to purchase them are persuaded to do so by scammers – and because Google recognizes that its "no refund" policy and flawed disclaimer of liability will discourage victims

1    from seeking refunds, particularly where, as here, those card purchasers proceeded to provide the

2    cards' redemption codes to scammers.

3         139.    Google's attempt to disclaim liability for loss or damage resulting from Google

4    Play gift card scams is unconscionable and unenforceable in light of its role in those scams, the

5    profit that it makes and retains from such scams, its violation of California law in connection with

6    those scams, and the adhesive nature of the terms and conditions imposed upon scam victims who

7    purchase Google Play gift cards.

8         140.    Google knows that victims of gift card scams do not purchase Google Play gift

9    cards in order to obtain entertainment services available in the Google Play Store. Victims of gift

10    card scams purchase Google Play gift cards to pay alleged taxes, debts, bail, or fees to government

11    agencies. Scammers convince victims that these payments (necessary to prevent their arrest, avoid

12    the seizure of their property, or in Plaintiff May's case, secure the delivery of a government grant)

13    must be paid in Google Play gift cards.

14         141.    Google knows that Google Play gift card scams are designed to instill panic and

15    urgency in victims, thus preventing them from doing the research and investigation that would

16    lead them to Google's gift card scam webpages. Despite this knowledge, for many years, Google

17    provided no warning to consumers on the retail packaging of its gift cards.

18         142.    Google could, and should, state prominently on its packaging that scams involving

19    gift cards are common and consumers should not purchase the card in their hands if they have been

20    asked to do so by persons unknown to them who claim that payment by Google Play gift card is

21    urgently needed. Instead, Google fails to adequately warn consumers and perpetuates and profits

22    from Google Play gift card scams.

23         143.    Google says nothing on its packaging regarding urgent demands for payment by

24    unknown persons. Google instructs, on the back of the card simply, "[o]nly use this gift card's

25    code on Google Play. Any other request for the code may be a scam." This ineffective warning not

26    only incorrectly assumes that consumers understand what is and is not "on Google Play," but also

27    fails to alert consumers of the widespread phenomenon known to Google. Also, for much of the

28

1 Class Period no warning was used at all or was visible to consumers only after they had already
2 purchased a Google Play gift card.

3     144.    For much of the Class Period Google made no effort whatsoever to warn consumers
4 at the time and place where the scam can be avoided entirely – namely, in the retail store prior to
5 purchase where targets of the scam can be prevented from having their money stolen through
6 fraudulently induced Google Play gift card purchases.

7     145.    During the Class Period, Google added an anemic warning instructing victims to
8 "[o]nly use this gift card's code on Google Play. Any other request for the code **may** be a scam. .
9 . ."[72] Google used this equivocal language, despite the fact that the FTC states that "anyone who
10 insists that you pay by gift card is **always** a scammer."[73]

11     146.    Google knows its "warning" language fails to adequately inform potential victims
12 of the nature of Google Play gift card scams or give them the information they need to avoid
13 becoming a victim. Google knows that scam victims are generally unaware of the types of products
14 and services available through the Google Play Store and therefore do not understand that the
15 Google Play Store does not, in fact, have the type of payment feature described by the scammers.

16     147.    Google makes Google Play gift cards sold by retailers available for purchase in
17 amounts up to $200, and during some of the class period in amounts up to $500. Making Google
18 Play gift cards available in such large denominations dramatically increases the amount scammers
19 could obtain from unwitting consumers. On information and belief, Google knows that a
20 disproportionate number of high value Google Play gift cards are being redeemed by scammers,
21 and yet it continues to sell them and retain a profit from the same.

22     148.    Google recognizes that more Google Play gift cards will be sold – and Google will
23 retain profit from the same – if people who otherwise had no intent to purchase Google Play gift
24 cards – such as Plaintiff May – are successfully persuaded to do so by scammers and are **not** then
25 dissuaded by an effective warning.

26

27 [72] Emphasis is added throughout unless otherwise noted.

28 [73] Traci Armani, *Did Someone Tell You to Pay with Gift Cards? It's a Scam*, Fed. Trade Comm'n (Sept. 11, 2020), available at https://consumer.ftc.gov/consumer-alerts/2020/09/did-someone-tell-you-pay-gift-cards-its-scam (last visited Dec. 4, 2024).

1   149.   Plaintiff May and the other Class members are more likely to be targeted by

2   scammers in the future (including by so-called "recovery scammers," as alleged in Paragraph 76)

3   because they provided Google Play gift cards redemption codes to scammers.

4   **Plaintiff May's Experience**

5   150.   In March 2021, Plaintiff May received a social media message from a scammer

6   posing as a specific family member instructing her to connect with a government agent to acquire

7   grant money from the U.S. Department of Health and Human Services ("HHS").

8   151.   On March 31, 2021, Plaintiff May followed her purported family member's

9   instructions and was connected with a purported government agent who told Plaintiff May that she

10   was eligible for an HHS grant. This purported agent was a scammer. Plaintiff May was not then

11   and is not now aware of this scammer's true identity. The scammer told Plaintiff May that in order

12   to receive her grant money by same-day delivery she had to cover certain costs, which would be

13   reimbursed to her as part of the grant money.

14   152.   On April 1, 2021, the scammer instructed Plaintiff May to purchase Google Play

15   gift cards and provide the redemption codes to the scammer to cover the costs. Plaintiff May had

16   no independent intent to purchase gift cards, nor did she have any intent to use the Google Play

17   gift cards for games, movies, or other recreational purposes.

18   153.   Also on April 1, 2021, Plaintiff May purchased a $200 Google Play gift card from

19   a Family Dollar retail location in Connersville, Indiana. Plaintiff May attempted to share the

20   redemption code from this gift card with the scammer, but the redemption code was unreadable.

21   154.   On April 2, 2021, Plaintiff May was instructed by the scammer to purchase

22   additional Google Play gift cards to cover the costs.  Plaintiff May thereafter purchased four $200

23   Google Play gift cards ($800 total) from a CVS Pharmacy retail location in Connersville, Indiana,

24   and provided photos of the cards' redemption codes to the scammer.

25   155.   At the time of purchase, Plaintiff May read the language on the Google Play gift

26   cards she purchased, but did not know that payment services were not among the products and

27   services available "on Google Play," and was unaware of the nature, much less the prevalence, of

28   Google Play gift card scams and did not know she was in the process of being scammed.

156.    Later on April 2, 2021, after Plaintiff May had provided the Google Play gift cards' redemption codes to the scammer, she contacted her relative about the purported agent the family member supposedly connected Plaintiff May with. Only at that point, on April 2, 2021, did Plaintiff May learn that the purported agent she had been communicating with was not a government agent and that she was the victim of a Google Play gift card scam.

157.    On information and belief, on April 2, 2021, "immediately" after she provided the redemption codes to the scammer, the scammer redeemed the codes onto the scammer-controlled Google account. This belief is based on the following information: (1) Google's public-facing website at the time, which stated, "Once you provide the codes to a scammer, they'll likely spend the funds on the card immediately,"[74] and (2) Google's subsequent refusal to refund Plaintiff May and statement that there was nothing it could do for her (presumably because the funds had been spent).

158.    At the moment the scammer redeemed the gift card codes onto the scammer-controlled Google account on April 2, 2021, Google had actual knowledge of the data points concerning the gift card purchases, the scammers' Google account, and the scammers' redemption and subsequent purchases, which are identified in Paragraphs 87-88 above.

159.    Upon information and belief, Google's gift card fraud algorithms detected, and thus Google had actual knowledge, that the Google Play gift cards purchased by Plaintiff May and redeemed by the scammer were purchased and redeemed in connection with a gift card scam at the time of their redemption and at the time that the redeemed value was applied towards the Google Play in-app purchases. The information on which this belief is predicated includes: (1) the FTC's statement that gift card issuers have such algorithms in place; (2) Google's admission that it has such algorithms in place; (3) Google's public-facing statements regarding how gift card scams generally operate; (4) Google's affirmative statements to the public that scammers typically spend the funds immediately; and (5) Google's subsequent statements to Plaintiff May that there

---

[74] *What to Do if You're a Victim of a Google Play Gift Card Scam, supra* n. 35.

1    was nothing it could do for her because it cannot refund gift cards that were redeemed by others

2    or involved in a scam.

3        160.    At the point the scammer redeemed Plaintiff May's gift cards, Google had all of

4    the information it needed to freeze the scammer's Google Account and return the funds to a person

5    who could establish that they were scammed in connection with those gift cards. Stated otherwise,

6    the only information missing was the identity of the victim.

7        161.    On April 3, 2021, the day after Plaintiff May shared the code with the scammer and

8    (upon information and belief as alleged in Paragraph 159 above) the scammer redeemed the gift

9    cards, Plaintiff May contacted Google and identified herself as the victim of a Google Play gift

10    card scam.

11        162.    On April 3, 2021, Plaintiff May provided Google with documentation of her Google

12    Play gift card purchases, including images of the gift cards and purchase receipts via email to

13    Google. Plaintiff May also provided Google with screenshots of her communications with the

14    scammers via email. She therefore provided everything Google needed to confirm that she was the

15    victim of the scam with respect to those gift cards. Google representatives told Plaintiff May that

16    Google would investigate.

17        163.    On April 4, 2021, Plaintiff May communicated and purported to report the gift card

18    scam to her local police department, but was told there was nothing they could do.

19        164.    Upon information and belief, Google confirmed whether any funds remained on

20    the Google Play gift cards purchased by Plaintiff May to comply with its obligations under CAL.

21    CIV. CODE § 1749.5.

22        165.    From April 4-8, 2021, Plaintiff May continued communicating with Google and

23    requesting a refund. Google informed May that she should request a refund from the retailer she

24    purchased the gift cards. May contacted the retailer and they informed her that they could not issue

25    her a refund. Google then stated that it had reported her gift card scam to its internal team to

26    investigate.

27        166.    On April 10, 2021, Plaintiff May received an email from Google stating that her

28    complaint had been "handled according to our current policy and there's nothing further we can

1  do." The email further asserted that: "Google is unable to refund gift cards that have been redeemed

2  by others, or were purchased as part of a scam."

3      167.    In fact, however, Google was still in possession of (or would soon receive from the

4  integrator) the money Plaintiff May spent on the gift cards. Also, Google still had not paid the

5  funds to the Google Play Developer and would not do so until May 15, 2021 at the earliest. And

6  its payment would only occur if it did not withhold the payment from the Google Play Developer

7  pursuant to its contractual right to do so.

8      168.    Google has not refunded Plaintiff May any portion of the $1,000.00 she spent on

9  gift cards as a result of the scam, including the $200 that gift card scammers were unable to redeem

10 due to legibility issues with the redemption code.

11     169.    Google earned a commission from Plaintiff May's purchases of gift cards and did

12 not disclose to May that it would keep the commission it would receive from the sale of the $1,000

13 of gift cards purchased by May.

14     170.    Google concealed from Plaintiff May the fact that it had actual knowledge of the

15 data points needed to know, before she contacted it, that the cards she purchased were the product

16 of a gift card scam.

17     171.    Google concealed from Plaintiff May the fact that it has algorithms and other

18 systems in place to detect gift card scams the moment they are redeemed.

19     172.    Assuming Google's algorithms detected the gift card scam, as alleged in Paragraph

20 86 on information and belief, Google concealed this fact from Plaintiff May.

21     173.    If Google blocked the scammer's efforts to redeem the gift cards that Plaintiff May

22 purchased, Google withheld this fact from Plaintiff May.

23     174.    Assuming Google froze the scammer's Google account so that the gift cards could

24 not be redeemed or so that alternative forms of payment would be required, Google concealed this

25 fact from Plaintiff May.

26     175.    Google concealed from Plaintiff May the fact that it had not yet received from the

27 integrator or was still holding the funds that Plaintiff May used to purchase the Google Play gift

28 cards.

176.    Google concealed from Plaintiff May the fact that it had the ability to withhold payment to the Google Play Developer.

177.    If Google intended to withhold payment of Plaintiff May's funds from the Google Play Developer, it concealed this fact from her.

178.    Instead, Google acted as if the funds were gone (concealing that it still had access to them), and likely maintains possession of these funds to this date.

**TOLLING OF STATUTES OF LIMITATIONS**

179.    Any applicable statute(s) of limitations were tolled by Google's knowing, active concealment, and denial of the facts alleged herein. Google's conduct is inherently self-concealing because Google does not disclose its ability to monitor and control Google Play gift card transactions, Google Account activity, and Google Play Store purchases. As a result, Plaintiff May and members of the Class could not have reasonably discovered the true nature of Google's conduct until shortly before this class action litigation was commenced.

180.    Google is far from an open book. Google has internally enforced a "culture of concealment," in which employees are instructed to destroy messages relevant to potential litigation.[75]

181.    Google's publicly available policies are complex, include cross-references to other materials, and omit important details. Information about Google's control and possession of funds is not publicly available.

182.    Google has not publicly disclosed the details of its ability to detect gift card scams or to more broadly monitor Google Account activity, Google Play gift card redemptions and Google Play Store purchases. In fact, the existence of Google's gift card fraud detection algorithm was not publicly confirmed until a former Google Play employee testified to its existence earlier in 2024, as alleged in Paragraph 79 above. Prior to obtaining information suggesting that Google had such abilities, Plaintiff and Class members could not have discovered in the normal course of

---

[75] David Streitfeld, *How Google Spent 15 Years Creating a Culture of Concealment*, N.Y. TIMES (Nov. 20, 2024), available at https://www.nytimes.com/2024/11/20/technology/google-antitrust-employee-messages.html.

1  diligence that Google knew the gift cards were stolen or that Google was concealing and

2  withholding their stolen money.

3    183. Google falsely represents on its webpage that if a gift card scam victim provides a

4  gift card redemption code to a scammer the money paid by them for the gift cards would be

5  laundered beyond recovery and that there was nothing Google could do. After Plaintiff May and

6  Class members contacted Google concerning gift card scams, Google told them there was nothing

7  Google could do. Google's representations of futility and omissions concerning its ability to

8  monitor gift card redemption and continued control over their monies were false and misleading.

9  These misrepresentations concealed from Plaintiff May and Class members information central to

10  the factual allegations above, including the essential fact that Google retained control over the

11  funds after gift cards were redeemed by scammers.

12    184. As a result of Google's active concealment, Plaintiff May and members of the Class

13  could not have reasonably discovered the true nature of Google's conduct until the publication of

14  information relating to Google's policies.

15    a. In 2021, the Complaint was filed in *Meyers v. Alphabet, Inc.*, No. 2:21-cv-01767,

16     alleging that Google prevented redemption of their gift cards on account of suspicious

17     activity. This Complaint and the reporting on this Complaint provided Class Members

18     with previously unreported information about Google's ability to prevent the

19     redemption of gift cards after victims provided codes to scammers.[76]

20    b. In 2021, several state governments brought an antitrust action against Google alleging

21     anticompetitive practices in its app store. This action publicized the extent to which

22     Google exercises control over the Google Play ecosystem, such as its app store

23     commissions.[77]

24

25  [76] *See* Lauren Berg, *Google's Security Makes Gift Cards Unredeemable, Users Say*, LAW 360 (Feb. 26, 2021), available at https://www.law360.com/articles/1358986; Kirsten Errick, *Google Sued for*

26  *Refusing to Redeem Google Play Gift Cards*, LAW STREET MEDIA (Feb. 26, 2021), available at https://lawstreetmedia.com/news/tech/google-sued-for-refusing-to-redeem-google-play-gift-cards/.

27  [77] *See* Bobby Allyn, *More Than 30 States Sue Google Over 'Extravagant' Fees in Google Play*

28  *Store*, NPR (July 7, 2021), available at https://www.npr.org/2021/07/07/1013934643/more-than-30-states-sue-google-over-extravagant-fees-in-google-play-store.

FIRST AMENDED CLASS ACTION COMPLAINT

c.  In 2023, the FTC issued a consumer alert advising consumers of the fact that gift card companies could and indeed were freezing stolen gift card money and able to refund that money to victims.[78]

d.  In 2024, a Google representative testified that Google does in fact have algorithms in place to detect gift card scams, as alleged in Paragraph 79 above.

185.    Google was and remains under a continuing duty to disclose to Plaintiff May and Class members the true nature of its involvement in gift card scams, including that it can identify all accounts involved in the scam, stop payment to scammers, and return the value of Google Play gift cards to victims. As a result of Google's active concealment, any and all statutes of limitations otherwise applicable to the allegations herein were tolled.

## CLASS ALLEGATIONS

186.    Plaintiff brings this action, individually, and on behalf of a nationwide class, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), defined as follows:

### Nationwide Class

All persons in the United States and its territories who purchased one or more Google Play gift cards at the direction of people whose identities they did not know and did not redeem the gift cards for themselves or give them as a gift but instead provided the redemption codes to the people whose identities they did not know (the "Scam") and were not refunded the money they paid for the gift cards by Google or any other source (the "Class").

187.    The Class Period is initially defined as the period between January 1, 2015 and the present.[79]

188.    Pursuant to Federal Rule of Civil Procedure 23(c)(5), Plaintiff also seeks to represent the following subclass:

---

[78] Cristina Miranda, *If You Paid a Scammer with a Gift Card, Is Your Money Gone? Maybe Not*, FED. TRADE COMM'N (Aug. 21, 2023), available at https://consumer.ftc.gov/consumer-alerts/2023/08/if-you-paid-scammer-gift-card-your-money-gone-maybe-not; *see also BBB Study: Growth of Gift Card Scams Causes Retailers to Innovate Solutions, supra* n. 31.

[79] Plaintiff reserves the right to expand or amend the Class Period based on discovery produced in this matter.

FIRST AMENDED CLASS ACTION COMPLAINT

**Contact Subclass**

All Class members who contacted Google directly or indirectly through law enforcement and reported the Scam.

189.    The Nationwide Class and the Contact Subclass shall collectively be referred to herein as the "Class." Excluded from the Class are: (a) Defendants; (b) Defendants' affiliates, agents, employees, officers, and directors; (c) Plaintiff's counsel and Defendant's counsel; and (d) the judge assigned to this matter, the judge's staff, and any member of the judge's immediate family. Plaintiff reserves the right to modify, change, or expand the various class definitions set forth above based on discovery and further investigation.

190.    **Numerosity**: The Class is so numerous that joinder of all members is impracticable. While the exact number and identity of individual members of the Class is unknown at this time, such information being in the sole possession of Google and/or third parties and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that the Class consists of hundreds of thousands of people. The number of Class members can be determined based on Google's and other third party's records.

191.    **Commonality**: Common questions of law and fact exist as to all members of each Class. These questions predominate over questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a.    Whether Google engaged in unfair business practices;

b.    Whether Google engaged in unlawful business practices;

c.    Whether Google received, retained, withheld, or concealed stolen property;

d.    Whether Google converted the property of others;

e.    Whether Google knowingly and intentionally profited from gift card scams involving Google Play gift cards;

f.    Whether Google misrepresents that there is nothing Google can do after Google Play gift cards are redeemed;

g.    Whether Google conceals material facts regarding its ability to stop payments and return money to scam victims;

FIRST AMENDED CLASS ACTION COMPLAINT

h.    Whether Google's conduct violated the California consumer protection statutes asserted herein;

i.    Whether the monies obtained by Google from gift card scams rightfully belongs to Plaintiff and Class members; and

j.    Whether Google keeps all or a portion of stolen money as commission for its own use.

192.    **Typicality**: Plaintiff has the same interest in this matter as all Class members, and Plaintiff's claims arise out of the same set of facts and conduct as the claims of all Class members. Plaintiff's and Class members' claims all arise out of Google's uniform misrepresentations, omissions, and unlawful and unfair acts and practices related to Google Play gift cards.

193.    **Adequacy**: Plaintiff has no interest that conflicts with the interests of the Class, and is committed to pursuing this action vigorously. Plaintiff has retained counsel competent and experienced in complex consumer class action litigation. Accordingly, Plaintiff and her counsel will fairly and adequately protect the interests of the Class.

194.    **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Google's conduct. It would be virtually impossible for individual Class members to redress effectively the wrongs done to them. Even if Class members could afford individualized litigation, the court system could not. Individualized litigation would increase delay and expense to all parties and to the court system, because of the complex legal and factual issues of this case. Individualized rulings and judgments could result in inconsistent relief for similarly situated individuals. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

195.    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the Class as a whole.

## CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS

196.    California substantive law applies to every member of the Class, regardless of where in the United States the Class members reside. Google's terms and conditions state:

**General Terms**. […] When you purchase, receive or redeem a Gift Card or Credit, you agree that the laws of the State of California apply, without regard to principles of conflict of laws, and that such laws will govern these Gift Card and Credit terms and conditions.[80]

197.    By choosing California law for the resolution of disputes in the agreement, Google concedes that it is appropriate for this Court to apply California law to the instant dispute.

198.    Further, California substantive law may be constitutionally applied to the claims of Plaintiff and the Class under the Due Process Clause, 14th Amend. §1, and the Full Faith and Credit Clause, Art. IV §1 of the U.S. Constitution. California has significant contact, or a significant aggregation of contacts, to the claims asserted by Plaintiff and all Class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

199.    Google's headquarters and principal place of business is located in California. Google also owns property and conducts a substantial portion of its business in California, and therefore California has an interest in regulating Google's conduct under its laws. Google's decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein constitutionally permissible.

200.    California is also the state from which Google's alleged misconduct emanated. On information and belief, the decision-making regarding the design and marketing of Google products, including the Google Play gift cards and Google Play Store, occurred in and emanated from California, and Google received commissions from purchases with fraudulently obtained Google Play gift cards in California. As such, the conduct complained of herein emanated from California. This conduct similarly injured and affected Plaintiff and all other Class members.

---

[80] *See Google Play Gift Card and Prepaid Play Balance Terms of Service*, *supra* n. 2.

1    201.    The application of California law to the Class is also appropriate under California's

2    choice of law rules because California has significant contacts to the claims of Plaintiff and the

3    proposed Class, and California has a greater interest in applying its laws here than any other

4    interested state.

**FIRST CAUSE OF ACTION**
**Unfair Practices**
**in Violation of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code §17200 *et seq.***
**(on Behalf of the Nationwide Class and the Contact Subclass)**

8    202.    Plaintiff hereby re-alleges and incorporates all allegations in the Complaint, as

9    though fully set forth herein.

10    203.    At all relevant times there was in full force and effect the California Unfair

11    Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200 *et seq.*, which prohibits, *inter alia*,

12    "any unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or

13    misleading advertising." Cal. Bus. & Prof. Code §17200.

14    204.    Google has unfairly retained millions of dollars in funds that it knows were stolen

15    from Plaintiff and other victims of Google Play gift card scams.

16    205.    Google has also engaged in other business acts and practices that are "unfair" under

17    the UCL, including knowingly and intentionally keeping and disbursing illegally obtained money.

18    206.    Google also engaged in several practices designed to perpetuate the scheme and the

19    stream of revenue it generates for Google. Those practices, which are unfair alone, and particularly

20    when taken together, include, but are not limited to, failing to adequately warn consumers about

21    the existence, nature, and prevalence of gift card scams on the packaging of its gift cards, failing

22    to adequately warn consumers about the existence, nature, and prevalence of gift card scams on

23    the cards themselves, reducing the number of victims who contact Google by including an

24    unconscionable and adhesive disclaimer on its packaging and in its Online Terms and Conditions,

25    reducing the number of victims who contact Google by failing to include an instruction to do so

26    on its cards, and likewise reducing the number of victims who contact Google by falsely suggesting

27    on its website that, by the time a victim contacts Google, Google no longer has control over the

28    funds.

207.    Google fails to inform victims that, regardless of whether the Google Play gift card was redeemed and spent, if the consumer contacts Google after becoming the victim of a scam and provides the redemption code to Google, Google can identify the Google Account involved in the scam, stop payment to the Google Play Developer account, and refund the value of the Google Play gift card to the victim.

208.    Google's unfair practices designed to perpetuate the scheme and the stream of revenue it generates for Google also include discouraging victims who do call Google from vindicating their rights or otherwise taking action against Google by similarly suggesting that the funds now rightfully belong to someone other than Google or the scammers, and by failing to inform victims who hear that message of the contrary material facts known only to Google, including that Google waits weeks before knowingly depositing a percentage of funds stolen from victims into the bank accounts of Google Play Developers and knowingly keeping a percentage of funds stolen from victims – up to 100% – for itself.

209.    Unfair acts under the UCL have been interpreted using three different tests: (1) whether the public policy, which is a predicate to a consumer unfair competition action under the unfair prong of the UCL, is tethered to specific constitutional, statutory, or regulatory provisions; (2) whether the gravity of the harm to the consumer caused by the challenged business practice outweighs the utility of the defendants' conduct; and (3) whether the consumer injury is substantial, not outweighed by any countervailing benefits to consumers or competition, and is an injury that consumers themselves could not reasonably have avoided. Google's conduct alleged is unfair under all of these tests.

210.    As is set forth below, Google's conduct violates CAL. PENAL CODE §496 and constitutes conversion under the common law.

211.    Google's conduct violates CAL. CIV. CODE § 1749.5.

212.    Google Play gift cards are gift certificates for the purposes of CAL. CIV. CODE § 1749.5.

213.    CAL. CIV. CODE § 1749.5(b)(1) requires that any gift certificate sold after January 1, 1997 be "redeemable in cash for its cash value, or subject to replacement with a new gift

certificate at no cost to the purchaser or holder." CAL. CIV. CODE § 1749.5(b)(2) requires that "any gift certificate with a cash value of less than ten ($10) [be] redeemable in cash for its cash value."

214. In violation of these provisions, Google fails to offer cash refunds or replacement gift cards to Class members.

215. In violation of these provisions, Google fails to offer cash refunds or replacement gift cards to Class members who report to Google that they purchased gift cards as part of a scam before those gift cards were redeemed by scammers.

216. Google failed to offer replacement gift certificates to Plaintiff for any of the five Google Play gift cards she purchased in California, including the Google Play gift card for which the redemption code was not provided to the scammer.

217. As a direct and proximate result of Google's unfair practices, Plaintiff and Class members suffered injury and have paid monies that Google has improperly retained from the Google Play gift card scam. Google's participation in the gift card scams and concealment of its role and ability to track and stop payments to scammers, aids and abets scammers and further perpetuates the scams.

218. Plaintiff and other Class members may be targeted by additional scams requesting gift cards, including by scammers promising to recover or refund their losses.

219. Plaintiff seeks to enjoin further unfair acts or practices by Google, to obtain restitution and disgorgement of all monies generated as a result of such practices, and for all other relief allowed under CAL. BUS. & PROF. CODE §17200.

220. Plaintiff pleads this claim separately as well as in the alternative to her other claims; without such claims, she would have no adequate remedy at law.

## SECOND CAUSE OF ACTION
**Unlawful Practices**
**in Violation of the California Unfair Competition Law**
**CAL. BUS. & PROF. CODE §17200 *et seq.***
**(on Behalf of the Nationwide Class and the Contact Subclass)**

221. Plaintiff hereby re-alleges and incorporates all allegations in the Complaint, as though fully set forth herein.

222.    At all relevant times there was in full force and effect the UCL, CAL. BUS. & PROF. CODE §17200 *et seq.*, which prohibits, *inter alia*, "any unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE §17200.

223.    Google has unlawfully retained millions of dollars in funds that it knows were stolen from Plaintiff and other victims of Google Play gift card scams.

224.    In the course of their business, Google repeatedly and regularly engaged in unlawful acts or practices that imposed serious harm on consumers, including Plaintiff and Class members.

225.    Google's acts and practices are unlawful for many reasons, including because Google violates CAL. PENAL CODE §496 by, *inter alia*, intentionally dispersing stolen property in violation of its affirmative duty to return it or to disclose its whereabouts to its rightful owner.

226.    Google's acts and practices are also unlawful because they violate the California Consumers Legal Remedies Act ("CLRA").

227.    Google's acts and practices are also unlawful because Google attempts to apply its disclaimer language to exculpate itself from its own violations of the CAL. PENAL CODE and consumer protection statutes and its own acts of conversion.

228.    As a direct and proximate result of Google's unlawful practices, Plaintiff and Class members suffered injury and have paid monies that Google has improperly retained from the Google Play gift card scam.

229.    Plaintiff and other Class members may be targeted by additional scams requesting gift cards, including by scammers promising to recover or refund their losses.

230.    Plaintiff seeks to enjoin further unlawful acts or practices by Google, to obtain restitution and disgorgement of all monies generated as a result of such practices, and for all other relief allowed under CAL. BUS. & PROF. CODE §17200.

231.    Plaintiff pleads this claim separately as well as in the alternative to her other claims; without such claims, she would have no adequate remedy at law.

### THIRD CAUSE OF ACTION
**Unfair Practices**
**in Violation of the California Consumers Legal Remedies Act**
**CAL. CIV. CODE §1750 *et seq.***
**(on behalf of the Nationwide Class and the Contact Subclass)**

232.    Plaintiff hereby re-alleges and incorporates all allegations raised in the Complaint, as though fully set forth herein.

233.    At all relevant times there was in full force and effect the CLRA, CAL. CIV. CODE §1750 *et seq.*

234.    Plaintiff and Class members are "consumers" as that term is defined by CAL. CIV. CODE §1761(d).

235.    Google is a "person" as that term is defined by CAL. CIV. CODE §1761(c).

236.    Google engaged in unfair acts in violation of the CLRA by engaging in the practices described above, including knowingly and intentionally: keeping and disbursing stolen money; concealing from Plaintiff and Class members that Google can identify the Google Account belonging to scammers, stop redemption of the gift cards onto those accounts or spending of those accounts, return the value of the Google Play gift card when provided with the redemption code on the back of a Google Play gift card; and by retaining the money it received as the result of unlawful conduct.

237.    Google also engaged in a number of practices designed to perpetuate the scheme and the stream of revenue it generates for Google. Those practices, which are unfair alone, and particularly when taken together, include, but are not limited to, failing to adequately warn consumers about the existence, nature, and prevalence of the scams on the packaging of its gift cards, failing to adequately warn consumers on the cards themselves about the existence, nature, and prevalence of scams, reducing the number of victims who contact Google by including an unconscionable and adhesive disclaimer on its packaging and in its Online Terms and Conditions, likewise reducing the number of victims who contact Google by failing to include an instruction to do so on its cards, and reducing the number of victims who contact Google by falsely suggesting on its website that by the time a victim contacts Google, the funds will have become the rightful property of legitimate content sellers.

1    238.    Google's unfair practices designed to perpetuate the scheme and the stream of

2    revenue it generates for Google, also includes discouraging victims who do contact Google from

3    vindicating their rights or otherwise taking action against Google by similarly suggesting that the

4    funds now rightfully belong to someone other than Google or the scammers, and by uniformly

5    failing to inform victims of the contrary material facts known only to Google, including that

6    Google waits weeks before knowingly depositing a portion of the funds stolen from victims into

7    the bank accounts of Google Play Developers and knowingly keeping a percentage of the funds

8    stolen from victims – at times up to 100% – for itself.

9    239.    In the course of its business, Google repeatedly and regularly engaged in unfair acts

10    or practices that imposed serious harm on consumers, including Plaintiff and Class members.

11    240.    Google's acts and practices are unfair because they offend public policy, are

12    immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, including

13    Plaintiff and members of the Class.

14    241.    The injuries suffered by Plaintiff and Class members greatly outweigh any potential

15    countervailing benefit to consumers or competition, and are not injuries that Plaintiff and Class

16    members should have reasonably avoided.

17    242.    The acts and practices complained of herein violate, at a minimum, the sections of

18    the CLRA, which prohibit inserting an unconscionable provision in a contract.

19    243.    As set forth above, Google inserted an unconscionable and adhesive provision in

20    the Online Terms and Conditions. Google's attempt to disclaim liability for all lost or stolen gift

21    cards discourages consumers from contacting Google, and the provision cannot lawfully be applied

22    to Google Play gift cards involved in gift card scams because Google engages in conduct in

23    connection with those scams that is unlawful, including but not limited to violation of penal code

24    provisions and consumer protection statutes. Google's attempt to disclaim liability for its knowing

25    participation in and profiting from gift card scams is unconscionable.

26    244.    Pursuant to §1782(a) & (d) of the CLRA, on March 5, 2024, Plaintiff's counsel

27    notified Defendants in writing by certified mail of the particular violations of §1770 of the CLRA

28    and demanded that they rectify the problems associated with the actions detailed above and give

notice to all affected consumers of Defendants' intent to act. Plaintiff provided Defendants with notice of her intent to amend her Complaint to seek actual, punitive, and statutory damages if Defendants did not cease their unfair and unlawful conduct, and Defendants failed to do so.

245.    Plaintiff and the Class therefore also request this Court enter such orders or judgments necessary to restore to any person any money acquired as a result of Google's unfair business practices, and for such other relief, including attorneys' fees and costs, as provided in CAL. CIV. CODE §1780 and the Prayer for Relief.

**FOURTH CAUSE OF ACTION**
**Unlawful Practices**
**in Violation of the California Consumers Legal Remedies Act**
**CAL. CIVIL CODE §1750 *et seq.***
**(on Behalf of the Nationwide Class and the Contact Subclass)**

246.    Plaintiff hereby re-alleges and incorporates all allegations in the Complaint, as though fully set forth herein.

247.    At all relevant times there was in full force and effect the CLRA, CAL. CIV. CODE §1750 *et seq.*

248.    Plaintiff and Class members are "consumers" as that term is defined by CAL. CIV. CODE §1761(d).

249.    Google is a "person" as that term is defined by CAL. CIV. CODE §1761(c).

250.    Google engaged in unlawful acts in violation of the CLRA by the practices described herein.

251.    In the course of their business, Google repeatedly and regularly engaged in unlawful acts or practices that imposed serious harm on consumers, including Plaintiff and the Class members.

252.    Google's acts and practices are unlawful for many reasons, including because Google violates CAL. PENAL CODE §496 by, *inter alia*, intentionally dispersing stolen property in violation of its affirmative duty to return it or to disclose its whereabouts to its rightful owner.

253.    Google's acts and practices are also unlawful because they violate the California Unfair Competition Law.

254.    Google's acts and practices are also unlawful because Google attempts to apply its disclaimer language to exculpate itself from its own violations of the Cal. Penal Code and consumer protection statutes and its own acts of conversion.

255.    Pursuant to §1782(a) & (d) of the CLRA, on March 5, 2024, Plaintiff's counsel notified Defendants in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that they rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to act. Plaintiff provided Defendants with notice of her intent to amend her Complaint to seek actual, punitive, and statutory damages if Defendants did not cease their unfair and unlawful conduct, and Defendants failed to do so.

256.    Plaintiff and the Class members therefore also request this Court enter such orders or judgments necessary to restore to any person any money acquired as a result of Google's unlawful business practices, and for such other relief, including attorneys' fees and costs, as provided in CAL. CIV. CODE §1780 and the Prayer for Relief.

**FIFTH CAUSE OF ACTION**
**Receiving, Retaining, Withholding, or Concealing Stolen Property**
**in Violation of Cal. Penal Code §496**
**(on Behalf of the Nationwide Class and the Contact Subclass)**

257.    Plaintiff hereby re-alleges and incorporates all allegations in the Complaint, as though fully set forth herein.

258.    California Penal Code §496 declares unlawful for any "person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, [to] conceal[], sell[], withhold[] . . . any property from the owner. . . ." CAL. PENAL CODE §496(a).

259.    Here, Google has (1) received, (2) retained, (3) withheld, and (4) concealed stolen property, namely the money that Class members paid for the Google Play gift cards or alternatively the stored value held on those gift cards.

260.    California Penal Code §496 also creates a private right of action for "any person who has been injured by a violation of subdivision (a)." CAL. PENAL CODE §496(c).

261.    At all relevant times, Plaintiff and Class members were the rightful owners of the money used to purchase the Google Play gift cards. It is the money belonging to Plaintiff and Class members that scammers wish to steal and do steal, rather than the stored value on Google Play gift cards. Prior to the scams, victims do not possess any Google Play gift cards or stored value. Their money leaves their possession and control and is stolen from them through false pretenses at the time of the retail sale of the gift card. Google ultimately receives this money in connection with the sale of scammed Google Play gift cards is the money that was stolen from the victim. Google pays out a portion of this money to Google Play Developers in connection with a scammer's purchase. Google retains either all of this money or a portion of this money as its commission on the scammer's purchase.

262.    Alternatively, Plaintiff and Class members were the original and rightful owners of any stored value contained on and redeemed from those Google Play gift cards.

263.    Plaintiff's and Class members' property was stolen or obtained in a manner constituting theft or extortion by the scammers. The scammers, through false representations and/or false pretenses, defrauded Plaintiff and Class members, convincing them to purchase Google Play gift cards and to provide the redemption codes of those gift cards.

264.    Google had actual knowledge that it was in possession of Plaintiff's and Class members' stolen property before or at the time any purchase was made using that property in the Google Play Store.

a.    At the moment the scammer sought to redeem the gift card, Google knew: the retail store where the gift card was purchased; the date and time of purchase, the amount of value stored on the gift card; whether the gift card was purchased with other gift; the date and time of redemption, the identity of the Google Account used to redeem the gift card; and the history of that Google Account.

b.    When the scammer made a purchase in the Google Play Store using Plaintiff's and Class members' stolen property, Google learned: the timing of the purchase; the type of product purchased; and the identity of the Google Play Developer selling the product.

c.   Google deploys algorithms or algorithmic tools to detect gift card fraud based on the data in its possession. It can be inferred from Google's refusals to redeem gift cards that Google deploys this algorithm in real-time at the time of redemption.

265.   Google had actual knowledge that it was in possession of Plaintiff's and Class members' property when Plaintiff and Class members contacted Google to report that they were victims of gift card scams and provided the redemption codes for those gift cards.

266.   Google received the money paid to retailers by Plaintiff and Class members for the gift cards. Alternatively, Google received the stored value of the gift cards when they are redeemed by the scammer onto a Google Account.

267.   Google wrongfully retains the property stolen from Plaintiff and Class members by refusing to return the property that rightfully belongs to Plaintiff and Class members despite Google's actual knowledge that the property was stolen and, Plaintiff's and other Class members' express refund requests.

268.   If the gift cards were redeemed and the property used by the scammer to make a purchase in the Google Play Store, Google did not transmit this property to any entity not under Google's control until the 15th day of the month succeeding the date of that purchase. After the date of this payment, Google retained a portion of the stolen property as a commission.

269.   If Google thwarted redemption of the gift card or terminated the scammer's Google Account on suspicion of fraud, Google retained 100% of the Plaintiff's and Class members' stolen property.

270.   Google wrongfully conceals Plaintiff's and Class members' property by misleading them into believing that the funds paid for the gift cards have been laundered beyond recovery, despite the fact that Google retains those funds.

271.   As a direct and proximate result of Google's conduct, Plaintiff and Class members suffered damages.

272.   Plaintiff and Class members seek compensatory damages.

## SIXTH CAUSE OF ACTION
### Conversion
### (on Behalf of the Nationwide Class and the Contact Subclass)

273.    Plaintiff hereby re-alleges and incorporates all allegations in the Complaint, as though fully set forth herein.

274.    At all relevant times, Plaintiff and Class members had a right to possession in, and were the rightful owners of, the money used to purchase the Google Play gift cards containing stored value which could be used in the Google Play Store. Alternatively, Plaintiff and Class members were the original and rightful owners of any stored value contained and redeemed from those Google Play gift cards.

275.    Plaintiff's and Class members' property was used to purchase Google Play gift cards under false pretenses. These gift cards were redeemed under false pretenses.

276.    Google had actual knowledge that it was in possession of Plaintiff's and Class members' property at the time in which that gift card was redeemed by the scammer and/or the moment at which the scammer made a purchase using that property in the Google Play Store.

277.    Google has actual knowledge that it was in possession of Plaintiff's and Class members' property when Plaintiff and other Class members contacted Google, advised Google that they were the victim of a scam, and provided Google with the redemption codes of the gift card.

278.    Google substantially interfered with Plaintiff's and Class members' property by knowingly and intentionally retaining a commission on all purchases made with the stolen property and refusing to return Plaintiff's and Class members' property. Google permanently deprived Plaintiff and Class members of the use and enjoyment of their property.

279.    Plaintiff and Class members who contacted Google demanded that Google return their property. Google denied the demands to return the property.

280.    Plaintiff and Class members did not consent for Google to exercise dominion or control or to retain their property.

281.    Google's conduct was a substantial factor in the harm caused to Plaintiff and Class members.

**SEVENTH CAUSE OF ACTION**
**Declaratory Judgment**
**28 U.S.C. §2201**
**(on Behalf of the Nationwide Class and the Contact Subclass)**

282.    Plaintiff hereby re-alleges and incorporates all allegations raised in the Complaint, as though fully set forth herein.

283.    Under the Declaratory Judgment Act, 28 U.S.C. §2201 *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those alleged herein, that are tortious and that violate the terms of the federal and state statutes described in this Complaint.

284.    Plaintiff seeks a declaration of the rights of the parties under the Federal Declaratory Judgement Act, 28 U.S.C. §2201.

285.    An actual and justiciable controversy exists between the parties in light of Google misrepresenting that there was nothing that they can do when Plaintiff contacted Google to report being a victim of a scam involving Google Play gift cards, and by failing to disclose that Google can identify the Google Play gift cards, Google Accounts, Google Play Developer accounts, knowingly makes payments to accounts involved in gift card scams, and fails to return the money to Plaintiff and the Class.

286.    Google purports to bind Plaintiff and Class members to the terms and conditions set forth on the back of Google Play gift cards and the Online Terms and Conditions on Google's website. The back of the Google Play gift cards provides, in part: "Terms & Conditions: For additional terms and privacy policy visit play.google.com/us-card-terms." The Online Terms and Conditions provide, in part, that: "[Defendant Google Arizona LLC] and [Defendant Google Payment Corp.] are not responsible if a Gift Card or Credit is lost, stolen, destroyed, or used without your permission. [Defendants] will have the right to close customer accounts and bill alternative forms of payment if a fraudulently obtained Gift Card or Credit is redeemed and/or used to make purchases on Google Play."

287.    Plaintiff and Class members lack an adequate remedy at law.

288.    Google cannot, as a matter of law, disclaim or assign the liability of loss, conversion, or destruction of the balance of Google Play gift cards when Google knows that the Google Play gift cards were purchased as a result of wrongful and unlawful conduct, Google has knowledge of the gift card scams perpetrated on Plaintiff and Class members, Google engages in practices which perpetuate the gift card scams, and Google knowingly retains profits from the gift card scams perpetrated on Plaintiff and Class members. Google cannot, as a matter of law, disclaim or assign the liability of loss for its own criminal conduct, including its violation of Cal. Penal Code §496, described *supra*.

289.    Google's attempt to disclaim liability is unconscionable and unenforceable as to Plaintiff and Class members, and Plaintiff seeks a declaration to that effect.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated, respectfully requests that this Court:

A.    Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more of the Classes defined above;

B.    Appoint Plaintiff as the representative of the Class and her counsel as Class counsel;

C.    Award all actual, general, special, incidental, statutory, punitive, and consequential damages, and restitution to which Plaintiff and the Class members are entitled by law;

D.    Award pre-judgment and post-judgment interest on such monetary relief;

E.    Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to refrain from seeking to enforce the Google Play gift card terms and conditions on victims of gift card scams who did not redeem the Google Play gift card, and to refrain from transferring any money to Google Play Developer accounts associated with gift card scams;

F.    Award reasonable attorneys' fees and costs; and

G.    Grant such further relief that this Court deems appropriate.

1

## JURY DEMAND

2      Plaintiff, on behalf of herself and the putative Class, demands a trial by jury on all issues

3  so triable.

4  Dated: December 19, 2024

5

**KIRBY McINERNEY LLP**
*/s/ Anthony F. Fata*
Anthony F. Fata (*pro hac vice*)

6
Sarah E. Flohr (*pro hac vice*)
Cormac Broeg (*pro hac vice* forthcoming)

7
211 West Wacker Drive, Suite 550
Chicago, IL 60606

8
Telephone: 312-767-5180
afata@kmllp.com

9
sflohr@kmllp.com
cbroeg@kmllp.com

10

11
Marko Radisavljevic
1420 Kettner Boulevard

12
San Diego, CA 92101
Telephone: 858-834-2044

13
Facsimile: 858-255-7772
mradisavljevic@kmllp.com

14
**SCOTT+SCOTT ATTORNEYS**

15
**AT LAW LLP**
Joseph P. Guglielmo (*pro hac vice*)

16
Amanda M. Rolon (*pro hac vice*)
The Helmsley Building

17
230 Park Ave., 24th Floor
New York, NY 10169

18
Telephone: 212-223-6444
jguglielmo@scott-scott.com
arolon@scott-scott.com

19

20
Hal D. Cunningham (CA Bar No. 243048)
600 W. Broadway, Suite 3300

21
San Diego, CA 92101
Telephone: 619-233-4565

22
hcunningham@scott-scott.com

23
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**

24
Nyran Rose Rasche (*pro hac vice*)
Nickolas J. Hagman (*pro hac vice* forthcoming)

25
135 South LaSalle Street, Suite 3210
Chicago, IL 60603

26
Telephone: 312-782-4880
nrasche@caffertyclobes.com
nhagman@caffertyclobes.com

27

28
*Attorneys for Plaintiff and the Class*

FIRST AMENDED CLASS ACTION COMPLAINT